Hon. James L. Robart

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

## AT TACOMA

MARTIN HOVENKOTTER,

           Plaintiff,

   vs.

SAFECO Corporation, SAFECO Insurance Company Of America, and SAFECO Insurance Company of Illinois,

          Defendants.

Case No.:  2:09-cv-00218-JLR

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

NOTE ON MOTION CALENDAR:
May 24, 2010

Plaintiff's Motion for Class Certification

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

|     |     |     | PAGE |
|-----|-----|-----|------|
| I. | INTRODUCTION | .................................................. | 1 |
| II. | STATEMENT OF FACTS | ......................................... | 4 |
|     | A. | Safeco's Uniform Policy Obligations ..................... | 4 |
|     | B. | DV Exists in Vehicles That Have Been Damaged and Properly Repaired ..................... | 4 |
|     | C. | Safeco Implemented a "Don't Ask, Don't Tell" Policy to Avoid Paying DV Losses It Owes ..................... | 5 |
|     | D. | Safeco's "Don't Ask, Don't Tell" DV Policy is Uniformly Applied ................... | 8 |
|     | E. | Safeco Mischaracterizes UM Claims to Avoid Paying DV Losses ..................... | 9 |
|     | F. | Safeco Has Profited From Its Wrongful Conduct ..................... | 9 |
| III. | ARGUMENT | .................................................. | 10 |
|     | A. | Rule 23 Requirements ..................... | 10 |
|     | B. | The Proposed Class ..................... | 10 |
|     | C. | The Requirements Of Rule 23(a) Are Readily Met ..................... | 11 |
|     |     | 1. | Numerosity is Satisfied ..................... 12 |
|     |     | 2. | Commonality is Satisfied ..................... 12 |
|     |     |     | a. Common Fact Issues ..................... 13 |
|     |     |     | b. Common Issues of Law ..................... 14 |
|     |     | 3. | Typicality is Satisfied ..................... 15 |
|     |     | 4. | Adequacy is Satisfied ..................... 15 |
|     | D. | Certification is Appropriate Pursuant to Rule 23(b)(3) ..................... 15 |
|     |     | 1. | Common Questions of Law and Fact Predominate ..................... 18 |
|     |     | 2. | Class Treatment is Superior and Manageable ..................... 19 |
|     | E. | A Rule 23(b)(2) Class Also is Properly Certified ..................... 19 |
|     |     | 1. | Safeco Has Acted on Grounds Generally Applicable to the Class ..................... 19 |

Plaintiff's Motion for Class Certification - i

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

PAGE

      2.     Plaintiff Seeks Important Injunctive, Equitable and
           Specific Performance Relief ..................................................................... 19

      3.     Equitable Compensation" is an Appropriate Element of
           Specific Performance Relief ..................................................................... 22

      4.     The Injunctive Relief Supplements the Monetary Relief ......................... 23

V.     CONCLUSION................................................................................................. 24

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

1

## TABLE OF AUTHORITIES

2
*CASES*                                                                                  PAGE

3
*American Airlines v. Woolens,*
4
    513 U.S. 219 (1995).  ................................................................. 18

5
*Beard v. S/E Joint Venture,*
6
    581 A.2d 1275 (Md. 1990) ........................................................ 22

*Bradford v. AGCO Corp.,*
7
    187 F.R.D. 600 (W.D.Mo. 1999). ............................................. 23

8
*Brewer v. Salyer,*
    No. CV F 06-1324 AWI DLB, 2009 WL 1396148 (E.D.Cal. May 18, 2009)  ............... 17
9

10
*Busani v. United States Automobile Association,*
    No. 99-2-08217-1 (Pierce Cty, Wash. Sup. Crt. 2001)....................................... 3

11
*Cameron v. Benson,*
    664 P.2d 412 (Or. 1983)  ............................................... 22, 23
12

13
*Deans v. Terry,*
    No. COA06-488, 2007 WL 329279 (N.C. App. Feb. 6, 2007)  ........................ 20

14
*DeCesare v. Lincoln Benefit Life Co.,*
15
    852 A.2d 474 (R.I. 2004) .......................................... 19, 20

16
*Ellis v. Costco Wholesale Corp.,*
    40 F.R.D. 627 (N.D. Cal. 2007) ................................................ 24

17
*Farris v. Safeco Ins. Co. of Am.,*
18
    No. 00C15760 (Or. Cir. Ct. 2003)  ........................................... 3, 11

19
*Grays Harbor Adventist Christian Sch. v. Carrier Corp.,*
20
    242 F.R.D. 568 (W.D.Wash. 2007) .................................. 10, 15, 18

21
*Guard v. P&R Enters., Inc.,*
    631 P.2d 1068 (Alaska 1981) ...................................................... 22

22
*Hanon v. Dataproducts Corp.,*
23
    976 F.2d 497 (9th Cir.1992) ............................................... 10

24
*Heritage Housing Corp. v. Ferguson,*
    74 S.W.2d 363 (Tex. App. 1984) ............................................. 23

25
*In re Badger Mountain Irrigation Dist. Sec. Litig.,*
26
    143 F.R.D. 693 (W.D. Wash. 1992) .................................... 12

27

28

Plaintiff's Motion for Class Certification - iii

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

PAGE

*In re Domestic Air Transp. Antitrust Litig.*,
    137 F.R.D. 677 (N.D. Ga. 1991) ................................................................. 17

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) ................................................................ 17

*In re NCAA I-A Walk-On Football Players Litig.*,
    No. C04-1254C, 2006 WL 1207915 (W.D.Wash. May 3, 2006) ................. 15

*In re Tableware Antitrust Litig.*,
    241 F.R.D. 644 (N.D. Cal. 2007) ............................................................... 17

*Jordan v. Allstate Ins. Co.*,
    56 Cal.Rptr.3d 312 (Cal. App. 2007) ......................................................... 13

*Kelley v. Microsoft Corp.*,
    No. C07-0475MJP, 2009 WL 973368 (W.D. Wash. April 10, 2009) ............... 15

*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
    No. C05-1428JLR, 2006 WL 2381797 (W.D.Wash. Aug. 16, 2006). ............ 12

*Lakehurst Condo. Owners Ass'n v. State Farm Fire and Cas. Co.*,
    486 F. Supp. 2d 1205 (W.D. Wash. 2007) ................................................ 13

*Laughlin et al. v. Allstate el al.*,
    No. 02-2-10380-0 (Pierce Cty, Wash. Sup. Crt. 2004) ........................... 3, 17

*Mabry v. State Farm Mut. Auto. Ins. Co.*,
    No. SU 99-CV-4915 (Ga. June 12, 2001) ................................................. 21

*McGhee v. Arabian Am. Oil Co.*,
    871 F.2d 1412 (9th Cir. 1989) .................................................................. 17

*Moeller v. Farmers Ins. Co.*,
    No. 99-2-07850-6 (Pierce Cty, Wash. Sup. Crt. 2002) ........... 3, 11, 13, 14, 16, 19, 21

*Molski v. Gleich*,
    18 F.3d 937 (9th Cir. 2003) ................................................................ 23, 24

*Mortimer v. FDIC*,
    197 F.R.D. 432 (W.D. Wash. 2000) ......................................................... 16

*Painewebber R&D Partners II, L.P. v. Centocor, Inc.*,
    No. 14405, 1999 WL 160123 (Del.Ch. Mar. 15, 1999) .............................. 20

*Peterson v. State Farm Mut. Ins. Co.*,
    No. 99-L-394A (20th Jud. Cir., St. Clair Cty, Ill. 2001) ............................... 3

*Phillips Petroleum Co. v. Shunts*,
    472 U.S. 797 (1985) ................................................................................ 17

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

PAGE

*Pierce v. Novastar Mortg., Inc.*,
    No. C05-5835RJB, 2006 WL 2571984 (W.D. Wash. Sept. 5, 2006) ............................. 12

*Probe v. State Teachers' Retirement System*,
    780 F.2d 776 (9th Cir.1986), *cert. denied*, 476 U.S. 1170 (1986)................................. 23

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*,
    No. CV-01-1362-ST, 2002 WL 31495830 (D. Or. Jun. 18, 2002).................................. 13

*Rekhi v. Olason*,
    626 P.2d 513 (Wash.App. 1981) ................................................................................ 22

*Rodriguez v. Carlson*,
    166 F.R.D. 465 (E.D.Wash. 1996) ...................................................................... 11, 23

