The Honorable James L. Robart

1

2

3

4

5

6              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
7                    AT SEATTLE

8  MARTIN HOVENKOTTER,

9              Plaintiff,              NO.  2:09-cv-00218 JLR

10     vs.                            DEFENDANT'S RESPONSE TO
                                      PLAINTIFF'S MOTION FOR CLASS
11 SAFECO INSURANCE COMPANY OF        CERTIFICATION
   ILLINOIS,
12                                    NOTE ON MOTION CALENDAR:
              Defendant.              May 24, 2010
13

14        Defendant Safeco Insurance Company of Illinois ("Safeco"), hereby submits this

15 Response To Plaintiff's Motion For Class Certification.

                              **INTRODUCTION**
16
          Plaintiff conceded in his deposition that this is a case, plain and simple, about money
17
   damages.  Thus, Plaintiff must satisfy the various requirements set forth in Rule 23(b)(3), as
18
   well as Rule 23(a).  As the Ninth Circuit and an increasing number of other Circuits have held,
19
   this Court cannot and should not certify a class before engaging in a rigorous analysis, including
20
   probing behind the pleadings, examining the evidence, and resolving expert disputes which bear
21
   directly on Rule 23 requirements.[1]  Plaintiff's class claims cannot withstand rigorous analysis
22

23 [1] *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008); *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005); *Unger v. Amedisys Inc.*, 401 F.3d 316, 322 (5th Cir. 2005); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004).

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR  – 1

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

because he can offer **no common proof** applicable to each and every putative class member. Here, liability exists if – and only if – (1) there was a duty to investigate and pay diminished value ("DV") under the applicable state law; (2) the post-repair value of the vehicle is less than its pre-accident value; (3) Safeco did not pay its policyholder the difference in the value of the vehicle pre-accident and post-repair; and (4) the policyholder suffered a financial loss caused by Safeco, as defined in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992).

Plaintiff has provided no admissible, probative evidence to establish that every vehicle in the putative class has suffered DV and every member of the class has suffered an injury-in-fact caused by Safeco's failure to disclose the potential for DV damages.[2]  The evidence that Plaintiff has submitted – alleged uniform conduct and flawed expert affidavits – when subjected to the requisite rigorous analysis standard, fails for at least the following reasons:

- The Court would be required to apply the law of 28 States, which differ not only as to requirements to prove CPA claims, but also as to Uninsured Motorist Property Damage ("UMPD") statutes;

- Plaintiff cannot establish that many of the members of its putative class suffered *any* financial loss at all, and such injury-in-fact is a required element of Plaintiff's claims;

- Plaintiff cannot present classwide proof that each claimant's vehicle was less valuable after the accident than it was before the accident, as is required to establish DV;

- Determining DV is an inherently subjective process, and therefore not susceptible to common proof, in which even expert adjustors can reasonably disagree as to whether the same vehicle suffered DV, and, if so, the amount of the DV.

The impropriety of class treatment here is underscored by the fact that the liability-determinative issue before the Court is whether repairs restored class members' vehicles to their pre-accident values.  Nothing could be more individualized, fact-specific, or subjective than the

---

[2] Safeco rejects the contention that such a duty exists. *See infra*, I.B.1.  Safeco's position is consistent with the law and as a matter of claims handling, as Safeco does not deduct for diminished value on total loss vehicles.

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

pre-accident and post-repair values of a particular vehicle.  Plaintiff's proposed class, however, includes thousands of insureds whose vehicles are of different makes and models, with varying ages, conditions and mileage, and with different pre-accident and post-repair values. Significantly, the putative class includes vehicles completely different from Plaintiff's 2006 Mazda with around 9,600 miles, including all variety of vehicles whose values were either not affected or actually increased post-repair.  Many of these insureds' vehicles *did not suffer any DV at all* – for instance, vehicles with prior unrelated damage, vehicles that are leased, not owned, by the insureds, or vehicles that were actually improved by the repair job.  Moreover, there can be no injury or financial loss unless the vehicle is actually sold at a loss.  Plaintiff's high-performance Mazda, and the facts surrounding the handling of his claim, further highlight that neither typicality nor commonality are satisfied, and individualized issues predominate over any alleged common issues of law or fact.

In short, the evidence necessary to prove Plaintiff's claim cannot be generalized to prove the individual claims of the putative class members, including, critically, whether other putative class members suffered any injury-in-fact.  For example, classwide injury cannot be assumed simply because a class member's vehicle was in an accident and is under a certain age or mileage.  And actual injury is central to establishing *liability*.  Not surprisingly, Plaintiff failed to provide this Court with any plan for trying this case as a class action because he cannot. Indeed, even class counsel admits: "[t]here are considerable obstacles to the certification of a nationwide class alleging false or deceptive practices in claims handling under the Washington consumer protection statute."[3]  For these reasons, class certification should be denied.

---

[3]  Ex. F, Class Pls.' Mot. to Disqualify Counsel at 14-16, *Martin v. Twin City Fire Ins. Co.*, No. 08-05651-RJB, (W.D. Wash. Feb. 3, 2010) (settlement approval pending); Class Pls.' Opp. to Memo. of Authorities to Postpone Class Pl.s' Mot. for Final Approval of Class Action Settlement at 10-12, *Shin v. Esurance Ins. Co.*, No. 08-CV-05626-RBL, (W.D. Wash. Jan. 22, 2010) (settled).  Also, this case is the fourth UMPD DV case in the Western District of Washington alone where Plaintiff's counsel has unsuccessfully tried to certify a class and three other states have rejected class certification of these exact claims in cases brought by his counsel.  *Heaphy v. State Farm Mut. Auto. Ins. Co.*, No. C05-5404, 2005 WL 2573340 (W.D. Wash. Oct. 12, 2005) (dismissed); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281 (Del. 2001) (dismissed class allegations); *Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801-MR, 2004 WL 2011375 (Ky. Ct. App. 2004) (dismissed claim for inherent DV); *Gov't. Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022 (Tenn. Ct. App. June 29,

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 3

SAF014 0001 ld238606 4/23/10

**CARNEY BADLEY SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1

## STATEMENT OF FACTS

2

Plaintiff is an active car enthusiast who has purchased and sold more than 40 vehicles at

3  last count.   Ex. A, Decl. of Tiffany L. Powers, at Ex. 1, Dep. of Martin Hovenkotter

4  ("Hovenkotter Dep."), at 25:17-26:6; 39:18-40:2.[4]   Plaintiff touts himself as an automobile

5  collector who is interested in purchasing only "collector vehicles" – those that are unique by

6  manufacturer or high-performance vehicles – as opposed to the average vehicle for purchase

7  and sale.   *Id.* at 39:18-40:2; 43:21-45:12.   According to Plaintiff, the types of vehicles he

purchases and collects are "not of interest to somebody who is just going to get groceries." *Id.*

8  at 44:18-19.   In general, Plaintiff keeps his vehicles for approximately a year when he "hit[s]

9  [his] boredom level and sell[s] them." *Id* at 70:14-20.