*Rose et al. v. Nationwide Mut. Ins. Co.*,
    No. 02-2-06621-1 (Pierce Cty, Wash. Sup. Crt. 4/6/09).............................................. 3

*Roshandel v. Chertoff*,
    554 F.Supp.2d 1194 (W.D.Wash. 2008).  ............................................ 10, 11, 12, 15, 19

*Sandoval v. Rizzuti Farms, Ltd.*,
    No. CV-07-3076-EFS, 2008 WL 4530525 (E.D.Wash. Oct. 6, 2008) ................. 10, 11, 12

*Sims v. Allstate Ins. Co.*,
    o. 99-L-393A (20th Jud. Cir., St. Clair Cty, Ill. 2001)  ................................... 10, 11, 12

*State Farm Mut. Auto. Ins. Co. v. Mabry*,
    556 S.E.2d 114 (Ga. 2001) ....................................................................................... 2

*Sun Oil Co. v. Wortman*,
    486 U.S. 717 (1988)................................................................................................ 17

*Stewart v. Walker*,
    597 N.E.2d 368 (Ind. App. 1992) ............................................................................. 14

*Trimper v. Nationwide Ins. Co.*,
    540 F.Supp. 1188 (D.S.C. 1982) ............................................................................. 13

*United Nuclear Corp. v. Gen. Atomic Co.*,
    629 P.2d 231 (N.M. 1980) ...................................................................................... 20

*Vickery v. Jones*,
    856 F.Supp. 1313 (S.D. Ill. 1994)............................................................................ 12

*Williams v. Boeing Co.*,
    225 F.R.D. 626 (W.D. Wash. 2005) ......................................................................... 24

*Yapuna v. Global Horizons Manpower Inc.*,
    254 F.R.D. 407 (E.D.Wash. 2008).......................................................................... 10

Plaintiff's Motion for Class Certification - v

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

PAGE

*Zinser v. Accufix Research Inst.,*
    253 F.3d 1180 (9th Cir.2001) ............................................................... 17, 18

**RULES**
    Rule 23(a)(1) ................................................................................... 11

    Rule 23(a)(2) ................................................................................... 12

    Rule 23(a)(3) ................................................................................... 14

    Rule 23(a)(4) ................................................................................... 15

    Rule 23(b)(2) ................................................................. 4, 11, 19, 20, 22, 23, 24

    Rule 23(b)(3) ................................................................. 3, 10, 15, 18, 22, 24

**OTHER SOURCES**

    Stephen S. Ashley, Bad Faith Actions: Liability and Damages §§9:1-2 (2007) ............. 13

    46 Am.Jur. Proof of Facts 3d 289, at §2 (June 2007) ...................................... 13

    Restatement (2d) of Torts, §928 ................................................................. 14

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

## I.   INTRODUCTION

Safeco sells uninsured and underinsured insurance coverage ("UM") in 28 states. In every state the insurance undertaking is exactly the same: to "pay for damages which an insured is legally entitled to recover" from an uninsured/underinsured or a hit-and-run driver.[1]  Washington and the other Class States[2] have found that this policy language legally obligates Safeco to pay its insureds not only for the cost of repairing their damaged vehicles, but also for any diminution in value ("DV") loss of the vehicles notwithstanding the repairs made. As reflected in Safeco's training and claims materials, "there is a general conviction that a vehicle which has been damaged and then repaired is worth less."  SICI-5854 (Pltf's Aff., Ex. 2).  The value of most vehicles decrease because they cannot be repaired back to their pre-loss physical condition as there is continuing, remaining physical damage even after proper repair.

Safeco's policies incorporate the *tort* measure of damages, which, in Washington and a majority of the Class States, includes payment for any *reduction in value* of the damaged item.  *See, e.g.*, Restatement (2d) of Torts, §928.  The relevant portion of §928 provides:

> When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
>
> (a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in the appropriate case, the reasonable cost of repair or restoration, *with due allowance for any difference between the original value and the value after repairs.*

*Id.* (emphasis added).[3] This measure of tort damages also is reflected in the pattern Jury Instructions adopted by the Washington Supreme Court, as well as patterned instructions in the Class States.[4]

Despite its uniform contractual obligations to ascertain and pay for DV loss, Safeco has adopted a "don't ask, don't tell" policy to avoid paying DV claims. Safeco fails to notify insureds

---

[1] *See, e.g.*, Supporting Affidavit of Steve Hansen ("Pltf's Aff."), Ex. 1, SICI-1454-1474 (Washington Policy), at p. 8; "Uniform Policy Language Chart", attached as Ex.  A.

[2] The Class States include: Alaska, Arkansas, California, Colorado, Georgia, Idaho, Illinois, Indiana, Louisiana, Maryland, Mississippi, Montana, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming.

[3] *See* "Diminished Value is Recoverable Under Tort Law" Chart, attached as Ex. B.

[4] *See* Jury Instructions Chart, attached as Ex. C.

Plaintiff's Motion for Class Certification - 1

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

submitting UM claims of their coverage for DV loss, fails to assess its insureds' DV losses during its appraisal process and fails to compensate its insureds for their DV loss unless DV is specifically requested and proven by the insured.

Safeco's DV avoidance policies and practices breach its common contract obligations and violate its contractual duty of good faith and fair dealing to Plaintiff and Class members. When a Safeco insured reports a UM claim for property loss, Safeco undertakes the duty to adjust the claim and appraise the damages sustained by the vehicle. However, instead of fulfilling its contractual and legal obligations, Safeco segregates DV from the underlying property damage claim, treating it as a separate element of damage that it uniformly "assumes" does not exist. Stave Vol. I, 117, 134:6-17[5]; Carroll 119. Safeco unfairly burdens the insured to independently know about, pursue and prove DV losses.[6]

Almost a decade ago, the Georgia Supreme Court unanimously recognized the impropriety of requiring insureds to press DV claims in *State Farm Mut. Auto. Ins. Co. v. Mabry,* 556 S.E.2d 114, 121-22 (Ga. 2001). There, the plaintiffs alleged that State Farm's policies obligated State Farm "to assess every element of that loss covered by the policy and to pay for the entire loss, the measure of which, [] is the difference between the value of the vehicle prior to the loss and its value after the loss." *Id*. at 118-119. In *Mabry*, the Georgia Supreme Court found:

> Recognition of diminution in value as an element of loss to be recovered on the same basis as other elements of loss merely reflects economic reality…Nothing in the insurance policy requires the insured to assert a right to recover any particular element of damage. If the policy does not require the insured to claim separately such items as damage to tires or damage to bodywork, it stands to reason that the policy does not require a separate claim for diminution in value.

*Id*. at 122-123. Likewise, insureds have no obligation under Safeco's UM coverage to separately claim and prove DV losses as an individual element of damage.

---

[5] All deposition excerpts cited herein are attached to the supporting Pltf's Affidavit. *See* Pltf's Aff., Ex. 3 (Stave Vol. I); Ex. 4 (Stave Vol. II); Ex. 5 (Carroll); Ex. 6 (Kohl); Ex. 7, (Rollins Vol. II).

[6] *See* Carroll 120:1-5 ("It's incumbent upon the insured to inform us that they're making a claim for diminished value"); Stave Vol. I, 130:17-134:17; Rollins Vol. II, 71:16-21 (evaluate UM DV claims the same as third party claims).

<u>Plaintiff's Motion for Class Certification</u> - 2

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

Safeco's reason for concealing its obligation to assess and pay DV is simple – to increase its profits at the expense of its insureds.  Tellingly, in Georgia, where Safeco is "required to assess potential DV on every first party loss, whether or not the insured asks for it," Safeco has found that "*a vast majority of the claims*" exhibit DV losses that Safeco is obligated to pay.  SICI-DALJ-19 (Pltf's Aff., Ex. 8).  Safeco's "don't ask, don't tell" policy is a concerted effort to avoid paying for DV losses on the "vast majority" of UM claims - losses to which its insureds are "legally entitled."

Further, Safeco often pays UM qualifying claims under the collision and comprehensive (collectively, "collision") provisions of its policies, where it routinely refuses to pay for DV losses, improperly charges its insureds higher deductibles, unfairly limits their access to substitute rental vehicles and adversely impacts insureds' insurance ratings.