10

In January 2007, Plaintiff left his 2006 Mazda Speed 6 AWD four-door sedan parked in

11  downtown Issaquah overnight due to a snowstorm.   *Id.* at 75:12-76:22.   As with Plaintiff's other

12  collector vehicles, Plaintiff's Mazda was "a fairly unique model" and a "high-performance

13  vehicle." *Id.* at 43:13-47:19.   The following day, when Plaintiff returned to collect his Mazda

vehicle, he noticed that it was dented in the front.   *Id.* at 75:12-76:22.   Plaintiff's vehicle

14  operated normally after the accident, and he waited approximately a month until he brought his

15  vehicle to Haury's Lake City Collision for repair.   *Id.* at 79:2-24.   The estimate to repair the

16  frame, body, paint and other damage to Plaintiff's vehicle was $2,874.58. (Compl. (Dkt. # 1) at

17  ¶ 4.1).   When the estimate detailed more damage than expected, Plaintiff reported his accident

18  to Safeco for the first time, approximately six weeks after the accident and after Haury's had

19  already dismantled the vehicle for repair.   Hovenkotter Dep. at 95:12-96:21.    Safeco paid to

repair the physical damage to Plaintiff's vehicle under the Collision provision of Plaintiff's

20  policy, less the applicable deductible. (Compl. at ¶ 4.2).

21

Plaintiff did not have any issues with the quality of Haury's vehicle repairs.

22

2007) (denying class certification).
[4]  All deposition excerpts cited herein are attached to Powers Decl. *See* Powers Decl., Ex. 1 (Hovenkotter Dep.);
23  Ex. 2, Dep. of Scott Kohl ("Kohl Dep."); Ex. 4, Dep. of Toby Rollins, Volume II ("Rollins Dep. Vol. II"); Ex. 5, Dep. of Michael G. Stave, Volume I ("Stave Dep. Vol. I"); Ex. 7, Dep. of Michael Carroll ("Carroll Dep.").

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

Hovenkotter Dep. at 95:2-8; 97:8-13; 127:4-7.  Due to a medical condition, Plaintiff needed to sell his vehicle approximately five months after it was repaired, in August 2007.  *Id.* at 108:25-109:2; 115:18-116:15.  He therefore listed the Mazda for sale on AutoTrader and Craigslist, *id.* at 109:15-110:21.  Plaintiff listed his vehicle on AutoTrader for $20,995.  *See* Ex. B, Decl. of Custodian of Records.  Plaintiff sold his vehicle only three weeks after it was listed. Hovenkotter Dep. at 117:5-8.  Plaintiff elected to sell the vehicle to Michael Smith, a sixteen-year-old Mazda enthusiast.  *See id.* at 117:10-19.  In fact, Plaintiff liked the fact that he was selling the car to someone who appreciated its features so much that he drove the car from Seattle, Washington to Phoenix, Arizona.  *Id.* at 117:20-23.  The sale price of the vehicle to Smith was $18,500, or $2,445 less than the list price.  *Id.* at 118:2-20; Ex. B.

Sometime after the repair was finished, Haury's referred Plaintiff to attorney Alana Bullis, one of the counsel of record in this matter. Hovenkotter Dep. at 86:8-90:12.  On January 12, 2009, Ms. Bullis told Safeco that Plaintiff's claim may have been mischaracterized as a Collision claim instead of a UMPD claim.  Ex. C, Aff. of Michael Carroll ("Carroll Aff.") at ¶ 6.  Safeco immediately re-opened the file, investigated this issue, and recharacterized the claim as UMPD, although Safeco was never informed that Plaintiff had notified the police about his accident, as is required under Washington law for UMPD claims.  *Id.* at ¶ 7; Ex. D, Hovenkotter Policy at Bates No. Hovenkotter0036.  Safeco refunded the $200 deductible difference to Plaintiff.  Powers Decl., Ex. 6.  In closing out the claim again, the adjuster handling the file asked Ms. Bullis if there were any other outstanding issues on this claim; Ms. Bullis stated that there were not.  Carroll Aff. at ¶ 9.  Plaintiff sued approximately three weeks later.  (*See generally* Compl.).

## LEGAL ARGUMENT AND CITATION OF AUTHORITY

**I.      No Multi-State Class Can Be Certified Because The Differences In State Laws And Policy Language Create Individualized Issues That Defeat Predominance.**

Plaintiff's proposed class sweeps across 28 different states and would need to address

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR  – 5

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

1   policies in effect from 2003 through the present. (Compl. at ¶ 6.6).[5] Certification of Plaintiff's

2   proposed class would require this Court to apply the laws of 28 states and the language of 260

3   different policies, rendering class certification unworkable and impractical. Carroll Aff. at ¶ 10.

4   Indeed, the Washington Supreme Court has expressly prohibited application of the Washington

5   CPA to claims brought by persons residing outside that state, *Schnall v. AT&T Wireless Servs.,*

6   *Inc.,* 225 P.3d 929, 939 (Wash. 2010) (en banc), making it impossible for this Court to avoid

7   delving into each relevant state's law for each putative class member. In a putative multi-state

8   class action, Plaintiff bears the burden of demonstrating that any variations in these state laws

9   would not make class certification unmanageable. *See Duncan v. Nw. Airlines, Inc.,* 203 F.R.D.

10  601, 613 (W.D. Wash. 2001). In a futile effort to meet this burden, Plaintiff ignores the holding

11  in *Schnall,* even though class counsel was intimately aware of it,[6] and vaguely asserts that the

12  laws of the states are uniform. (Pl.'s Mot. at 13-14; 17-18). Plaintiff is wrong; there are critical

13  variations among the 28 States' laws. Each putative class member's home state's law must

    apply for at least three reasons.

14      First, the governing insurance policies on which Plaintiff bases his claims require

15  application of the various states' laws. For example, some policies contain explicit choice-of-

16  law provisions that would be thwarted by the application of Washington law. *See* Carroll Aff.

17  at ¶ 11(a), (h); Powers Decl., at Ex. 8, Policy Language Excerpts ("Ex. 8"). Such choice-of-law

18  provisions are routinely enforced. *See, e.g., Erwin v. Cotter Health Ctrs., Inc.,* 167 P.3d 1112

19  (Wash. 2007); *Schnall,* 225 P.3d at 934 ("AT&T should not now be forced to face the enormous

20  cost and complexity presented by a nationwide class action when they consciably included

21  choice-of-law provisions in their customers' contracts . . ."). Even where a policy does not

    include an explicit choice of law provision, the laws of an insured's home state must apply for

22  purposes of this action, rendering a nationwide class action impossible. As a matter of law,

23  ---
[5] The 28 state laws are those in which Safeco sells UM coverage. Safeco does not offer UM coverage in the remaining states. (*See* Pl.'s Mot. for Class Cert. (Dkt. # 44) at 1 [hereinafter "Pl.'s Mot."]).
[6] *See* Ex. F, Class Pls.' Mot. to Disqualify Counsel at 14-16, *Martin,* No. 3:08-05651-RJB.

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 6

SAF014 0001 ld238606 4/23/10

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

insurance policies incorporate the laws of the states in which they are issued – *i.e.*, the principal location of the insured risk – and must be interpreted according to that state's law. *See, e.g., Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976) (adopting the "significant relationship" test in section 145 of the Restatement (Second) of Conflict of Laws (1971)).[7] Consequently, even where the policy language itself does not differ from state to state, the way the coverage provisions are applied will differ based on variations among the states' substantive laws, which are incorporated into the policies of the 28 different states. For example, whether Washington or California law applied to the interpretation of "underinsured" in *West American Ins. Co. v. MacDonald,* 68 Wash.App. 191, 841 P.2d 1313 (1992), was critical as the insured was unable to recover UIM benefits under California law, but would have been able to do so under Washington law. *Id.* at 195. There, the court determined that California law applied because the insured resided in California, and the policy referred to California law and provisions of the California Insurance Code, among other things. *Id.* at 193. As such, this Court cannot constitutionally impose Washington law on non-Washington residents. The need to apply the laws of each state alone defeats predominance. *See Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000) ("the variations in the laws of the states . . . 'may swamp any common issues and defeat predominance.'") (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)).