This case is of the type that is routinely certified as it presents contractual and claims handling issues common to Plaintiff and all Class members.  Several courts have previously certified litigation classes in cases raising essentially identical diminished value issues.  *See. e.g., Laughlin et al. v. Allstate el al*., No. 02-2-10380-0 (certifying a multi-state UM class) (Pierce Cty, Wash. Sup. Crt. 2004) (affirmed Nov. 8. 2005); *Moeller v. Farmers Ins. Co*., No. 99-2-07850-6 (certifying a Washington class) (Pierce Cty, Wash. Sup. Crt. 2002) (affirmed Mar. 10, 2010); *Busani v. United States Auto. Assoc.*, No. 99-2-08217-1 (Pierce Cty, Wash. Sup. Crt. 2001) (certifying a nationwide UM class) (Pltf's Aff., Exs. 9-12); *see also Farris v. Safeco Ins. Co. of Am.*, No. 00C15760 (Or. Cir. Ct. 2003) (certifying a multistate class); *Mabry*, 556 S.E.2d 114 (Ga. 2001) (upholding certification of Georgia class); *Sims v. Allstate Ins. Co.*, No. 99-L-393A (20th Jud. Cir., St. Clair Cty, Ill. 2001) (certifying a multistate class); *Peterson v. State Farm Mut. Ins. Co*., No. 99-L-394A (20th Jud. Cir., St. Clair Cty, Ill. 2001) (same).[7]

Thus, for these reasons, and as further explained below, Plaintiff Martin Hovenkotter ("Plaintiff") requests that this Court certify this case as a Rule 23(b)(3) action to enable Plaintiff and the Class to pursue money damages Safeco owed them for their DV losses but did not pay.  In

---

[7] *See also Rose et al. v. Nationwide Mut. Ins. Co.,* No. 02-2-06621-1 (Pierce Cty. Wash. Sup. Crt. 4/6/09) (entering final approval of a multi-state class settlement), Pltf's Aff., Ex. 13.

Plaintiff's Motion for Class Certification - 3

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

addition, Plaintiff requests the Court certify this case as a Rule 23(b)(2) action to enable Plaintiff and the Class to obtain the specific performance relief to which they are entitled: notification that DV is a covered loss, a good faith appraisal of such loss by Safeco and compensation therefore, as well as a reversal of all consequences of Safeco's paying Class members' UM claims under its collision coverage, including compensation for DV loss and rental underpayment and reimbursement for overpaid deductibles.

## II.     STATEMENT OF FACTS

### A.     Safeco's Uniform Policy Obligations

Throughout the Class period, in Washington and the Class States, Safeco has insured Plaintiff and Class members under automobile insurance policies that contain coverage for UM property damages.[8]  This coverage uniformly obligates Safeco to compensate insureds for "damages which an insured is legally entitled to recover" from the owner or operator of an uninsured/underinsured motor vehicle.[9]  DV is damage that a UM claimant is "legally entitled to recover." *See* Restatement (2d) of Torts, §928; "Diminished Value is Recoverable Under Tort Law" Chart, Ex. B.

### B.     DV Exists in Vehicles That Have Been Damaged and Properly Repaired

Intuitively, a vehicle that has been damaged and subsequently repaired will command a lower re-sale price than the same vehicle which has not suffered damage.  Plaintiff will demonstrate, however, that this is more than simple intuition, and that there are uniform and quantifiable reasons which justify the decrease in value. In particular, Professor Kristin Wood, Plaintiff's technical and engineering expert, will testify that "there exist qualitative differences in a vehicle after an accident and subsequent repair, compared to the pre-accident condition of the vehicle." Wood Expert Report (2/20/10), at ¶ 20 (attached as Exhibit D).  "These differences are a result of the loosening of parts (causing vibration, rattles, and other anomalies) and undetectable secondary damage," they "cannot

---

[8] Safeco utilizes ISO approved policies forms so that its policies are "consistent across the US." Carroll, 103:2-4.
[9] *See* Uniform Policy Language chart (Ex. A); *see also* SICI-5859-60 ("Claims Safeco Way") setting forth "UMPD Coverage and Accurate Deductibles") (Pltf's Aff., Ex. 14).

Plaintiff's Motion for Class Certification - 4

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

be visually diagnosed or tested with any existing standard practice" and they "are not a result of improper repair practices; it is infeasible, from a practical standpoint, to validate the state of each and every component of a vehicle during its repair." *Id.* at ¶¶ 20-21. Limitations in the repair process "prevent any assurance that vehicles will perform in the same manner during a second accident" and, in fact, there exists "a significant likelihood the repaired structural members on a vehicle will not provide the same structural integrity and energy transmittance as the original members." *Id.* at ¶ 22-23; *see also* ¶ 24.[10] These "quantifiable differences" result in DV losses.

Safeco does not dispute the existence of DV. Safeco defines "inherent diminished value" in its company-wide electronic source guidelines ("Safeco Way"/"Claims Resource Guide") as the "perceived loss of value of a vehicle solely due to the fact that it has been involved in a collision regardless of the amount of damages." Kohl 74:11-75:11.[11] Safeco calculates DV as the "difference between the actual cash value and the perception of a reduced actual cash value as a result of a completed industry standard repair."[12] Stave Vol. I, 73:13-16. Thus, Safeco acknowledges that even when a vehicle has been repaired to industry standards, DV may still result. Kohl 52:7-53:2. And, that a completed repair is not required to assess DV. Rollins 94:12-14.

## C. Safeco Implemented a "Don't Ask, Don't Tell" Policy to Avoid Paying DV Losses It Owes

Safeco recognizes its duty to properly assess claims and compensate insureds for all covered damages: "They're bringing to us a claim", "[t]hey're telling us the car is damaged", and "they're looking to us to resolve or restore those damages." Stave Vol. I, 123:23-124:6. Further, Safeco acknowledges that DV is a recoverable element of "damage" under its UM policy provisions. Stave Vol. I, 135:28-136:3; Rollins 40:16-17. And, in those relatively few instances where an insured recognized their right to recover DV, demanded DV and was able to prove that it exists to Safeco's

---

[10] *See also* "New Hire Training" regarding "Damage analysis: Collision Theory" explaining collisions and energy absorption issues. SICI-6096, 6105-6109 (Pltf's Aff., Ex. 15).

[11] *See also* SICI-5854 (inherent diminished value is defined as "a general conviction that a vehicle that has been damaged and then repaired is worth less. It is not affected by scope or cost of repair or whether there are signs of repair.") (Pltf's Aff., Ex. 2); Stave, Vol. I at 161-63 (same).

[12] Kohl 46:3-17; 47:14-48:6 (Safeco follows OEM and I-CAR guidelines to ensure vehicles are repaired to industry standards).

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

satisfaction, Safeco has paid some of the DV it owes.  *See, e.g.*, SICI-ROLLT-3-24 and KOHLS-81-108 (charts indicating UM payments throughout class period in the Class States) (Pltf's Aff., Exs. 16-17).[13]

Safeco additionally recognizes that DV exists on the "vast majority" of claims. SICI-DALJ-19 (Pltf's Aff., Ex. 8).  Thus, in order to limit DV payments, Safeco has implemented a "don't ask, don't tell" policy designed to conceal its obligations from insureds – the majority of which have no idea DV is owed to them – and to effectively resist paying DV when it is owed.

Safeco's Auto Field Examiners are trained that they are only to address "visible damages" when evaluating property damage (which will not uncover DV losses – *see* Wood Expert Report, at ¶¶ 20-21).  Pursuant to Safeco's "don't ask, don't tell" policy, Safeco does not explain what "other loss related damage" might refer to, including that it could include DV losses.  Simply stated by Safeco's Field Claims Office Manager, "[W]e don't tell the customer that they may have a diminished value claim." Stave Vol. 1, 160:24-25.[14] Mr. Stave further explained: "It is not part of the workflow, when they're looking at the car, to explain to the customer every possible indirect damage that may occur as a result of the loss." Stave Vol. I, 139:15-21.  As far as whether an insured understands that DV is "loss related damage," Mr. Stave testified that "the understanding piece is really dependent on the customer."  Stave, Vol. I, 137:25-138:8.

In the rare circumstances that an insured is aware DV is a recoverable loss, Safeco effectively resists paying it by placing the burden on the insured to request DV and prove it is owed.  "It's incumbent upon the insured to inform us that they're making a claim for diminished value." Carroll 120:1-5.  Safeco makes that burden as insurmountable as possible.  To begin with, Safeco requires insureds to make their DV request in writing.  *See* SICI-ROLLT-232-233 ("DV Workflow" –

---

[13] *See also* Kohl 141:12-142:5 (Basis of Payment Code "R" captures all DV payments (not just UM payments) and is "used across the country to correctly code payment types"); Stave Vol. II, 94:20-96:12 (same).