Second, and as explained in more detail below, under Washington choice of law rules, there are outcome-determinative differences among the various state CPAs and uninsured motorist laws incorporated into the contracts, resulting in material policy language differences. The differences in application of those laws and policies likewise preclude a finding of predominance. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996)

---

[7] Other states likewise incorporate the laws of the states where the insurance policy is issued. *See, e.g., Carner v. Farmers Ins. Co. of Ark.*, 623 S.W.2d 859, 860 (Ark. Ct. App. 1981); *Crowley v. Hardman Bros.*, 223 P.2d 1045, 1050 (Colo. 1950); *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004); *Williams v. Moran*, 233 So. 2d 110, 115 (Miss. 1970); *Farmland Ins. Cos. of Des Moines, Iowa v. Heitmann*, 498 N.W.2d 620, 623 (S.D. 1993). *Harkins v. Ind. Lumbermens Mut. Ins. Co. of Indianapolis, Ind.*, 234 S.W.2d 430, 431 (Tex. Civ. App. 1950).

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 7

SAF014 0001 ld238606 4/23/10

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues is compounded exponentially."); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task."), *aff'd*, 521 U.S. 591 (1997).

Third, both the Due Process and Full Faith and Credit Clauses of the United States Constitution forbid applying a forum state's substantive law unless it has significant contacts with the claim. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818 (1985) (applying law of state without significant contacts is "fundamentally unfair"). The non-Washington class members do not have sufficient contacts with Washington to satisfy due process.

### A. Class Members' Home-State Laws Apply To Their Claims Because *Schnall* Prohibits Application of the Washington Consumer Protection Act To Out-Of-State Class Members And There Are Outcome-Determinative Differences In Statutory Consumer Protection Law.

The Washington Supreme Court has definitively ruled that a multistate class action cannot be maintained for a Consumer Protection Act ("CPA") claim. *Schnall*, 225 P.3d 929. In *Schnall*, the Court affirmed the trial court's denial of certification of a nationwide breach of contract and consumer protection class, holding "the CPA only applies to claims brought by persons residing in Washington." *Id.* at 939. Accordingly, the Washington CPA cannot apply to out-of-state-class members, and their home state's law must be applied to their claims. Significantly, because the CPA claim cannot be certified, Plaintiff's entire duty to investigate argument fails as a matter of law. Plaintiff does not dispute that there is no contractual duty to investigate, and therefore this argument is relevant only to Plaintiff's CPA claim, which is predicated on alleged violations of WAC §§ 284-30-330, 350; RCW §§ 48.30.040, .090. Since the multistate CPA claim cannot be certified, neither can the so-called "don't ask, don't tell" argument be certified.

Moreover, there are significant differences in the various states' consumer protection laws, such that litigating those claims would require multiple individualized inquiries. At a

---

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 8

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

minimum, the consumer fraud statutes vary in: (1) whether they allow class actions; (2) whether they allow claims stemming from insurance transactions; (3) the necessity of scienter of reliance; (4) whether the defendant must have knowingly engaged in the conduct; and (5) the burden of proof. *See* Ex. E, CPA Chart. Even Class Counsel acknowledges that, "[C]onsumer fraud laws of the states "differ with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few." Ex. F, Class Pls.' Opp. to Memo. to Postpone Class Pls.' Mot. for Final Approval of Class Action Settlement and Settlement Class Certification at 11, *Shin*, Case No. 08-CV-05626-RBL. Accordingly, the proposed Washington CPA claim cannot be certified.

> **B.** **Class Members' Home-State Laws Apply To Their Claims Because There Are Outcome-Determinative Differences In The Various States' Uninsured Motorist Statutes And Policy Language.**

Plaintiff erroneously asserts that "Washington and the Class States have found that [the] policy language legally obligates Safeco to pay insureds" for DV. (Pl.'s Mot. at 1). A review of the applicable laws reveals just the opposite. Plaintiff ignores the fact that the proposed class definition involves uninsured motorist claims and that the claims are therefore governed by the varying state uninsured motorist ("UM") laws. *See Fisher v. Allstate Ins. Co.*, 961 P.2d 350, 353 (Wash. 1998) ("The relationship of the [UIM] insurer and insured is contractual, the source of the obligation to offer UIM coverage is statutory."). What the insured is "legally entitled to recover" is substantially and materially different under the varying UM statutes and resulting policy language in the various states, precluding certification of a multi-state breach of contract claim. *See id.*

> *1.* *Only One Class State Imposes A Duty To Inform And Investigate.*

Significantly, only one state – Georgia – definitively requires the insurer to initiate and investigate payment of DV for UMPD claims. *State Farm Mut. Auto. Ins. Co. v. Mabry*, 556 S.E.2d 114 (Ga. 2001).[8] Safeco fully complies with that requirement. Kohl Dep. at 131:5-

---

[8] Plaintiff's "Uniform Duty to Fully Investigate Claims" chart does not truly reach the legal issue in this case:

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 9

SAF014 0001 ld238606 4/23/10

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

132:9.   Plaintiff's cobbling together of various general legal principles does not make true his aspirational assertion that Safeco has an affirmative duty to initiate an investigation in the absence of any claim by the insured and to pay DV damages in all the other states.  Contrary to Plaintiff's gross oversimplification, no state other than Georgia explicitly imposes this requirement, and there are very few cases in any of the states that even discuss whether DV is a recoverable element of damages for UMPD claims.  Some states hold that first-party insureds, such as plaintiff, have no right to recover DV under Collision coverage, but do not appear to have addressed the issue for UMPD coverage.[9]  *Sims v. Allstate Ins. Co.*, 851 N.E.2d 701, 707 (Ill. App. Ct. 2006) (affirming judgment of lower court that class of insureds were not entitled to DV); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158-59 (Tex. 2003) (holding that automobile insurer was not obligated under policy to pay insured for diminution in value).[10]  While *Moeller v. Farmers Insurance Co. of Washington*, No. 30880-1-II, 2010 WL 927989, (Wash. Ct. App. Mar. 16, 2010), holds that DV is recoverable for Collision claims, that holding is inapposite here for several reasons.  As an initial matter, the defendant in *Moeller* has sought discretionary review of that decision.  *See* Ex. G, Pet. for Discretionary Review, *Moeller v. Farmer's Ins. Co. of Wash.*, No. 30880-1-II (Wash. Apr. 14, 2010).  Second, the Collision coverage at issue in *Moeller* is not at issue here because Safeco's Collision coverages explicitly exclude DV damages.  *See* Carroll Aff. at ¶ 11.    Third, *Moeller* was argued before the

---

whether DV is required to be paid as an element of damages for UMPD claims and whether the insurer has an affirmative duty to investigate DV damages where the insured never makes a claim.  As explained above, the states are all over the map on these issues.