[14] *See also* Stave Vol. I, 131:9-132:16 (same); Carroll 120:7-11 (Customer Service claims personnel are neither trained nor instructed to disclose to insureds that DV may be a recoverable element of damage).

<u>Plaintiff's Motion for Class Certification</u> - 6

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

"Explain process and requirements for 1) – written DV Demand") (Pltf's Aff., Ex. 18); Stave Vol. II, p. 81:8-17 (same).[15]

　　　After a written demand is received, Safeco has implemented further barriers to DV recovery. First, Safeco's DV handlers will reappraise the vehicle to confirm that the insured is complaining about "inherent diminished value" and not just a poor repair.  Kohl 41:13-42:1; Stave Vol. I, 39:15-40:1.  Next, the DV handler will explain to the insured that "diminished value doesn't necessarily exist on every car or every loss" and that the insured is responsible for providing Safeco a basis for the DV, routinely requiring the insured to pay for a DV assessment from an independent appraiser. Kohl 43:5-24, 173:18-23; Stave Vol. I, 40:2-15. After the insured presents a DV appraisal, Safeco will further evaluate the DV request, including, in many instances, hiring its own independent appraiser and running a CCC evaluation to obtain the actual cash value of the vehicle.  Stave Vol. I, 40:16-41:11.  Safeco also will "[e]valuate [the] final estimate to see if DV is supported." SICI-ROLLT-232-233 ("DV Workflow") (Pltf's Aff., Ex. 18); Stave Vol. II, 87:19-24.[16] Estimated structural, body and paint damage, of course, is readily ascertainable by Safeco before the repair is completed but yet ignored until late in the DV appraisal process.

　　　In furtherance of its anti-DV policy, even when Safeco's files show a DV amount, Safeco hides it from the claims file – "a vague File review [entry]…no figures" - to prevent "a claimant's attorney" from seeing it and starting a "class action." SICI-ROLLT-404 and -190; SICI-KOHLS-359 (Pltf's Aff., Exs. 19-21). In addition, when it is determining how much to compensate insureds for DV, Safeco intentionally offers less than the amount it knows it is worth, as evidenced by its own files. SICI-ROLLT-153-155 ("I use the appraiser's opinion to establish the top value for my

---

[15] Safeco's corporate representative acknowledges that Safeco's policy contract does not require the policyholder to give a "written demand" for DV loss.  Stave Vol. II, 82:7-21.  Safeco's policy only requires UM claimants to notify Safeco of the identity of the insured, facts sufficient to determine what happened and to forward a copy of the policy report.  Stave Vol. I, 104-106.

[16] Without even looking at the vehicle, the appearance of structural damage on a repair estimate is a typical indicator of potential DV.  Stave Vol. II, 90:4-12. Other factors Safeco considers in evaluating DV, such as age and mileage, are noted on the final estimate.  *See also* Stave 172-185; Kohl 92:22-93:17; Rollins 123:15-124:21.

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

negotiations. I always start lower.") (Pltf's Aff., Ex. 22).[17] As succinctly stated by one DV handler, "when dealing with unrepresented claimants….We simply pick a low number and negotiate the other party into submission." *Id.* And, despite the development of a claims template and the use of "over-arching guidelines" to assess DV, Safeco does not collect information on claims settled to use in developing a database of information to guide it in future settlements.[18]

### D.       Safeco's "Don't Ask, Don't Tell" DV Policy is Uniformly Applied

Safeco has developed "over arching guidelines" for evaluating DV claims and applying its "don't ask, don't tell" policy on a company-wide basis.  Kohl 43:25-44:21.[19]  The "over-arching factors or drivers" are used to ensure they are "all looking at diminished value very similarly." Kohl 83:23-85:11.  A "rigored and structured work flow" is utilized with the help of a DV spreadsheet analysis.  *Id.* [20]

To ensure "consistency" in DV handling and that all examiners are considering DV claims in the "exact same way," (Kohl 168:10-17), throughout the Class period, all auto field property damage examiners received training through the "centralized home office training department." Kohl 32:13-33:19; 37:13-38:25; Rollins 11:20-12:8 ("calibrated consistent handling").  Additional training on Safeco's DV policies is obtained through weekly "Round Table" discussions, quarterly meetings, appraiser level training with unit leaders and one-on-one training. *See* Kohl 86:4-10, 82:21-83:11; Rollins 9:17-24.

In addition, Safeco tightly controls DV payments by using "expert" claim handlers specifically trained to handle DV claims.  And, Safeco has devised multiple levels of payment authority for approval of DV claims.  The designated DV Handler, who collects the information

---

[17] *See also* Stave Vol. I, 179-181 (Safeco may "question the value" of its own independent appraiser's valuations).
[18] Kohl 43:25-44:21; 83:23-85:11 (guidelines discussed in manager meetings to ensure DV claims handled "very similarly"); SICI-KOHLS-380 (template) (Pltf's Aff., Ex. 23).
[19] *See also* Stave, Vol. I, at 66-71; SICI-ROLLT-132-134 ("we handle these 'claims' in a very specific way.") (Pltf's Aff., Ex. 24); Kohl 91:4-92:21; 153:24-154:14.
[20] Safeco has developed a "diminished value spreadsheet" to track insureds' demands for DV.  Stave Vol. 1, 157:13-159:17; Stave Vol II, 83:4-19.  The DV Spreadsheet was used to "bring some sort of structure and organization into how we properly acknowledge and evaluate any sort of diminished value losses," and was intended as a means of creating a company-wide database that could track the frequency of DV payments, including the number of DV claims paid in an given states as well as the average amount paid per vehicle.  Kohl 102:2-23, 109:19-110:22.

Plaintiff's Motion for Class Certification - 8

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1805 FAX

from the insured, must seek payment approval from the Field Unit Leader for payment.  Then the Field Unit Leader must seek approval from the Regional Head. Stave Vol. I, 71:7-12; Kohl 135:18-23 (from May 2003 to 2007, all DV payment approval was through management).[21]  By permitting payment of DV claims only when they have been authorized by the Regional Head, Safeco is able to control DV claims and ensure they are handled "very consistent[ly]."

### E.    Safeco Mischaracterizes UM Claims to Avoid Paying DV Losses

In addition to its "don't ask, don't tell" policy, Safeco also routinely mischaracterizes UM qualifying claims as collision claims.  Carroll 56:16-57:3 (employees are trained to "put it in under collision").  By categorizing claims as collision, rather than UM, or "splitting"[22] how the payment is applied, Safeco is able to collect higher deductibles for collision coverage.[23]   Insureds are not told their claim is being "split" between coverages or that they are being improperly charged a higher deductible.  Carroll 127:11-15.  Safeco's mischaracterization policy not only limits the amount of DV losses Safeco pays and increases the deductibles it is able to collect, but it also limits its insureds access to rental replacement vehicles and adversely impacts insureds' ratings based on Safeco's own rating structure.

### F.    Safeco Has Profited From Its Wrongful Conduct

The reason for Safeco's anti-DV policy is simple – to increase Safeco's profits.  As Safeco acknowledges with respect to its Georgia claims, "*a vast majority of the claims due [sic] result in a payment for DV*."  SICI-DALJ-19 (Pltf's Aff., Ex. 8).  In order to avoid paying DV on the "vast majority" of its insureds' claims, Safeco has implemented a systematic approach of concealing from UM insureds that they are "legally entitled" to recover DV losses and to effectively resist paying for DV in the relatively few instances where an insured is knowledgeable enough to know that it is owed and specifically requests it.  As a result of Safeco's "don't ask, don't tell" DV policy, Safeco

---

[21] *See also* Kohl 55:16-56:18 (this authority structure has been in place since March 2003); Kohl 87:10-20; 88:3-8; SICI-ROLLT-1972-1975 ("consistent workflow [handling] with PLM [Regional Head] review of all payments") (Pltf's Aff., Ex. 25).

[22] *See, e.g.,* SICI-9790 ("If the insd has both coll and UMPD cov, you would enter coll as exposure on the task but the payment would be split between coll and UMPD.") (Pltf's Aff., Ex. 26).

[23] *See* Carroll, 124:11-15 (collision deductibles are generally higher than UIM deductibles).

<u>Plaintiff's Motion for Class Certification</u> - 9

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

has profited, and continues to profit, by avoiding paying DV losses.  Further, by mischaracterizing Plaintiff's and Class members' UM claims as collision claims, Safeco has, and will continue to, further profit by collecting higher deductibles from its insureds.  *See, e.g.,* Hovenkotter Affidavit, at ¶ 4 (Pltf's Aff., Ex. 27).