[9]  Claims for DV have been rejected in multiple cases.  *Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454, 465 (Tex. App. 2000); *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 22-23 (Mo. Ct. App. 2002); *Johnson v. Ill. Nat'l Ins. Co.*, 818 So. 2d 100, 104 (La. Ct. App. 2001); *Siegle v. Progressive Consumer Ins. Co.*, 788 So. 2d 355, 359-61 (Fla. Dist. Ct. App. 2001); *Ray v. Farmers Ins. Exch.*, 246 Cal. Rptr. 593, 596 (Cal. Ct. App. 1988); Michigan, *Driscoll v. State Farm Mut. Auto. Ins. Co.*, 227 F. Supp. 2d 696, 706 (E.D. Mich. 2002); New Mexico, *Davis v. Farmers Ins. Co. of Ariz.*, 142 P.3d 17 (N.M. Ct. App. 2006); *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 135 (S.C. 2003); *Bickel v. Nationwide Mut. Ins. Co.*, 143 S.E.2d 903, 906 (Va. 1965).

[10]  In yet another instance of providing misinformation, by way of example and not limitation, Plaintiff contends in his "Uniform Duty to Assess and Pay Diminished Value" chart that DV is recoverable by citing a 1929 Illinois tort case, *Borgmier v. Wood*, No. 7,949, 1929 WL 3180, at *2 (Ill. App. Ct. Mar. 21, 1929), which has been implicitly overruled by the more recent case cited above, and a case in Texas outside  both the automobile and insurance contexts, *Terminex International, Inc. v. Lucci*, 670 S.W.2d 657, 662 (Tex. App. 1984).

---

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 10

SAF014 0001 ld238606 4/23/10

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

Washington Court of Appeals over five years ago, and erroneously relied on the testimony of Dr. Bernard Siskin.[11]  Dr. Siskin is not designated as an expert in this case, and his methodology has been rejected in other matters.  (*See* Def.'s Mot. to Exclude, filed contemporaneously herewith, at 8-9).   Plaintiff's proposed expert Dr. Polissar attempts to adopt, blindly and wholesale, the opinions of Dr. Siskin in this case, but his testimony should be excluded as explained in Safeco's Motion to Exclude. *See* Fed. R. Civ. P. 10(c).

Other states appear to be silent on the issue of whether DV is even recoverable in the first place, which would require the Court to examine the UMPD statutes in each state, some as matters of first impression, and interpret those statutes, the language of which varies greatly, to determine whether Safeco is obligated to pay DV as an element of damage for UMPD claims. For example, in Arkansas, insurers are entitled to limit their liability to actual cash value of the vehicle at the time of the loss and repair or replacement costs. *Tri-State Ins. Co. v. McCraw*, 483 S.W.2d 212, 217 (Ark. 1972).  In Oregon, an insurer is only required to pay DV to an insured where the vehicle is not repaired to its pre-loss condition. *Gonzalez v. Farmers Ins. Co. of Or.*, 196 P.3d 1 (Or. 2008).  Some states require a judgment against the uninsured motorist or settlement with the uninsured motorist prior to an action against the insurer.[12]  At least two states have arbitration provisions for disputes relating to damages under an uninsured motorist provisions.[13]  Parsing the meaning of these state-specific statutes and applying them to the various facts of each class members' claim is precisely why this case is inappropriate for class treatment. *Duncan*, 203 F.R.D. at 613-14.

2.    *States Differ On Classification Of A Claim As UMPD Or Collision.*

---

[11]  The trial court in *Moeller* relied upon Dr. Siskin's methods of proving class-wide diminished value in certifying the class. Ex. I, Class Cert. Order at 9-10, *Moeller v. Farmers Ins. Co. of Wash.*, No. 99-2-07850-6 (Pierce County Super. Ct. Sept. 13, 2002), and the Washington Court of Appeals considered these methods in affirming the trial court's class certification order. *Moeller*, 2010 WL 927989, at *7 n.14.

[12]  *Cohen v. Allstate Ins. Co.*, 626 S.E.2d 628, 632 (Ga. Ct. App. 2006); *Pollock v. Goodwin*, No. 3:07-3983-CMC, 2008 WL 216381, at *4 (D.S.C. Jan. 23, 2008); *Seymour v. Sierra*, 98 S.W.3d 164, 165-66 (Tenn. Ct. App. 2002); *Rhault v. Tsagarakos*, 361 F. Supp. 202, 206 (D. Vt. 1973); *Blaha v. Tinney*, 10 Va. Cir. 413 (Va. Cir. Ct. 1988); *State ex rel. Motorists Mut. Ins. Co. v. Broadwater*, 453 S.E.2d 591, 594-95 (W. Va. 1994).

[13]  *See* Cal. Ins. Code § 11580.26(a)(2); 215 Ill. Comp. Stat. 5/143a(2).

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 11

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

1

   Likewise, Plaintiff argues that Safeco improperly characterizes UM claims as Collision

2 claims, but disregards that state statutes and policy language dictate how and when UM

3 coverage applies. *See* Exs. 8 and H, Policy Language Exclusion and UMPD Statutory charts.

4 For example, in Colorado and Louisiana, where an insured has both UMPD coverage and

5 Collision coverage, Safeco is both statutorily and contractually required to characterize the

6 claim as Collision. *See* Colo. Rev. Stat. § 10-4-610(1)(b); La. Rev. Stat. Ann. § 22:1295(d)(iii);

7 Carroll Aff. at ¶ 11(b), (c). In California, Ohio and Illinois, where an insured has both UMPD

8 coverage and Collision coverage, Safeco is contractually required to characterize the claim as

9 Collision. Ex. 8; Carroll Aff. at ¶ 11(d)-(f). In contrast, Safeco policies in other states permit

10 the insured to choose between coverages where the insured has both coverages. Ex. 8; Carroll
Aff. at ¶ 11 (g)-(l).

11    Likewise, some, but not all, policies within the putative class have heightened claim

12 requirements to trigger UMPD coverage, such as different time periods within which the police

13 must be notified. Ex. 8; Carroll Aff. at ¶ 11 (b), (g), (m)-(o). In sum, there is simply nothing

14 wrong about Safeco applying Collision coverage to claims in certain states where it is statutorily

15 permitted or required.[14] Moreover, determining which law applies, whether Safeco's claim

16 classification was permitted by that law, and whether the insured elected to apply UMPD or
Collision coverage creates individualized issues that defeat predominance.

17 **II.   NO CLASS CAN BE CERTIFIED UNDER RULE 23(B)(3) BECAUSE
        INDIVIDUALIZED ISSUES PREDOMINATE.**

18    The individualized issues raised by Plaintiff's claims not only predominate but

19 completely overwhelm any supposedly common issue. For this reason, even a Washington-only

20 class would be an abuse of discretion here, because trying Plaintiff's case with his uncommon,

21

_____

22 [14] Plaintiff also argues that characterization of a UMPD claim as a Collision claim limits the insured's access to
rental replacement vehicles, but some states' UMPD statutes do not entitle an insured to rental replacement
vehicles. See, e.g., Alaska Stat. § 21.89.445(g); Cal. Ins. Code § 11580.26(a)(2); Colo. Rev. Stat. § 10-4-610(1)(c);
Ind. Code Ann. § 27-7-5-3(b); La. Rev. Stat. Ann. § 22:1295(1)(d)(ii); Or. Rev. Stat. § 742.510(3)(b); Utah Code
23 Ann. § 31A-22-305.5(2)(b). Policies in those states would permit recovery for loss of use under Collision, but not
under UMPD, coverage. Ex. 8; Carroll Aff. at ¶ 11 (b), (c), (f), (n)-(q).