## III.    ARGUMENT

### A.    Rule 23 Requirements

The Court must conduct a "rigorous analysis" to determine whether Plaintiff's claims are suitable for class certification.  *Roshandel v. Chertoff*, 554 F.Supp.2d 1194, 1203 (W.D.Wash. 2008).  In doing so, however, "the court is not at liberty to consider whether the moving party has stated a cause of action or is likely to prevail on the merits."  *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 571 (W.D.Wash. 2007) (*citing Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)); *see also Yapuna v. Global Horizons Manpower Inc.*, 254 F.R.D. 407, 414 (E.D.Wash. 2008) ("the narrow question before the Court is whether, under [FRCP 23], a class action is a proper vehicle for litigating the claims brought by Plaintiffs on behalf of the absent class members.").  Here, this case meets all the requirements of Rule 23(a), 23(b)(2) and 23(b)(3). Certification is therefore appropriate.

### B.    The Proposed Class

"A sufficiently definite class exists if its class members are ascertainable and clearly identifiable."  *Sandoval v. Rizzuti Farms, Ltd.*, No. CV-07-3076-EFS, 2008 WL 4530525, at *3 (E.D.Wash. Oct. 6, 2008).   Here, Plaintiff seeks certification of the following Rule 23(b)(3) monetary relief Class:

All Safeco insureds who within their state's statute of limitations period:

1.    Were paid under the underinsured/uninsured motorist ("UM") coverage provisions of their policy with Safeco, or
2.    Had underinsured/uninsured motorist property damage coverage and were involved in an accident with an underinsured/uninsured motorist or hit-and-run motorist, but received payment under Safeco's collision or comprehensive coverage, and
3.    Who were not compensated for diminished value, where:

Plaintiff's Motion for Class Certification - 10

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

(a)     the estimate, including supplements, to repair the vehicle was more than $1,000.00;

(b)     the vehicle suffered structural (frame) damage and/or required body or paint work; and

(c)     the vehicle was less than six years old (model year plus five) and had less than 90,000 miles on it at the time of the accident.

Plaintiff also seeks certification of the following Rule 23(b)(2) injunctive relief Class:

All Safeco insureds who within their state's statute of limitations period:

1.      Were paid under the underinsured/uninsured motorist ("UM") coverage provisions of their policy with Safeco, or

2.      Had underinsured/uninsured motorist property damage coverage and were involved in an accident with an underinsured/uninsured motorist or hit-and-run motorist but received payment under Safeco's collision or comprehensive coverage, and

3.      Whose claims were not assessed for and/or compensated for diminished value.[24]

The proposed Class definitions are "sufficiently definite" as the members of each Class can be identified by examining Safeco's records.[25] *Sandoval,* 2008 WL 4530525, at *3 (finding identification of "class membership by examining the employee payroll and other records maintained by Defendants" was a "reasonable, objective method"); *see also Moeller, Class Certification Order* (in considering an essentially identical class definition, the court found the "elements of the definition of this class are all ascertainable by reference to data alone").

### C.      The Requirements Of Rule 23(a) Are Readily Met

Rule 23(a) sets forth four prerequisites for certification – numerosity, commonality, typicality and adequacy of representation.  *Roshandel,* 554 F.Supp.2d at 1203.  Each of these prerequisites is satisfied here.

#### 1.   Numerosity is Satisfied

Numerosity exists if the class is so numerous that joinder of all members is "impracticable," meaning difficult or inconvenient. Rule 23(a)(1); *Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D.Wash. 1996).   Courts are entitled to rely on "common sense assumption" and "reasonable

---

[24] Excluded from the proposed Classes are Class Members whose claims were released in the *Farris v. Safeco* settlement entered by the Circuit Court in the State of Oregon on March 4, 2005, Cause No. OOC-15760.

[25] *See* Rollins 21:23-22:7.

<u>Plaintiff's Motion for Class Certification</u> - 11

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

estimate[s]" to support a finding of numerosity.  *See In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992); *Vickery v. Jones*, 856 F.Supp. 1313, 1328 (S.D. Ill. 1994).  "As a general rule, classes exceeding forty-one (41) individuals satisfy the numerosity requirement."  *Sandoval,* 2008 WL 4530525, at \*3.   Here, the proposed Classes satisfy the numerosity requirement.  Safeco's Vice President, Michael Carroll, testified that Safeco handles approximately 30,000 auto damage claims per month.  Carroll, 121:10-14.  Therefore, using "common sense" it is "reasonable" to assume that the proposed Classes are sufficiently numerous to make joinder impracticable.  Moreover, Safeco writes UM coverage in 28 states.

### 2.  Commonality is Satisfied

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  *See* Rule 23(a)(2); *see also Pierce v. Novastar Mortg., Inc.*, No. C05-5835RJB, 2006 WL 2571984, at \*6 (W.D. Wash. Sept. 5, 2006) (citations omitted). All questions of fact and law need not be common; "a single common issue is sufficient to meet the commonality requirement." *See Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at \*3 (W.D.Wash. Aug. 16, 2006); *see also Roshandel,* 554 F.Supp.2d at 1203 (citations omitted).  Here, there are many more than one legal and factual issue common to both Plaintiff and Class members.

### a.        Commons Fact Issues

The claims handling practices Plaintiff challenges were centrally devised and are uniformly implemented in the Class States. In particular, Safeco applies its "don't ask, don't tell" DV policy company-wide to discourage insureds from discovering and its claims personnel from mentioning or paying for DV losses when owed under its UM coverage.  Consistent with its bad faith DV practices, Safeco uniformly requires its insureds to request and prove their DV loss. Further, Safeco implemented practices whereby it mischaracterized Plaintiff's and Class members' UM claims, adjusting them under the collision provisions of its policies.  Safeco's anti-DV practices adversely

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

impact Plaintiff and all Class members in the same way – by not being told about and receiving

compensation for their DV losses.[26]

**b.      Common Issues of Law**

The foregoing common facts give rise to several common issues of law establishing that

Safeco breached its policy contacts, including its contractual duties of good faith and fair dealing,

with all Class members.  Specifically, the laws in all of the Class States uniformly provide that an

insurer's contractual duties include:[27] (1) conducting a **reasonable investigation** of the claim; (2)

**promptly** concluding the **investigation** and **paying** or denying the claim as appropriate; and (3)

providing a **reasonable explanation** for any denial of the claim or offer of a settlement.[28]   As

explained by the California Court of Appeals:

> [A]n insurer owes a duty to its insured to investigate all of the possible bases of an
> insured's claim. The insurer's duty to give as much consideration to the insured's
> interests as it does to its own obligates it to investigate a claim thoroughly. An insurer
> must fully inquire into the bases for the claim; indeed, it "cannot reasonably and in
> good faith deny [benefits] to its insured without thoroughly investigating the foundation
> for its denial."

*Jordan v. Allstate Ins. Co.*, 56 Cal.Rptr.3d 312, 320 (Cal. App. 2007) (emphasis original; citation

omitted); *see also Lakehurst Condo. Owners Ass'n v. State Farm Fire and Cas. Co.*, 486 F. Supp. 2d

1205, 1213 (W.D. Wash. 2007) (an insurer must investigate "reasonably" in order to act in good

faith).[29]  The insurer properly has the investigation burden because:

---

[26] *See Moeller*, Class Certification Order (finding common fact issues included whether class members' vehicles suffered DV, "whether vehicles can be returned to their preaccident condition, whether Farmers' business practices were a common and systematic course of conduct in processing physical damage claims to avoid paying or acknowledging diminished value claims").

[27] *See* "Insurer's Uniform Duty to Fully Investigate Claims," "Insurer's Uniform Duty to Promptly Access and Pay Diminished Value," and "Insurer's Uniform Duty of Full Disclosure" charts, attached as Exhs. E-G.

[28] Most of these laws are found in the Class States' unfair claims settlement practices statutes which have their genesis in the National Association of Insurance Commissioners' Model Act Relating to Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance.  *See* Stephen S. Ashley, Bad Faith Actions: Liability and Damages §§9:1-2 (2007).

[29] *See also Trimper v. Nationwide Ins. Co.*, 540 F.Supp. 1188, 1194 (D. S.C. 1982) (insurer violated duty to investigate in good faith where it did not act "reasonably" but "chose to put the entire burden of investigation and proof of loss on the Plaintiff"); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, *18 (D. Or. Jun. 18, 2002) (lack of a specific contract provision does not relieve the insurer of its duty to investigate); *see generally* 46 *Am.Jur. Proof of Facts* 3d 289, at §2 (June 2007) ("An insurer confronted with a claim owes its insured a duty to investigate the claim fully and fairly.").