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

atypical Mazda, and his meticulous care for this vehicle,[15] would not tell this Court a single thing about how any other putative class member's claim for DV on its Ford, Mercedes, or Volvo would be tried.[16]

### A. No Class May Be Certified Because Liability Only Can Be Established Through Individualized Proof Of Injury-In-Fact.

Even if Plaintiff could establish Safeco's duty to investigate DV – which it cannot, *see supra* I.B.1 – whether a class member can prevail on the CPA or breach of contract claims depends upon whether that class member can establish injury-in-fact, an essential element of both claims. *See generally Branson v. Port of Seattle,* 101 P.3d 67 (Wash. 2004) (dismissing plaintiff's CPA claims because plaintiff failed to establish that he suffered an injury from the challenged practice); *see also Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.,* 899 P.2d 6, 9 (Wash. Ct. App. 1995) (stating that a plaintiff must show damage proximately resulting from a breach as an element of a breach of contract claim). Liability attaches if – and only if – the post-repair value of the policyholder's vehicle is less than its pre-accident value, Safeco did not pay the policyholder the difference in value, and the policyholder suffered an actual injury-in-fact under *Lujan,* 504 U.S. 555 (1992), due to Safeco's alleged failure to pay.

Whether a vehicle has, in fact, suffered a diminution in its value depends on the year, make, model, mileage, options, components and condition of a vehicle, among other factors. *See* Powers Decl., at Ex. 3, Expert Rep. of Stephen D. Prowse, Ph.D, CFA ("Prowse Rep.") at ¶¶ 25-28. Assessing diminution in value requires knowledge of the pre-accident condition and value, to the post-repair condition and value, which varies from car-to-car.[17] *See id.* at ¶¶ 21-22; Kohl Dep. at 92:22-95:15. One appraiser may examine a vehicle and determine it is in "dealer-

---

[15] *See* Hovenkotter Dep. at 45:13-21; 70:17-71:16; 126:15-128:5.
[16] The commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b) are closely related. Where, as here, a host of individualized issues predominate over common issues, the commonality requirement is also not met. *See Zinser,* 253 F.3d at 1189.
[17] When evaluating an insured's diminished value claim and determining pre-loss value, Safeco does not consider whether the insured's vehicle has been in a previous accident, and therefore does not factor in any previous diminution in value. Stave Dep. Vol. I at 85:10-86:15.

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 13

SAF014 0001 ld238606 4/23/10

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

ready" condition, while another may determine that it is in "good," as opposed to "excellent" condition. Prowse Rep. at ¶ 21; Rollins Dep. Vol II. at 121:22-122:4. In short, valuation of a vehicle is an "art," not a science.[18] *Cf. BMW of N. Am., Inc. v. United States*, 39 F. Supp. 2d 445, 447 (D.N.J. 1998) ("The parties agree that the determination of 'fair market value' is not an exact science, and that reasonable persons, acting reasonably and in the utmost good faith, could reach different conclusions with respect to an automobile's 'fair market value.'"); *Dumas v. Grain Dealers Mut. Ins. Co.*, 204 So. 2d 120, 123 (La. Ct. App. 1967) ("It is difficult to recognize or accept any fixed rule in determining an exact value of an automobile, whether totally or partially damaged; nor can any Bluebook Guide, fixing in a general sense respective valuations of automobiles, be adopted by us."). Moreover, diminution in value will also vary greatly due to other subjective and uncontrolled factors, such as how soon after the accident a vehicle is sold, how long a vehicle is on the market, how and by what means a vehicle is listed for sale, and whether the seller and/or buyer of the vehicle is a skilled negotiator. Not every vehicle suffers DV. For example, DV is not owed to insureds for leased vehicles. *Heaphy v. State Farm Mut. Auto. Ins. Co.*, No. C05-5404RBL, 2005 WL 2573340 (W.D. Wash. Oct. 12, 2005) (explaining state trial court's approval of arbitrator's decision not to permit plaintiff to recover DV because her damaged vehicle was leased). Some individuals may hold onto their vehicles and never sell them, resulting in no financial loss. In many cases, the difference will be nothing, or the post-repair car will be worth *more* than the pre-accident car. Prowse Rep. at ¶¶ 26-28, 32; *see also* Stave Dep. Vol. I at 140:20-141:13; *see also Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10, 2007 WL 1966022, at *47, n.36 (Tenn. Ct. App. June 29, 2007).

Contrary to Plaintiff's representation, it is not possible to determine even in automatically generated reports whether the putative class members' vehicles suffered DV

---

[18] Ex. J, Affidavit of Toby S. Rollins, at ¶ 3 ("[A]ny valuation for diminished value is subjective. There is no one right number; appraisal is an art, not a science."); Prowse Report at ¶ 21.

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 14

SAF014 0001 ld238606 4/23/10

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

without examining the specific facts relating to each vehicle. *See, e.g., Schwendeman v. USAA Cas. Ins. Co.*, 65 P.3d 1, 7-8 (Wash. Ct. App. 2003) (individual inquiries predominated plaintiff's claim that defendant wrongfully used non-OEM parts to repair damaged vehicles, as it would require the court to determine for each individual part whether the non-OEM part was inferior to its OEM counterpart); Stave Dep. Vol. I at 80:14-83:12; 140:20-142:3. As one court refusing to certify a UMPD DV class has explained,

> Two cars of the same make and model, with substantially the same mileage, may differ in value depending on the condition. Condition is an important component of valuation . . . A number of individual factors must be considered to determine whether any particular vehicle actually sustained a diminution in value attributable to the damage sustained in an accident. Among the factors relevant to determining pre-accident and post-accident values, in addition to the vehicle's make and model, are its pre-accident physical and mechanical condition; its age and history; its optional equipment or lack thereof; maintenance history by current and past owners; unrepaired damage from prior incidents; and various marketplace factors.

*Bloodworth*, 2007 WL 1966022, at *45; *see also* Kohl Dep. 92:22-95:15; *Gonzalez v. Farmers Ins. Co. of Or.*, No. 9910-11479 (Or. Cir. Ct., Multnomah County Apr. 13, 2010) (denying class certification in DV case); *Muise v. GPU, Inc.*, 851 A.2d 799, 819-23 (N.J. Super. Ct. App. Div. 2004) (upholding trial court's class decertification based upon predominance of individual causation issues regarding negligence and breach of contract; rejecting statistical model of damages where no proof of compensable injury to every class member, finding it insufficient that "vast majority" of plaintiffs sustained economic loss).