Plaintiff's Motion for Class Certification - 13

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

> An insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not.... For this reason *we do not hesitate to place the burden of affirmative action upon the insurance company*. When notified of a claim it should investigate with reasonable dispatch....

*Stewart v. Walker*, 597 N.E.2d 368, 375 (Ind. App. 1992) (emphasis original; citations omitted).

Here, Safeco acknowledges DV is a recoverable loss under its UM coverage yet chooses to ignore its DV payment obligation by not investigating for DV until its insureds affirmatively request payment for and substantiate their DV loss.  Thus, whether Safeco's conduct is in breach of its contractual obligation to fully and reasonably disclose and  investigate UM claims is a common legal issue.[30]

### 3.    Typicality is Satisfied

Rule 23(a)(3) requires that Plaintiff's claims be typical of the clams or defenses of the Class. Plaintiff's claims are typical if they arise from the "same event or practice or course of conduct" as the claims of other Class members and are based on the "same legal or remedial theory."  Rule 23(a)(3). Plaintiff's claims do not need to be "substantially identical" to satisfy typicality. *Id*. Plaintiff is typical because, like other Class members, he purchased a Safeco policy with UM coverage, paid his premiums, and made a claim for loss.  Complaint, at ¶¶ 4.1-4.4.  Safeco accepted coverage, inspected the vehicle and assessed the damages, but failed to notify him of his DV loss coverage or assess or pay for his DV loss.  Further, Safeco adjusted Plaintiff's claim under the collision, rather than UM, provisions of his policy, causing Plaintiff to incur a higher deductible, additional rental expense and an adverse policyholder rating.  *See* Carroll, 58-63; SICI-233-235 (Pltf's Aff., Ex. 28).[31]  Therefore, Plaintiff, like other Class members, is entitled to recover his DV damages and to an order requiring Safeco to specifically perform its contract obligations.

---

[30] *See Moeller*, *Class Certification Order* (finding common issues of law included the relevant policy language was "functionally identical" and "[a]ll members of the proposed class suffer under the same allegedly wrongful conduct by Farmers in the interpretation and implementation of coverage under the policy language when Farmers is presented with a claim").

[31] Safeco never investigated Plaintiff's accident. Plaintiff reported a hit and run accident. Safeco assigned it to "claim class: COLL" (collision). Almost two years later, after receiving a demand from Plaintiff's local attorney, Safeco refunded his deductible overpayment (without interest). SICI-236-8 (2/27/2007 First Notice of Loss); SICI-235

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

#### 4.     Adequacy is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  *See* Rule 23(a)(4); *Roshandel,* 554 F.Supp.2d at 1203.  Here, the adequacy requirement is satisfied because Plaintiff and Class members have a common interest in establishing that Safeco breached its policy contracts and its duty of good faith and fair dealing because they were similarly harmed by Safeco's failure to disclose, assess and pay DV.  In addition, Plaintiff has retained experienced class action counsel, demonstrating his commitment to vigorously prosecute this case.  *See* Class Action Resumes, Pltf's Aff., Ex. 30.

#### D.     Certification is Appropriate Pursuant to Rule 23(b)(3)

Under Rule 23(b)(3), the Court may certify a Class if it finds that: 1) common questions of law or fact predominate over any questions affecting only individual members; and 2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *See* Fed. R. Civ. P. 23(b)(3); *Grays Harbor,* 242 F.R.D. at 571.

#### 1.     Common Questions of Law and Fact Predominate

"There is no single qualitative or quantitative test for predominance; rather, the Court pursues a pragmatic inquiry as to whether common questions represent a significant aspect of the case." *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2009 WL 973368, at *4 (W.D. Wash. April 10, 2009) (citations and internal quotations omitted).  Importantly, "individual damage questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class." *In re NCAA I-A Walk-On Football Players Litig.*, No. C04-1254C, 2006 WL 1207915, at *9 (W.D.Wash. May 3, 2006).

Common issues unquestionably predominate here.  With respect to liability, the overriding common question is whether Safeco established a common course of conduct designed to avoid paying DV losses it was obligated to pay under the standardized language of Safeco's form insurance policies.  "Since this case involves the use of form contracts, it is particularly appropriate

(Assignment) and SICI-115-7 (1/13/2009 note on UMPD coverage and deductible refund (Pltf's Aff., Ex. 28); Carroll, 58-63.

Plaintiff's Motion for Class Certification - 15

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

to use the class action procedure." *Mortimer v. FDIC*, 197 F.R.D. 432, 438 (W.D. Wash. 2000). Under nearly identical circumstances as exist in this case, the trial court in *Moeller* properly found predominance where the trial court "identified the common nucleus of operative facts, namely, that class members shared the same insurance policy, potentially suffered damage, and were allegedly harmed by Farmers' course of conduct." *Moeller, Court of Appeals Decision* (3/16/10)*, Pltf's Aff., Ex. 11. Additional predominating questions include whether Safeco has breached its policy contracts and claims handling obligations by improperly characterizing insureds' UM claims as collision claims in order to avoid paying for DV losses and to collect higher deductibles.

And, although Plaintiff's and Class members' individual damages will vary, the amount of their individual damages and aggregate classwide damages can be calculated using available, objective information contained in Safeco's own electronic records. *See, e.g.*, Stave Vol. I, 97-103 ("Claims Virtual Office" contains electronic records identifying, *inter alia*, the name of insured, applicable coverage, deductible, description of the loss, photos, upload of the CCC Pathways estimate, an activity log for the file and a notation of payments made on the file). Further, because DV is a loss in market value, Dr. Nayak Polissar (Plaintiff's statistician expert), will be able to calculate the amount of DV Safeco owed UM insureds. *See* Polissar Expert Affidavit (03/24/10), at ¶¶ 4, 16 (attached as Exhibit H). Through multiple linear regression analysis, Dr. Polissar will, through statistics, be able to isolate the effect of DV on the total value of a vehicle. *Id.* at ¶¶ 5-7. Dr. Polissar will use auto auction sales data that has been collected by trained "data collectors experienced in auto body repair techniques" pursuant to the protocol developed by Dr. Bernard Siskin as a basis for his regression analysis. *Id.* at ¶¶ 8-9. Dr. Siskin's data collection protocol has been approved as a proper method for proving DV and resultant aggregate damages and providing a methodology for distributing individual damages. *See Moeller, Class Certification Order* (finding Siskin's methodology for "how to proceed to gather the data on vehicles and how to manage this litigation as a class action" evidenced a "keen understanding of the steps necessary to process claims, identify class members, analyze the data on the existence or amount of diminished value,

---

<u>Plaintiff's Motion for Class Certification</u> - 16

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

adjustments to the class damages for defenses raised, and notification and allocation of any damages found through trial."[32]  Dr. Polissar's calculation can be performed by computer, and can generate both an individualized as well as aggregate monetary relief amount.  *Id*. at ¶ 14.

Courts have long found predominance of common issues and certified 23(b)(3) classes when regression analyses can be used to calculate individual remedies.  *See e.g.*, *Brewer v. Salyer*, No. CV F 06-1324 AWI DLB, 2009 WL 1396148, at *7 (E.D.Cal. May 18, 2009) (court found commonality and manageability requirements met where plaintiffs intended to show causal connection based on statistical regression analysis); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007) (class certification appropriate where plaintiffs' experts presented, *inter alia*, a regression analysis, stating that "[i]t is not necessary that plaintiffs show that their expert's methods will work with certainty at this time" but "plaintiffs' burden is to present the court with a likely method for determining class damages") (citations omitted).[33]

Further, there are no disparate multi-state law issues.  Washington (as the forum state) can constitutionally apply its law to a multi-state Class absent a showing by the proponent of foreign law of "outcome determinative" conflicts. *See Phillips Petroleum Co. v. Shunts*, 472 U.S. 797 (1985); *Sun Oil Co. v. Wortman*, 486 U.S. 717 (1988).  Washington choice of law principles mirror the analysis in *Shutts* and *Sun Oil* and require the proponent of foreign law (presumably Safeco) to demonstrate that a claimed conflict truly exists.  *See, e.g., Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1187 (9th Cir.2001); *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989).  And, there are no "outcome determinative" conflicts because as the United States Supreme Court has noted: "contract law is not at its core 'diverse, nonuniform, and confusing,'" but rather is uniform it

---

[32] *See also Laughlin et al. v. Allstate el al.*, Pierce County Superior Court Cause No. 02-2-10380-0, Order granting class certification.