Curiously, Plaintiff argues that Safeco "unfairly burdens" the insured to prove DV, *see* Pl.'s Mot. at 2; as the insured, Plaintiff has the burden of proof as it is well-settled that the insured must prove that the policy covers the damage suffered. *See, e.g., Solomon v. Royal Maccabees Life Ins. Co.*, 622 N.W.2d 101, 103 (Mich. Ct. App. 2000) ("A generally recognized principle of insurance law is that the burden of proof lies with the insured to show that the policy covered the damage suffered."); *Carriere v. Triangle Auto Serv.*, 340 So. 2d 665, 666 (La. Ct. App. 1976); *Patrick Schaumburg Autos., Inc. v. Hanover Ins. Co.*, 452 F. Supp. 2d 857,

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR  – 15

SAF014 0001 Id238606 4/23/10

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

868 (N.D. Ill. 2006).  That is all that Safeco requires here.  Kohl Dep. at 43:5-24; Stave Dep. Vol. I at 39:9-41:11.  It is hardly surprising or improper for an insurance carrier to require a written proof of loss for an element of the insured's damage.[19]

As recognized by a court rejecting (b)(3) certification for a DV class: "In sum, we conclude that there are too many individualized variables which come into play in a claim for diminution in value in an automobile accident case to make the action appropriate for certification of a class." *Defraites v. State Farm Mut. Auto. Ins. Co.*, 864 So. 2d 254, 262  (La. Ct. App. 2004); *see also Bloodworth*, 2007 WL 1966022, at *47 (holding that trial court abused its discretion in certifying class of first-person DV claimants because plaintiff could not show that common issues predominate); *Roth v. Amica Mut. Ins. Co.*, 796 N.E.2d 1281, 1283-84 (Mass. 2003) (affirming denial of class certification of insureds seeking to recover inherent diminished value under a Collision policy); *Cazabat v. Metro. Prop. & Cas. Ins. Co.*, No. KC99-544, 2001 WL 267762, at *9 (R.I. Feb. 23, 2001) (denying motion to certify a class of insureds seeking to recover inherent diminished value under a comprehensive Collision policy). For each and every claim, the Court would have to determine:

- Was the claim classified as UMPD or Collision?
- Does the applicable Class State law impose a duty to investigate DV claims?
- Did the claimant request DV damages?
- Is the vehicle leased?
- Has the vehicle been in a prior accident and already recovered diminution in value?
- Was DV suffered?
  - Was there physical damage that could not be repaired, or only stigma damage?
  - Did the repaired vehicle actually improve in value compared to its pre-

---

[19] Ex. K, Affidavit of Scott Kohl, at ¶¶ 3-4.

**CARNEY BADLEY SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

loss condition?

    o   What was the value of the vehicle in pre-loss condition?  What was the value of the vehicle in post-loss condition?  Consider make, model, mileage, age, history, optional equipment, maintenance history, unrepaired damage, and other marketplace factors.

- Did the claimant comply with policy provisions necessary to invoke UMPD coverage?

In short, that Safeco did not investigate or pay DV on Plaintiff's UMPD claim will not be dispositive – or even indicative – of whether failure to investigate or pay DV for other putative class members' vehicles was improper.  Rather, if Plaintiff is permitted to pursue class relief, this case will necessarily deteriorate into thousands of mini-trials (or mini-appraisals), evaluating the pre- and post-loss condition of each class member's vehicle.  *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328-29 (5th Cir. 2008) (stating that when "no class-wide proof [is] available" "only mini-trials can determine" the ultimate issue).  Ultimately, additional individualized evidence would be presented as to whether the class member requested DV from Safeco.  *See Schwendeman*, 65 P.3d at 11 (affirming denial of class certification because individualized issues made a class action unmanageable).  This process plainly demonstrates how individual issues swallow the class here and would turn class certification on its head.  *See Zinser*, 253 F.3d at 1189.

**B.    The Individualized Issues Related To Classification Of A Claim As UMPD Or Collision Defeats Predominance.**

Similarly, Plaintiff's argument that some UMPD claims are inappropriately classified as Collision claims requires a painstaking, claim-by-claim assessment.  Plaintiff's classification argument is, at its core, a red herring.  First, contrary to Plaintiff's assertion, there are several instances where the deductible under Collision coverage is less than that under UMPD coverage.  Carroll Aff. at ¶ 4.  Second, Plaintiff's bald allegation that Safeco intentionally

DEF.'S RESP. TO PL.'S MOT. FOR CLASS CERTIFICATION, 2:09-cv-00218 JLR  – 17

**CARNEY BADLEY SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

mischaracterizes UMPD claims as Collision to get a few more dollars from the deductible is belied by the evidence of record, which shows only that the characterization of Plaintiff's claim as Collision as opposed to UMPD was, at worst, a one-off incident due to lack of information in the file regarding notice of the accident to the police. Carroll Aff. at ¶¶ 6-9. While Plaintiff's claim was initially classified as Collision, it was reclassified as UMPD when he asked Safeco to reopen and reevaluate the claim. *Id.* at ¶ 7; Carroll Dep. at 98:16-99:2. Plaintiff has not offered any evidence that Safeco has a uniform policy or procedure of misclassifying UMPD claims, or that misclassification adversely impacts an insureds' insurance ratings. Nevertheless, Plaintiff is asking the Court to review each claim currently characterized as Collision to see if a potential for UMPD coverage exists. (Pl.'s Mot. at 9). That is a fact-intensive, policy-specific, individualized inquiry that inherently requires file by file review.[20]

**C.     Plaintiff's Attempt To Create A Common Measure Of Tort Damages Fails.**

Plaintiff attempts to obfuscate injury-in-fact inquiries by pointing to a general tort law measure of damages, but, once again, Plaintiff oversimplifies the issue. As an initial matter, Plaintiff's summaries of the cited cases are not always accurate. *See, e.g., Rakich v. Anthem Blue Cross & Blue Shield*, 875 N.E.2d 993, 997-98 (Ohio Ct. App. 2007) (plaintiff cannot recover both cost of repair and gross, as opposed to residual, diminution in value). None of the cases cited by Plaintiff addresses whether an insured is entitled to recover damages under a UMPD provision of an automobile policy, and many of the cases do not even address damage to automobiles. *See, e.g., Breck v. Moore*, 910 P.2d 599, 607 (Alaska 1996) (value of home).

Even more significantly, Plaintiff misstates the law on damages for UMPD claims.[21] In fact, Plaintiff's precise argument has been rejected in one of the Class States. *See Allgood v.*

---

[20]  There is nothing in Safeco's Claims Virtual Office or any other Safeco computer system that can identify which insureds had claims inadvertently mischaracterized as Collision instead of UMPD. Instead, a file-by-file review, and factual investigation of each Collision claim would be required to determine if the claim was inadvertently mischaracterized. Carroll Aff. at ¶ 2; *see also* Carroll Dep. at 48:6-50:1 (generally describing CVO).
[21]  Plaintiff's citation to jury instructions for this proposition is misleading because jury instructions are not controlling authority. *See State v. Hayward*, 217 P.3d 354, 361 (Wash. Ct. App. 2009); *State v. Goble*, 126 P.3d 821, 825 (Wash. Ct. App. 2005).

---

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

*Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 245 (Ind. 2005) (dismissing class claims for DV under auto insurance policy and in the process rejecting plaintiff's argument that a tort theory of recovery should apply to claims under the insurance policy).[22]  An action for recovery of DV against an insurer is actually a hybrid of tort and contract law. *Bloodworth*, 2007 WL 1966022, at *37; *Malott v. State Farm Mut. Auto. Ins. Co.,* 798 N.E.2d 924, 926 (Ind. Ct. App. 2003); *Diaz-Hernandez v. State Farm Fire & Cas. Co.*, 19 So. 3d 996, 999 (Fla. Dist. Ct. App. 2009).