[33] *See also In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999) ("multiple regression analysis is one of the mainstream tools in economic study" and is an accepted method of determining damages); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 691-693 (N.D. Ga. 1991) (regression analysis a valid statistical methodology for proving that each class member was injured and to calculate individual damages).

Plaintiff's Motion for Class Certification - 17

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

is applicable principles.  *American Airlines v. Woolens*, 513 U.S. 219, 233, n.8 (1995).[34]  For all these reasons, the "predominance" requirement is easily satisfied.

### 2.  Class Treatment is Superior and Manageable

Rule 23(b)(3) sets forth factors for determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *See* Rule 23(b)(3); *Grays Harbor,* 242 F.R.D. at 573.[35]  The focus is on "the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."  *Zinser,* 253 F.3d at 1190 (citations omitted).

Here, the "superiority" considerations weigh heavily in favor of class certification.  First, Class members would have little interest in pursuing individual actions.  To Plaintiff's knowledge, there are no pending individual actions by Class members against Safeco.  In fact, few Class members even know they are owed DV, due in no small measure to the success of Safeco's corporate policy to avoid disclosing, appraising or paying DV.  Indeed, it would be neither economically feasible nor efficient for Class members to pursue their claims against Safeco on an individual basis.  The monetary recovery for the majority of Class members is relatively small.  This, coupled with the cost of litigation, makes vindication of class members' rights extremely difficult, if not impossible.  Thus, allowing insureds to proceed as a class affords them their only likely chance for recovery against Safeco.

Finally, this case is manageable as a class action.  Liability will be established through evidence of Safeco's uniform policy contracts and company-wide "don't ask, don't tell" policies, and monetary remedies through use of a regression analysis can be calculated without the need for individualized inquiries to determine Class members' entitlement to relief or the amount of that relief.

---

[34] *See also* "Fundamental Breach of Contract Claim Elements" Chart, Ex. I.
[35] The four factors concerning superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id.*

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

In *Moeller,* Farmers raised numerous arguments as to why a case, such as this one, would not be manageable and why a class action was not the superior method.   However, after "seriously consider[ing]" all of Farmers' arguments, the Court of Appeals found that:

> Neither the number of potential class members or the difficulty in obtaining data on them defeat class certification unless such problems of management make a class action less fair and efficient then other available techniques.  Here, the only conceivable method of adjudication or resolution of these issues is through a class action, as the de minimis size of the individual claims leave policyholders without practical recourse absent this method to address the contract or legal issues and the damages or fact issues.").

*See Moeller,* 3/16/10 Order.   For the reasons superiority was satisfied in *Moeller,* it is satisfied here.

**E.     A Rule 23(b)(2) Class Also is Properly Certified**

**1.     Safeco Has Acted on Grounds Generally Applicable to the Class**

Certification under Rule 23(b)(2) is warranted when the defendant "has acted or refused to act on grounds generally applicable to the class," thereby making injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.   Rule 23(b)(2); *Roshandel,* 554 F.Supp.2d at 1205.

Safeco has acted on "grounds generally applicable to the Class" by entering into standardized policy contracts with Class members uniformly providing UM claimants DV coverage, but then implementing a "don't ask, don't tell" policy whereby it fails to disclose, assess or pay DV when owed. Further, Safeco's mischaracterization of UM claims to collect higher deductibles is conduct generally applicable to the Class.   *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 490 (R.I. 2004), is instructive.   There, as here, class members purchased contracts containing identical terms, which defendant allegedly breached by failing to provide each Class member with the required rate change notice.   *Id.* at 489.   Presented with these facts, the *DeCesare* court found that "[defendant's] behavior toward each member of the class was beyond generally applicable; it was identical."   *Id.*

**2.     Plaintiff Seeks Important Injunctive, Equitable and Specific Performance Relief**

Plaintiff seeks declaratory and injunctive relief requiring Safeco to notify UM insureds that DV losses are recoverable and to investigate and assess UM claims for DV.   Plaintiff also seeks an

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

order requiring Safeco to specifically perform its contractual obligations, including compensating insureds for DV losses, reversing all consequences of its mischaracterization of claims, including reimbursing for rental underpayment and refunding all improperly charged deductibles.

Where, as here, Plaintiff seeks declaratory, injunctive and specific performance relief, Rule 23(b)(2) certification is appropriate.  *DeCesare*, 852 A.2d at 490 ("Such requests for specific performance of a contract are routinely recognized as an appropriate subject for Rule 23(b)(2) class certification."); *Painewebber R&D Partners II, L.P. v. Centocor, Inc.*, 1999 WL 160123 at *1 (Del.Ch. Mar. 15, 1999) (finding Rule 23(b)(2) class certification appropriate "[b]ecause the request for specific performance and a declaratory judgment is truly injunctive and equitable in nature").

Rule 23(b)(2) certification is not only appropriate but preferred.  Specific performance is the preferred remedy in all the Class States where, as here, the policy contract is certain in its terms and damages alone are inadequate.  *See* "Specific Performance Prerequisites are Uniform" Chart, attached as Ex. J.  Safeco's policy contracts clearly and uniformly obligate it to pay all monies Class members are "legally entitled to recover" from the uninsured or hit-and-run motorist.

And, Safeco's failure to pay for DV losses and to properly characterize UM claims cannot be fully remedied by a damages award.  "To be adequate, [damages] 'must be as certain, prompt, complete, and efficient to attain the ends of justice as the decree of specific performance.'"  *United Nuclear Corp. v. Gen. Atomic Co.*, 629 P.2d 231, 252 (N.M. 1980) (citations omitted); *see also Deans v. Terry*, 2007 WL 329279 at *3 (N.C. App. Feb. 6, 2007) ("It is not enough that there is some remedy at law; equity will intervene if the legal remedy is not as efficient and practical to meet the plaintiff's needs.").  Measured by this standard, specific performance and equitable compensation is the more fully adequate remedy because it is much more "certain, prompt, complete and efficient" as Safeco would then properly bear the burden of assessing each Class member's DV loss according to the applicable laws where it does business.

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

Vehicle unavailability (whether because the vehicles have been sold, otherwise disposed of, or are merely unavailable for inspection) will not hinder Safeco's DV assessment.   As the *Mabry* court observed in addressing this very issue:

> The Court is convinced from the evidence that the State Farm claims files contain all of the information necessary to assess each claim in an orderly, relatively inexpensive, standardized and appropriate manner, regardless of whether an inspection takes place or not, which comports with the way the industry and State Farm have assessed claims in the past.

*Mabry v. State Farm Mut. Auto. Ins. Co.*, No. SU 99-CV-4915, (Ga. June 12, 2001), Slip Opinion, at ¶10, p.11 (attached as Exhibit 29) (finding State Farm's files contained, *inter alia*, "reports of loss", "photographs, repair estimates, vehicle inspection reports," "year, make, model, mileage, VIN," "nature of damage," "cost of repair," and "payments made").  Safeco's electronically accessible policyholder files include similar comprehensive claims information for all Class members.[36]  *See, generally*, *Moeller* Class Certification Order (discussing the "sources of information to ascertain who the proper claims members are and to determine the necessary information for damages" is electronically accessible).

The *Mabry* court further found that assessors "can and do provide regularly evaluations for insurance companies without the requirement of an inspection."  *Mabry*, Slip Op. at ¶7, p. 7-8, 17 (identifying various inspection-free industry-accepted DV assessment calculators including the Georgia Insurance Commissioner's formula).  Following the *Mabry* decision, Safeco began using inspection-free methods, including the Georgia formula, company-wide to assess DV claims.  *See* Kohl 115:1-11 and 116:1-13 (Safeco used the Georgia formula as a "reference point" to determine "a fair value" and to "assess an exposure to diminished value").[37]

---

[36] *See e.g.*, Kohl 118:3-20, 119:13-120:4 and 122:10-17 (CVO captures "estimate, the photos, the claims summary sheet and the estimate upload to C.V.O." and "notes about the claim itself, so who would they get an agreed cost of repair with, did they explain damages to the customer, payment issue," the VIN and the "area of damage"); Kohl 124:12-18; 125:21-126:25 (live estimates are available through "Intellisphere"); Carroll 79-80 (the "fault indicator" in the CVO is automated and searchable); Stave Vol. I, 99-100; Rollins 21:23-22:7 ("Claimetrics" can query claims files for information).