While the insured's action against the insurer is a breach of contract action, the insured also must demonstrate that the uninsured driver was negligent, that the claimed injuries were caused by that negligence, and that those damages exceeded the amount paid by the insurer. *Bloodworth*, 2007 WL 1966022, at *37.  Here, individualized issues abound with respect to the contract component of the measure of damages, with different state UM laws, different rights of the insured, different obligations of the insurer, and different policy language.  Notably, there are also individualized issues with respect to the tort component of the measure of damages, because of the different states' laws on whether DV is recoverable in a UMPD claim. *See supra* I.B.  Plaintiff's purported expert testimony regarding aggregate damages does nothing to cure these fatal defects. *See generally* Motion to Exclude; *see also Sitton v. State Farm Mut. Auto Ins. Co.*, 63 P.3d 198, 206 (Wash. Ct. App. 2003) (noting due process concerns where trial plan contemplates an award of damages without requiring plaintiffs to prove individual causation); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222, 231 (2d Cir. 2008) (decertifying class based on predominance of individual issues regarding RICO injury and causation, and considering need for individualized proof of damages as "a factor that we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-89 (3d Cir. 2001) (affirming denial of class certification because ability to calculate aggregate damages "does not absolve

---

[22] *See also Culhane v. W. Nat'l Mut. Ins. Co.*, 704 N.W.2d 287 (S.D. 2005) (holding that insured was not entitled to diminution of value under automobile insurance policy, and also holding that tort concepts of recovery should not be considered in insurance context because relationship between insurer and insured is contractual in nature).

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 19

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

1  plaintiffs from the duty to prove each . . . was harmed by the defendants' practice," and
2  distinguishing proof of injury (*i.e.*, whether plaintiffs have any claim at all) from calculation of
3  damages).

4  **III.   NO CLASS CAN BE CERTIFIED BECAUSE PLAINTIFF IS ATYPICAL OF THE CLASS HE SEEKS TO REPRESENT.**

5  The typicality requirement of Rule 23(a) assesses "whether the named plaintiff's claim
6  and the class claims are so interrelated that the interests of the class members will be fairly and
7  adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13.   The typicality
8  requirement cannot be met, however, where the named plaintiff is subject to unique defenses,
9  even if those defenses ultimately may be unsuccessful. *See Hanon v. Dataproducts Corp.*, 976
10 F.2d 497, 508 (9th Cir. 1992) ("[A] named plaintiff's motion for class certification should not
11 be granted if there is a danger that absent class members will suffer if their representative is
   preoccupied with defenses unique to it."); *see also* 5 James Wm. Moore, *Moore's Federal*
12 *Practice* § 23.24[5] (3d ed. 2010) ("The opposing party is not required to prove a defense to
13 defeat typicality.  Rather, the opposing party must show some degree of likelihood that a unique
14 defense will play a significant role at trial.").

15 Here, given the nature of the sale of Plaintiff's vehicle, Plaintiff's meticulous care of the
16 vehicle, and the distinctive circumstances surrounding its short sale, there are unique defenses
17 related to whether Plaintiff's vehicle suffered DV at all.  Moreover, Plaintiff's vehicle was more
18 likely than the average vehicle to have suffered DV because he owned a unique, high-
   performance vehicle, was an avid car collector who kept his vehicle in impeccable condition,
19 purchased and sold vehicles on an almost yearly basis, and sold his vehicle shortly after the
20 accident. *See* Prowse Rep. at ¶¶ 36, 40, 42-44; Hovenkotter Dep. at 39:13-40:2; 46:20-47:19;
21 58:4-8; 70:14-20; 127:17-19.  These distinguishing factors only underscore the reasons why the
22 named Plaintiff here and his vehicle cannot serve as a proxy for absent class members.

23 **IV.   NO 23(B)(2) CLASS CAN BE CERTIFIED BECAUSE MONEY DAMAGES PREDOMINATE.**

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR — 20

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

1

In a tacit recognition that his claim for class certification under Rule 23(b)(3) will fail,

2

Plaintiff argues in the alternative that a class can be certified under Rule 23(b)(2) for injunctive

3

relief. Here, monetary damages are at the heart of the relief Plaintiff seeks, and therefore, the

4

proper analytical framework in determining the propriety of class treatment is 23(b)(3), not

5

23(b)(2). Plaintiff primarily and predominantly seeks monetary relief. From Plaintiff's Prayer

6

for Relief, in which he seeks uncompensated DV losses, costs and attorneys' fees, post-

7

judgment interest, and treble damages, (Compl. at ¶ 9.1), to his deposition testimony, in which

8

Plaintiff admits his primary purpose in filing this lawsuit was to recover damages, it is apparent

9

that the primary and predominant relief sought by Plaintiff is money damages. Hovenkotter

10

Dep. at 22:1-24. Put simply, Plaintiff's chief complaint is that he should have gotten more

money for his UMPD claim.[23] (Compl. at ¶ 4.4); Hovenkotter Dep. at 130:14-132:2.

11

Plaintiff's class cannot proceed under Rule 23(b)(2) because certification pursuant to

12

that section is appropriate only where the class seeks injunctive relief, is cohesive and

13

homogeneous, and where the defendant acted in a way generally applicable to the class. Fed. R.

Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is "inappropriate where the primary relief

14

sought is monetary." *Zinser,* 253 F.3d at 1195-96 (denying certification under 23(b)(2) because

15

the injunctive relief requested was appropriate only as an element of damages); *see also Lozano*

16

*v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 729 (9th Cir. 2007); *Duncan,* 203 F.R.D. at 611.

17

To determine the primary relief sought, the Ninth Circuit examines the specific facts and

18

circumstances of each case and evaluates the intent of the plaintiff in bringing suit. *See Lozano,*

19

504 F.3d at 729; *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1314 (9th Cir. 1997)

20

(affirming denial of certification pursuant to Rule 23(b)(2) in part because "a major portion of

the claimed relief [was] monetary restitution"); *Gonzalez v. Proctor & Gamble Co.,* 247 F.R.D.

21

616 (S.D. Cal. 2007). To determine intent, courts examine whether the plaintiff likely would

22

---

23

[23] Nor are the damages Plaintiff requests "incidental" to their request for injunctive relief, as damages in this matter would be subject to individual determinations and would not flow to the class as a whole. *See Molski v. Gleich,* 318 F.3d 937, 949 (9th Cir. 2003) (noting that actual and treble damages are not incidental damages).

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR – 21

SAF014 0001 ld238606 4/23/10

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1   have brought suit even if there was no prospect of monetary recovery. *Williams v. Boeing Co.*,

2   225 F.R.D. 626, 632-33 (W.D. Wash. 2005).   The answer to that question in this case is a

3   resounding no.   The Complaint here is couched as a claim for injunctive relief, but seeks

4   payment of benefits – specifically, an order requiring immediate payment to each and every

5   Class Member of the DV of their motor vehicle, together with interest at the legal rate. (Compl.

6   at ¶¶ 7.24-7.25, 7.34, 9.1). This request is nothing more than a request for money damages, and

7   the purported "equitable compensation" cases cited by Plaintiff are inapposite. All were in the

    real estate context, and none dealt with class certification. Plaintiff's intent in this case is clear:

8   when directly asked at his deposition what he sought from this lawsuit, he answered "some

9   financial risk for the production—some financial benefit from the reduced value." Hovenkotter

10  Dep. at 22:4-6; *cf. White v. Nat'l Football League*, 822 F. Supp. 1389, 1411 (D. Minn. 1993).

11      Plaintiff cannot shoehorn his money damages claim into Rule 23(b)(2) by seeking what

12  amounts to a declaration of liability and damages. *See Powers v. Gov't Employees Ins. Co.*, 192

13  F.R.D. 313, 318 (S.D. Fla. 1998). This case is analogous to *Defraites*, 864 So. 2d 254, where

    the plaintiff sought to represent a class comprising "third party vehicular property damage"

14  claimants in situations where the defendant-insurer failed to pay, investigate, and/or offer

15  settlement for diminution in value. *Id.* at 259. Because the plaintiff sought "liability coverage

16  for losses attributable to non-repair related [DV] property damage," the court held that the trial

17  court abused its discretion in certifying the class because "final relief relate[d] exclusively or

18  predominately to money damages." *Id.* at 262.   Here, as in *Defraites*, "[t]he declaratory

19  judgment count serves the ultimate goal of monetary restitution and is designed primarily to

    facilitate and ensure the satisfaction of monetary relief." *Powers*, 192 F.R.D. at 318.   As in

20  *Defraites*, courts in the Ninth Circuit regularly deny certification of a (b)(2) class where the

21  requested monetary relief predominates. *See Campion v. Credit Bureau Servs., Inc.*, 206 F.R.D.