[37] *See also* SICI-ROLLT-232-233 (the "Georgia Formula" is Safeco's "'internal' calculation") (Pltf's Aff., Ex. 18); Stave Vol. I, at 77-78, 91-92 (Safeco used the "Georgia formula" [until January 2009] and Future Forensics formula to

---

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

### 3. "Equitable Compensation" is an Appropriate Element of Specific Performance Relief

The Rule 23(b)(2) Class is properly certified even though part of the specific performance relief Plaintiff seeks may include "equitable compensation" for insureds' DV losses. Because Plaintiff seeks to have the policy contracts enforced retrospectively, as well as prospectively, the Court must "adjust the equities of the parties in such a manner as to put them as nearly as possible in the same position as if the contract had been performed according to its terms." *Guard v. P&R Enters., Inc.*, 631 P.2d 1068, 1070 (Alaska 1981) (ordering specific performance and awarding lost profits) (citations omitted); *see also Rekhi v. Olason*, 626 P.2d 513, 517 (Wash.App. 1981) (ordering specific performance with instructions to trial court to award compensation for any losses incurred by the delay); *Beard v. S/E Joint Venture*, 581 A.2d 1275, 1284 (Md. 1990) (ordering specific performance of promise to convey land and awarding compensation to complete improvements). Here, in order to fully perform its contract obligations, Safeco must equitably compensate some Class members for their DV losses. Further, Safeco must properly categorize applicable coverages and refund all deductibles improperly charged, as well as underpaid rental payments.[38] In accordance with the maxim that, "once equity has jurisdiction, it will grant complete relief," all of the Class States provide that equitable compensation may be awarded in conjunction with a decree of specific performance. *See* "Specific Performance Prerequisites Are Uniform" Chart, attached as Ex. J.

The "equitable compensation" Plaintiff seeks is not synonymous with legal damages subject to a Rule 23(b)(3) analysis. In distinguishing between the two remedies, the *Cameron* court noted that equitable compensation, unlike damages, is:

> [A]n ordinary and constant incident of the remedy of specific performance, a part of the general course of administering the doctrines of equity, and is to be regarded, not as an independent and separate award of damages, but rather as a condition upon which the relief of specific performance is granted at all, or as a modification of that relief, so that it may be adapted to the circumstances of the case and the equities of the parties.

---

"get a feel" for whether there was DV), 85:17-86:10; 117-121 (to calculate the actual cash value of vehicles, Safeco uses CCC's inspection-free computer valuation program).

[38] *See* Carroll, 45:22-25 (it is Safeco's responsibility to refund deductibles when coverage is misapplied).

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

> *Although the amount of compensation may be ascertained upon somewhat the same basis as that upon which damages would be assessed for the same loss, yet the motives and principles upon which compensation is allowed are wholly different from those upon which damages are awarded*.

*Cameron v. Benson*, 664 P.2d 412, 415-16 (Or. 1983) (emphasis added; citations omitted); *see also Heritage Housing Corp. v. Ferguson*, 674 S.W.2d 363, 365 (Tex. App. 1984) ("compensation awarded as incident to a decree for specific performance is not legal damages for breach of contract").

The equitable DV compensation Plaintiff seeks is secondary to and cannot be had unless and until Safeco specifically performs its other contractual obligations including, where needed, reassessing each Class member's claim(s) for UM coverage and DV loss.   Because the DV compensation Plaintiff seeks is both equitable and secondary in nature, a Rule 23(b)(2) Class is properly certified with the Rule 23(b)(3) relief.[39]   *Rodriguez,* 166 F.R.D. at 474 ("[C]ourts may allow class actions on this ground where the main relief sought is an injunction, with a damages claim merely ancillary thereto.") (*citing Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir.1986), *cert. denied*, 476 U.S. 1170 (1986)).   The *Bradford* court's opinion is instructive:

> Monetary damages are almost always requested when injunctive relief is sought. Refusing to certify a Rule 23(b)(2) class action based on a request for monetary relief defeats the possibility of ever maintaining an injunctive class action. Such a nonsensical reading of the federal rules does not make good law and is flatly rejected by this Court.

*Bradford v. AGCO Corp.*, 187 F.R.D. 600, 605 (W.D.Mo. 1999).

### 4.   The Injunctive Relief Supplements the Monetary Relief

In *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), the Ninth Circuit outlined two considerations in determining what form of relief predominates: 1) whether the plaintiff would likely have brought a suit to obtain injunctive relief even if there was no prospect of monetary relief; and 2) whether the injunctive relief would be reasonably necessary and appropriate if the plaintiff was to succeed on the merits.  *Id*. at 950, n. 15 (citations omitted).

---

[39] *See* "Specific Performance Prerequisites are Uniform" Chart, attached as Ex.  J.

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

Here, Plaintiff would have brought this suit to obtain injunctive relief even in the absence of monetary relief.  *See* Hovenkotter Affidavit, at ¶ 7 (Pltf's Aff., Ex. 27).[40]  In addition, the injunctive relief sought by Plaintiff in his Complaint provides evidence of Plaintiff's primary motivation. Complaint, at ¶¶ 1.1, 6.2-6.5, 7.26-7.34.  Plaintiff wants to end Safeco's "don't ask, don't tell" DV policy - which continues to this day.  This aspect of injunctive relief will benefit a significant portion of the Class members who still are insured by Safeco.

The second prong under *Molski* is also met.  Injunctive relief is necessary and appropriate in this case.  *Williams v. Boeing Co.*, 225 F.R.D. 626, 632 (W.D. Wash. 2005) ("If Plaintiffs succeed under either [legal theory], they will have necessarily shown that there was a discriminatory company-wide policy or practice for which class-wide injunctive relief will be appropriate and necessary.").  Injunctive relief forcing Safeco to abandon its on-going policy of resisting payment of DV is both necessary and appropriate.  Consumers' interests, including those of Plaintiff and Class members, in enjoining Safeco's wrongful conduct clearly outweigh any interest Safeco could identify in knowingly underperforming its contracts with insureds by failing to notify, assess and, when applicable, pay DV losses.

## V.    CONCLUSION

Based on the foregoing, this Court should certify a Rule 23(b)(3) monetary relief Class.  In addition, this Court should certify a Rule 23(b)(2) Class to pursue declaratory, injunctive and specific performance relief from Safeco.  This Court should also appoint Martin Hovenkotter as the Class representative and undersigned counsel as Class Counsel.

Dated March 24, 2010                                   LOWENBERG, LOPEZ & HANSEN, P.S.


                                                       /s/ Stephen M. Hansen
                                                       _____
                                                       STEPHEN M. HANSEN, WSBA #15642
                                                       Of Attorneys for Plaintiff

---

[40] Plaintiff's statement provides persuasive evidence to meet the *Molski* requirements.  *See Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 642-43 (N.D. Cal. 2007) (finding deposition and declaration testimony persuasive evidence that plaintiffs would have brought the lawsuit to obtain injunctive relief even in the absence of a monetary recovery).

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Debra Hayes
Charles Hunter
REICH & BINSTOCK, LLC
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone:  (713) 622-7271
Fax:  (713) 623-8724
dhayes@hayeslaw.com
chunter@rbfirm.net

Elaine A. Ryan
Patricia N. Syverson
BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, PC (AZ)
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona  85012
Telephone:  (602) 274-1100
Fax:  (602) 274-1199
eryan@bffb.com
psyverson@bffb.com

Van Bunch
BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT (TN)
57 Carriage Hill
Signal Mountain, Tennessee  37377
Telephone:  (602) 274-1100
Fax:  (602) 274-1199
vanb@earthlink.net

David A. Futscher
PARRY DEERING FUTSCHER & SPARKS
PSC
411 Garrard Street, P.O. Box 2618
Covington, Kentucky  41012-2618
Telephone:  (859) 291-9000
Fax:  (859) 291-9300
dfutscher@pdfslaw.com

Plaintiff's Motion for Class Certification - 25

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX

1

2

## CERTIFICATE OF SERVICE

3

I, Stephen M. Hansen, hereby certify that a true copy of the foregoing document filed

4
through the ECF system will be electronically sent to the registered participants as identified on the

5
Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered

6
participants on March 24, 2010.

7

8
                                        /s Stephen M. Hansen
                                        Stephen M. Hansen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Motion for Class Certification - 26

**LOWENBERG, LOPEZ & HANSEN, P.S.**
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/(253) 838-4993
(253) 383-1808 FAX