22  663, 677-78 (E.D. Wash. 2001); *Paul v. WinCo Foods, Inc.*, No. CV 02-381-S-EJL, 2007 WL

23  1381794, at *5 (D. Idaho Feb. 16, 2007); *Simon v. Am. Tel. & Tel. Corp.*, No. CV99-11641,

---

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR  – 22

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

2001 WL 34135273, at *7 n.9 (C.D. Cal. Jan. 26, 2001); *In re Paxil Litig.*, 218 F.R.D. 242, 247-48 (C.D. Cal. 2003). Because the purpose of Plaintiff's lawsuit is to require Safeco to pay DV to the class immediately, according to his Prayer for Relief and deposition testimony, no class can be certified under Rule 23(b)(2).

## V.   THE ALLEGED COMMON ISSUES CANNOT BE TRIED USING CLASSWIDE PROOF, WHICH DEFEATS MANAGEABILITY.

In addition to satisfying all the factors outlined above, Plaintiff must also provide the Court with a realistic assessment of how a trial of the class claims will be conducted in order to demonstrate that a class action is the superior method for trying the case. *See* Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note (2003 Amendments) ("A critical need is to determine how the case will be tried."); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974). Plaintiff seeks to have this Court adjudicate the propriety of tens of thousands of vehicle valuations conducted in 28 states by Safeco since 2003. As discussed above, however, the determination of whether DV has been suffered in the first place is highly individualized, and any adjudication of this matter will require thousands of individual inquiries of fact. *See supra* at II.A. Similarly, calculating and apportioning damages will require inquiry into and resolution of myriad individual facts, making class certification unmanageable. *See* Prowse Rep. at ¶¶ 31-35.

Where manageability difficulties outweigh class action advantages, certification should be denied on that basis alone. *See Zinser,* 253 F.3d at 1192; *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 620 n.8 (W.D. Wash. 2003) (noting that class identification problems alone were sufficient to prohibit manageability of class action). Moreover, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192. Not surprisingly, Plaintiff's class certification brief is silent on this point and provides no indication as to how a case concerning the diminution of value of each class member's Mazda, Ford, Mercedes, or Volvo would be tried in this Court. The highly subjective nature of vehicle

---

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1  valuation itself makes clear, however, that there is not a realistic, manageable way to try the

2  case brought by Plaintiff.  Prowse Rep. at ¶ 34.

3      Plaintiff does not address these complications in his memorandum and, thus, has failed

4  to provide this Court with an adequate trial plan for managing this class action.  *See Zinser*, 253

5  F.3d at 1189; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (superiority

6  requirement not satisfied absent a showing that class mechanism is superior to alternative

   methods of adjudication).  Such a trial plan would involve at least 28 subclasses, one for each

7  state, and even that trial plan does not take into account the two different causes of action and

8  the different states' UMPD statutes.  Accordingly, Plaintiff has failed to meet his burden of

9  demonstrating that a class action in this matter is manageable or superior.  *See In re*

10 *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. at 619-20.

11                                **CONCLUSION**

12     For all the reasons stated above, Safeco respectfully requests that the Court deny the

13 Motion for Class Certification.

       DATED this 23rd day of April, 2010.

14

15                                          s/ Emilia L. Sweeney
                                            Emilia L. Sweeney, WSBA No. 23371
                                            Attorneys for Defendant
16                                          CARNEY BADLEY SPELLMAN, P.S.
                                            701 Fifth Avenue, Suite 3600
17                                          Seattle, WA  98104
                                            Phone: (206) 622-8020
18                                          Facsimile:  (206) 467-8215
                                            sweeney@carneylaw.com
19
                                            Cari K. Dawson (*pro hac vice*)
20                                          Tiffany L. Powers (*pro hac vice*)
                                            ALSTON & BIRD LLP
21                                          1201 West Peachtree Street
                                            Atlanta, GA  30309
22                                          Telephone: (404) 881-7000
                                            Facsimile: (404) 881-7777
23                                          cari.dawson@alston.com
                                            tiffany.powers@alston.com

DEF.'S RESP. TO PL.'S MOT. FOR CLASS
CERTIFICATION, 2:09-cv-00218 JLR  – 24

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

SAF014 0001 ld238606 4/23/10

1

## CERTIFICATE OF SERVICE

2   I hereby certify that on the **23rd** day of *April* , 2010, I electronically filed the foregoing
**Defendant's Response to Plaintiff's Motion for Class Certification** with the Clerk of the

3   Court using the CM/ECF system which will send notification of such filing to the following:

4   Alana Kimberly Bullis                     Stephen M. Hansen
    LAW OFFICE OF                             LOWENBERG LOPEZ & HANSEN

5       ALANA K. BULLIS, PLLC                 950 Pacific Ave - Suite 450
    1911 Nelson Street                        Tacoma, WA 98402

6   DuPont, WA 98327                          Telephone: (253) 383-1964
    (253) 964-2104                            llhlaw@aol.com

7   Akbullis@yahoo.com

8   David A. Futscher                         Elaine A. Ryan
    PARRY, DEERING, FUTSCHER                  Patricia N. Syverson

9       & SPARKS, PSC                         BONNETT, FAIRBOURN, FRIEDMAN
    411 Garrard Street                            & BALINT, PC (AZ)

10  P.O. Box 2618                             2901 N. Central Avenue, Suite 1000
    Covington, KY 41012                       Phoenix, AZ 85012

11  dfutscher@pdfslaw.com                     eryan@bffb.com
                                              psyverson@bffb.com

12

13  Van Bunch                                 Debra Hayes
    BONNETT, FAIRBOURN, FRIEDMAN              Charles Hunter

14      & BALINT (TN)                         REICH & BINSTOCK, LLC
    57 Carriage Hill                          4265 San Felipe, Suite 1000

15  Signal Mountain, TN 37377                 Houston, TX 77027
    vbunch@bffb.com                           dhayes@dhayeslaw.com

16                                            chunter@rbfirm.net

17                                            *Attorneys for Plaintiff*

18                                            *Claire Uhler*
                                              Claire Uhler

19

20

21

22

23
    DEF.'S RESP. TO PL.'S MOT. FOR CLASS        **CARNEY**          LAW OFFICES
    CERTIFICATION, 2:09-cv-00218 JLR  – 25                          A PROFESSIONAL SERVICE CORPORATION
                                                 **BADLEY**         701 FIFTH AVENUE, #3600
                                                                    SEATTLE, WA 98104-7010
                                                 **SPELLMAN**       FAX (206) 467-8215
                                                                    TEL (206) 622-8020