# EXHIBIT F

THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARILYN MARTIN,<br><br>        Plaintiff,<br><br>    v.<br><br>TWIN CITY FIRE INSURANCE<br>COMPANY, THE HARTFORD<br>FINANCIAL SERVICES GROUP, INC., and<br>HARTFORD FIRE INSURANCE<br>COMPANY,<br><br>        Defendants. | Case No. C08-05651-RJB<br><br>CLASS PLAINTIFFS' RESPONSE TO<br>MEMORANDUM OF CLASS<br>REPRESENTATIVE MARILYN MARTIN<br><br>AND<br><br>MOTION TO DISQUALIFY COUNSEL |

Class Counsel[1] hereby submit the following Response to the Memorandum of Class
Representative Marilyn Martin submitted by attorney Alana Bullis. After being retained by Ms.
Martin, Class Counsel used their experience in related litigation and class action litigation
generally to prosecute this action to near resolution. A firm settlement in principle has been

---

[1] "Class Counsel" for the purposes of this Response and Motion include Steve Hansen, Debra Hayes,
David Futscher and Van Bunch, but not Alana Bullis.

1

negotiated with defendants, of which Ms. Bullis and Ms. Martin have been fully apprised. Class

Counsel have attempted to address their stated concerns on several occasions. Ms. Bullis'

interference with the progression of the settlement to the preliminary approval stage, motivated

strictly by personal gain, is similar to her unsuccessful attempts to interfere in another case

pending in this Division before Judge Ronald B. Leighton, *Su Shin v. Esurance* 08-cv-05626

("*Shin*"). Ms. Bullis' Motion to Postpone the final approval hearing in *Shin* was swiftly

renounced and promptly denied by Judge Leighton on January 29, 2010. *See* Exhibits 1 and 2

(also allowing addition of new class representative). Ms. Bullis immediately noticed an appeal,

seeking to interfere further with the efficient administration of justice with her groundless

"objections."[2]

  A similar reaction by this Court to Ms. Bullis' frivolous and misguided antics is

appropriate. The Court can and should proceed with the hearing of a preliminary approval

motion. Further, the Court should disqualify Ms. Bullis as counsel for the putative Class.

**A. Relevant History of these Proceedings.**

  Ms. Martin retained Ms. Bullis initially to pursue an individual claim for diminution of

value. In the Spring of 2008, Ms. Bullis contacted attorney Steve Hansen. *See* Declaration of

Steve Hansen (Exhibit 3) at 2 ("Hansen Decl.") (filed under seal). Ms. Bullis told Mr. Hansen

she had heard about a recent class action settlement involving claims pertaining to Allstate's

failure to compensate its insureds for the loss of value to their vehicles under the Uninsured

---

[2] This Court may well recall similar tactics employed by Ms. Bullis in *Bullis v. Nichols*, No. CV-05-0581-RJB, *aff'd with fees and costs as* No. 05-35966 (9th Cir. July 14, 2008)(noting this Court's findings that the claims in the underlying action were "unreasonable, frivolous, meritless and vexatious.") *See* Orders attached as Exhs. 4 and 5. Class Counsel offer to the Court for *in camera* review, as well, correspondence Ms. Bullis sent to the clients in *Shin, Martin* and *Hovenkotter* that outline plainly the vexatious intent motivating her frivolous assertions here. By Minute Entry dated February 2, 2010, Judge Leighton vacated entry of the judgment to accommodate certain pending notice issues under 28 U.S.C. § 1715.

Motorist provisions of the insuring agreement. Ms. Bullis told Mr. Hansen she had a number of clients who had property damage claims under the Underinsured Motor provisions of their insuring agreements. Hansen Decl. at 1. Ms. Bullis told Mr. Hansen that she had never before participated as counsel in a class action but "wanted to learn." Id. at 1.

After months of unsuccessful attempts to resolve the individual claim, in October 2008, Ms. Bullis informed Mr. Hansen that Ms. Martin was interested in pursuing a class case. Hansen Decl. at 2. Ms. Bullis ultimately referred Ms. Martin to Mr. Hansen's co-counsel, and by retainer agreement dated November 4, 2008, Ms. Martin retained the law firms of Debra Brewer Hayes, P.C. and Reich & Binstock as putative class counsel to pursue this matter as a class action. The retainer signed by Ms. Martin provides that the retained class counsel may elect to affiliate with other attorneys on this matter. See Martin Retainer Agreement, Exhibit B. Accordingly, Mr. Hansen, Van Bunch, David Futscher and each of their respective law firms agreed to represent the putative class. Collectively these firms brought to the table considerable expertise and experience in handling class action matters. See Hansen Decl. at 2; Declaration of David Futscher (Exhibit 6) at ¶¶2-3 ("Futscher Decl.").[3]

Work proceeded on Ms. Martin's case, and on behalf of the plaintiff and the class in *Shin* before Judge Leighton[4]. Hansen Decl. at 2. Ms. Bullis was added to the ECF list so that she would receive copies of all pleadings, but she did not actively participate in this matter or in *Shin* or in *Hovenkotter*. Hansen Decl. at 2. Counsel continued to prosecute all three related actions cooperatively. In fact, in 2009, Ms. Bullis informed Mr. Hansen that she was closing her law practice for medical reasons, and Mr. Hansen even accepted several client referrals from Ms.

---

[3] These Firms' resumes are attached as Exhibits 7, 8 and 9.
[4] Ms. Bullis also associated with the same counsel to prosecute another similar action pending in this District, *Hovenkotter v. Safeco Ins. Co.*, No. 2:09-CV-00218-JLR ("*Hovenkotter*").

3

Bullis as the result of her stated intent to close her practice. Further, as late as December 26, 2009, Ms. Bullis and Ms. Hayes were communicating concerning matters pertaining to final approval and securing Ms. Shin's presence at the final approval hearing in her case. Id. at 3.

Class Counsel and defense counsel had also begun settlement discussions in this case. Shortly after the Court denied defendant's motion to dismiss, the parties began to engage in settlement negotiations on behalf of a proposed settlement class. Declaration of Debra Brewer Hayes at ¶ 4 ("Hayes Decl."), attached as Exhibit 10. Futscher Decl. at ¶4. For approximately six months, Class Counsel negotiated the terms of the settlement along the same lines as prior diminished value class action settlements that were court approved with little or no objection.[5] Id. Principal terms of the settlement were achieved as of December 23, 2009.

It was only in January 2010 that Ms. Bullis began to voice concerns to Mr. Hansen and Ms. Hayes, first about the settlement agreement in *Shin*, which she had already signed months before. Hansen Decl. at 3. Mr. Hansen and Ms. Hayes initially addressed a number of Ms. Bullis' concerns about the settlement proposal over the telephone. Id. at 3. Mr. Hansen and Ms. Hayes thereafter received an email thanking them for the discussion, where Ms. Bullis stated her understanding that in class actions "the class does not receive full value" and also reiterated her understanding that she was "not a class counsel." Id. at 3. Ms. Bullis concluded her email stating:

> I do not know any of the other attorneys involved in all these cases, but I trust Steve, so since Steve has told me, and Debra assured me, that the class is being well taken care of, then I will believe that.

---

[5] Those actions were *Busani v. USAA*, Pierce County Superior Court No. 99-208-217-1, *Laughlin v. Allstate*, Pierce County Superior Court No. 02-210380-0 and *Rose v. Nationwide*, Pierce County Superior Court, No. 02-206621-1.

4

Ms. Bullis soon thereafter, however, began in earnest to undermine the settlement efforts of Class Counsel in both this case and *Shin*. Ms. Bullis began by demanding that Class Counsel communicate with Ms. Martin only through Ms. Bullis. Hansen Decl. at 4.[6] When reminded that Ms. Martin, as a class representative, had a duty to communicate with Class Counsel, Ms. Bullis capitulated, but insisted that she be present at any meeting. Id. at 4.

Mr. Hansen and Mr. Futscher met with Ms. Martin on January 13, 2010 for almost 2 hours. Ms. Bullis was present, as was Ms. Martin's bodily injury attorney and Ms. Martin's daughter. Hansen Decl. at 4; Futscher Decl. at ¶6. Mr. Futscher explained the status of the case, the proposed settlement and sought to address any concerns. Futscher Decl. at ¶¶7-14.

Ms. Bullis then stated that she wanted to voice her concerns and soon became belligerent, pointing at Mr. Futscher and declaring that she had "caught class counsel with their hands in the cookie jar." Hansen Decl. at 4; Futscher Decl. at ¶15. Attempts to reason with her caused her to become more agitated. As the meeting adjourned, the situation remained fluid. Futscher Decl. at ¶17. Mr. Futscher asked Ms. Martin if he could call her. Ms. Martin consented. Hansen Decl. at 4; Futscher Decl. at ¶17.

Mr. Futscher did speak to Ms. Martin by telephone on January 15, 2010, but Ms. Martin then advised that she would only speak to Class Counsel through Ms. Bullis and that Ms. Bullis would be sending a letter to that effect. Futscher Decl. at ¶19. Ms. Bullis sent Mr. Futscher an email on January 15, 2010, stating that she understood that Mr. Futscher wished to talk to Ms. Martin concerning the settlement offer and that Ms. Martin would be available to discuss this in the presence of Ms. Bullis. Hansen Decl at 4. Despite the outcome of the previous meeting, Mr.

---

[6] Ms. Bullis similarly prepared letters for the Class Representatives in the *Shin* and *Hovenkotter* cases with the same purported instruction for Class Counsel to communicate exclusively through Ms. Bullis.

5

Hansen agreed to meet with Ms. Bullis and Ms. Martin on January 21, 2010. Id. at 4. Ms. Bullis arrived at this scheduled meeting alone, but after Mr. Hansen insisted on speaking with Ms. Martin, Ms. Bullis said she would make Ms. Martin available by telephone. Id. at 5. Ms. Martin indicated that she completely deferred to Ms. Bullis and said nothing further. Id. at 5; Futscher Decl. at ¶22.

At Ms. Bullis' request, the next day, January 22, 2010, another conference call was held with Ms. Bullis, Class Counsel and a consulting expert concerning the value of the proposed settlement, Mr. Darrell M. ("Mike") Harber. Hansen Decl. at 5. Believing that Mr. Harber had addressed the very concerns that Ms. Bullis had described the previous day as her reason for wanting to speak to Mr. Harber, Class Counsel asked Ms. Bullis to identify any further concerns. Id. at 5. She refused, stating that she would discuss these concerns "in front of Judge Bryan." Id. at 5.

The impasse in the relationship between Ms. Bullis and Class Counsel is further amply demonstrated by the "Opposition to Class Counsel's Motion to Add/Or Substitute Class Representative" filed by Ms. Bullis in *Shin* on January 28, 2010 (see Exhibit 10), in which Ms. Bullis baselessly accuses Class Counsel of ethics violations and alludes to the "greed and self-interest" of Class Counsel – who in reality were doing nothing more than simply seeking final approval of a fair settlement with Esurance already preliminarily approved by Judge Leighton, and previously agreed to by Ms. Bullis herself.

**B.     Ms. Bullis' Conduct Shows Serious Disregard For the Orderly Process of Justice and Reveals She Is Motivated Solely By Pecuniary Self-Interest.**

Ms. Bullis' sudden reversal of course, from cooperating co-counsel to staunch opponent in early January of this year surprised Class Counsel. At the time, Class Counsel took at face

6

value Ms. Bullis' assertions that she was acting in good faith to protect the interests of absent class members. So, Class Counsel undertook to address her concerns and answer her questions. Unfortunately, the efforts of Class Counsel were met with stubborn refusal to yield on any positions, combined with ever-increasing vitriole and transparent manipulation of the Class Representatives to try to place herself in the role of sole-determiner of how this case would proceed. Upon further investigation of her conduct, it is now apparent to Class Counsel that Ms. Bullis' positions are neither well-grounded in fact or law nor interposed for a proper purpose. Simply stated, Ms. Bullis is trying to take over the cases for her own financial gain contrary to the best interests of the Class and the orderly administration of justice.

Before Ms. Bullis began expressing her concerns in *Shin* and this case, she shopped the cases to potential other co-counsel. Once those efforts failed, apparently to buy time, Ms. Bullis began raising her baseless objections and alleging misconduct on the part of Class Counsel, then ultimately tried to seize control of the cases for herself by telling the clients to shut down communication with Class Counsel and abdicate their supervisory responsibility to Ms. Bullis.

Ms. Bullis first raised her concerns to Class Counsel in early January, 2010. Before then, she contacted an attorney with whom she used to work to see if he would associate with her in "her class action litigation in Washington." *See* Declaration of David Wattel dated January 29, 2010, attached as Exhibit 11 at ¶ 2 ) ("Wattel Dec."). Ms. Bullis expressed her concern – and revealed her true motivations – when she told Mr. Wattel that she feared being "cheated" by Class Counsel out of "her fair share of the proceeds." Id. Citing personal and business concerns, outlined further in his Declaration, Mr. Wattel declined to follow up on the offer.

7

Similarly, and even more tellingly, Ms. Bullis contacted Mr. Harber looking for assistance in her plot to take over control of the pending diminished value class actions, including this case. Mr. Harber's deposition testimony taken February 2, 2010 will show that Ms. Bullis also privately contacted Mr. Harber in an attempt to persuade him to assist her efforts to obtain new counsel in this case and *Shin*. In so doing, she made at least one knowingly false statement of fact to Mr. Harber. She told him that Ms. Hayes advocated to the Court at the *Shin* final approval hearing for the imposition in these cases of a mode of damage calculation in diminished value cases that would effectively put Mr. Harber "out of a job." That is simply not true.

It is thus plain that Ms. Bullis' conduct is designed to interfere with the fair administration of justice solely to promote her personal pecuniary interest. In effect, she is grinding the wheels of justice to a halt in a transparent attempt to supplant Class Counsel by raising meritless objections, interfering with Class Counsel's relationship with the Class Representative and delaying the proceedings using the Federal Rules of Civil Procedure as a weapon, not a tool. The Court need not tolerate this behavior. *See In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 278 F.3d 175 (3d Cir. 2002) (counsel for objectors sanctioned for vexatious conduct for filing frivolous recusal motion, unwarranted criticism of fee examiner, releasing recusal motion to press, filing affidavits solely to embarrass judge, discovery failures and abusively filing motions for sanctions); *Kapco Mfg. Co. v. C&O Enters, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (over $46,000 in sanctions appropriate where attorney pursued "a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound").

8

**C.     A Firm Settlement Proposal Has Been Negotiated.**

On January 25, 2010, counsel for the parties submitted a Joint Status Report [Dkt.65] detailing counsel's efforts in ongoing settlement negotiations. Debra Hayes has served as the lead negotiator on behalf of the putative class. Marci Eisenstein has served as the lead negotiator on behalf of the defendants. As of December 2, 2009, the parties reached an agreement in principle as to the general structure of the settlement. By December 23, 2009, counsel for the parties had reached an agreement in principle regarding financial terms of the settlement.

As of year-end 2009, negotiating counsel for the parties were thus prepared to proceed to negotiate attorneys' fees, to document the settlement agreement, and to present a motion for preliminary approval to the Court. However, this process was stalled when counsel for defendants learned that negotiating counsel for the putative class appeared to be at an impasse with the named plaintiff, Ms. Martin and that Ms. Martin is acting at the direction of Ms. Bullis and refusing to speak directly with counsel for the putative class.

On January 27, 2010, this Court issued an Order [Dkt. 67] indicating the Court's impression that the case was not as near to settlement as counsel earlier reported. A firm settlement proposal is in fact in place. The negotiation of attorneys' fees and the documenting of the agreement are the only steps remaining to be taken, but these steps are blocked due to the uncertainty cast into the situation by Ms. Bullis' efforts to undermine the settlement process.

**D.     The Court Should Set an Appropriate Schedule and Allow This Matter to Proceed to a Motion for Preliminary Approval of the Negotiated Settlement.**

The Court should Order the parties to proceed to negotiate attorneys' fees, document the agreement reached in principle by negotiating counsel for the parties and move for preliminary approval of the settlement. Ms. Bullis' filings are not consistent with the facts.

9

Ms. Martin retained Class Counsel to pursue her class claims – she did not retain Ms. Bullis for this purpose. Ms. Bullis herself initially sought out the assistance of Class Counsel. Ms. Bullis' agreement to this arrangement was based on her utter lack of class action experience and the fact that she had heard about Class Counsel's achievement of a settlement in the Allstate matter –one that compares favorably to the settlement proposed here.

While this action was being prosecuted, Ms. Bullis even informed Mr. Hansen that she was closing her law practice. Nonetheless, after six months of negotiations between Class Counsel and defense counsel leading to a proposal for a settlement class, Class Counsel kept Ms. Bullis informed and addressed her concerns about the settlement proposal, first over the telephone and later over the course of several meetings. In the unanimous judgment of Class Counsel, Ms. Bullis' concerns were not well reasoned and reflected her inexperience and lack of solid judgment about what a fair and reasonable settlement would be in this matter. Nonetheless, Class Counsel made every effort to allow her to voice her concerns and even to address questions to Mr. Harber, the diminished value consultant.

Class Counsel kept Ms. Bullis apprised and informed and addressed her concerns even as by her own admission she was "not a class counsel" and that due to her inexperience she would have to defer to the judgment of Class Counsel of whether the class was "being taken care of." Class Counsel also respected the request of the class representative, Ms. Martin, as soon as she made clear that her preference was to communicate with Class Counsel only through Ms. Bullis.

Class Counsel has prosecuted this matter successfully after defeating defendant's motion to dismiss and thereafter, drawing on their experience and negotiating an excellent settlement on behalf of a proposed settlement class. Lead counsel for the putative class "may be designated by

10

consensus of interested counsel." 3 *Newberg on Class Actions* §9:35. Here, all interested counsel agreed that Ms. Hayes and Mr. Bunch would take leadership responsibilities in prosecuting this matter on behalf of the class. As part of that leadership, Ms. Hayes and Mr. Bunch determined that Ms. Hayes would best serve as the lead negotiator on behalf of the putative class in the settlement negotiations with defendant.

Acting as lead counsel, Ms. Hayes and Mr. Bunch agreed to typical leadership duties of the prosecution of the case on behalf of the putative class, including primary responsibility for drafting pleadings, conducting discovery, arguing motions before the Court, and conducting the settlement negotiations.[7] Class Counsel acted appropriately and in the best interests of the putative class by engaging Defendants in settlement negotiations, and seeking a fair resolution on behalf of the class. *In re Issuer Plaintiff Initial Public Offering Antitrust Litig.*, 234 F.R.D. 67, 69 (S.D.N.Y. 2006) ("the law firm acting on behalf of both the individual plaintiffs and the putative class must still seek a settlement that is fair, reasonable and adequate for the class even if not officially appointed as interim class counsel"); Comment to Fed.R.Civ.P. 23(g) ("Settlement may be discussed before certification."). Class Counsel further kept Ms. Martin and Ms. Bullis informed about negotiations and have answered every concern Ms. Bullis voiced. Hansen Decl. at 6.

Mr. Hansen has ten years experience specifically in the type of action at issue here, a diminished value class action case, and his experience in the diminished value area has included multiple appearances in the Washington Court of Appeals and consideration by the Washington

---

[7] With no other related class action cases against Hartford on the Court's docket, and with the agreement of all interested counsel, there was no rivalry among counsel that necessitated an appointment by the Court of interim counsel for the class under Rule 23(g) of the Federal Rules of Civil Procedure. *See* Comment to Fed.R.Civ.P. 23(g) ("In some cases . . . there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate.").

11

Supreme Court. Hansen Decl. at 6. Class Counsel previously spent approximately a million dollars to develop a model to determine damages on a class-wide basis in diminished value litigation. Id. at 6. Although this case is now poised for settlement after a relatively short history, the substantial previous work of Mr. Hansen and his co-counsel in other cases has been a factor in helping this case come to resolution. Id. at 6.

Class Counsel's efforts were undertaken consistent with the representation agreement with Ms. Martin and resulted in an excellent settlement for a proposed class. Ms. Bullis' complaint that she and Ms. Martin were excluded from settlement discussions is similar to the complaints lodged in *Banyai v. Mazur*, 2004 WL 1948755 (S.D.N.Y. Sept. 1, 2004), where the representative plaintiffs moved to discharge class counsel for pursuing a partial settlement which in the opinion of the class representatives "undermine[d] the interests of class members." *Id.* at *1. The *Banyai* court denied the motion to replace class counsel, finding that class counsel, in pursuing settlement, committed no misconduct and "are obligated to make independent judgments as to the interests of the class members and cannot allow decisions on behalf of the class to rest exclusively with the named plaintiffs." *Id.* The *Banyai* court noted that to the extent the class representatives were concerned with the adequacy or fairness of the proposed partial settlement, they were "welcome to voice those concerns directly or through their counsel at any hearing pertaining to the merits of that proposed partial settlement held pursuant to Fed.R.Civ.P. 23." *Id.*

Allowing the concerns of Ms. Bullis and Ms. Martin to be heard at the time of hearing on the merits of the settlement, as in *Banyai*, is also appropriate here. *See also Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (client in a class action consists of

12

numerous unnamed class members as well as the class representatives, which can force class

counsel to act in what he or she perceives to be in the best interests of the class as a whole);

*Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494 (S.D.N.Y. 1994), aff'd, 67 F.3d

1072 (2d Cir. 1995) (denying representative plaintiffs' application to replace class counsel with

their own counsel on the ground that class counsel "merely submitted the proposed settlement as

a 'fait accompli,'" and noting that concerns of named plaintiffs would most appropriately be

heard at time of the settlement hearing); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964

(3d Cir. 1983) (affirming denial of named plaintiff's motion to relieve class counsel where trial

court had considered whether class counsel was providing fair and adequate representation to the

class as a whole).

     Ms. Bullis' opposition to a settlement in this case is best heard at the time of a hearing on

the merits of the settlement's approval.  Given the circumstances, assuming Ms. Bullis' and Ms.

Martin's continued lack of cooperation, the Court would have authority to grant Class Counsel

time to find a suitable and adequate additional class representative and if necessary, finally

approve the Settlement over Ms. Martin's objection.[8]  A settlement can be found to be fair even

in the face of objection by a named representative.  *Thomas v. Albright*, 139 F.3d 227, 232 (D.C.

Cir. 1998); *Flynn v. FMC Corp.*, 528 F.2d 1169, 1174 n. 19 (4th Cir. 1975) (all three class

plaintiffs dissented but settlement approval still affirmed); *Pettway v. American Cast Iron Pipe

Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978) ("To be sure, the assent of named plaintiffs is not a

prerequisite to the approval of a settlement"); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956,

964 (3d Cir. 1983) ("Class counsel's duty to the class as a whole frequently diverges from the

---

[8] By Order dated January 29, 2010, Judge Leighton granted Class Counsel's motion to add a new
representative plaintiff in the *Shin* matter.

13

opinion of either the named plaintiff or other objectors").

Even if Ms. Bullis' concerns regarding the settlement are heard now, the Court should conclude that the objections are not well reasoned and not in the best interests of the approximately 23,000 class members. If judged by the current filings, any objection would be highly unlikely to detract from the settlement.

First, Ms. Bullis raises a concern regarding the scope of the release, which is clearly premature as no release language has been proposed. Next, Ms. Bullis questions how the parties determined the proposed settlement per claim average amount. As noted above, settlements involving per claim average payments in the same range as proposed here have been approved in four other cases – *Busani, Laughlin, Rose* and *Shin.* Counsel are informed that the range of payments here is in line with payments actually made in resolving claims in Georgia, where diminished value claims must be adjusted by all insurers.

Moreover, there is no added benefit or consideration for additional claims, all of which permit the same recovery. Ms. Bullis questions which state's law would control for the settlement class, but this issue completely misses the mark – all claims for diminished value would be resolved, no matter in what state they arose and the scope of release determined accordingly. Moreover, a breach of contract claim *has* been asserted for every state, as breach of contract claims are fairly uniform throughout the United States.

Ms. Bullis would also further argue that the settlement would somehow not be fair or reasonable because class counsel never raised a bad faith claim under WAC 284-30-330. However, these claims are problematic to assert effectively in a national class action. There are considerable obstacles to the certification of a nationwide class alleging false or deceptive

14

practices in claims handling under the Washington consumer protection statute. State consumer

protection laws "vary considerably, and courts must respect these differences rather than apply

one state's laws to sales in other states with different rules." *In re Bridgestone/Firestone Inc.,*

288 F.3d 1012, 1020 (7th Cir. 2002). Consumer fraud laws of the states "differ with regard to

the defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available

remedies, and reliance, just to name a few." *In re Prempro,* 230 F.R.D. 555, 564 (E.D. Ark.

2005). A court obliged to apply the laws of all fifty states may well find individual questions to

overwhelm any common questions. *In re Rezulin Products Liability Litig.,* 210 F.R.D. 61, 68

(S.D.N.Y. 2002). In the end, a "nationwide class alleging violations of the laws of multiple

jurisdictions would likely require at least one representative plaintiff from each jurisdiction" to

meet the adequacy requirements of Fed. R. Civ. P. 23(a), when it comes time for the motion for

class certification. *Whitson v. Bumbo,* 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) (dismissing

causes of action framed as nationwide class allegations of violation of each state's respective

consumer protection laws).

     Very recently, the Washington Supreme Court in *Schnall v. AT&T,* Case No. 80572-5,

appeal from King County Superior Court Case No. 02-2-05776-4 (Hon. Douglas A. North), held

that the Washington Consumer Protection Act could not be extended to claims arising in other

states. *See* Slip op. at 15 ("nothing in our law indicates that CPA claims by nonresidents for acts

occurring outside of Washington can be entertained under the statute"). [9] The *Schnall* Court

concluded that a nationwide class action should not be certified under the Washington CPA. *See*

Slip op. at 22 (Washington need not apply its Consumer Protection Act "to citizens of other

---

[9] available at:
http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=805725MAJ. Copy
attached as Exhibit 12.

15

states in order to protect the interests of citizens of Washington. A nationwide class would be unmanageable and unduly burdensome on the trial court and the state judicial system and serve no real benefit to plaintiffs who are free to bring statewide class actions in their home states."). Clearly, after *Schnall*, there is no appreciable "added value" for asserting such claims.

E.     **The Court Should Disqualify Ms. Bullis.**

The right to disqualify counsel is "within the discretion of the trial court as an exercise of its inherent powers." *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996); *Silva v. Gregoire*, 2007 WL 1046888, *1 (W.D. Wash. Apr. 3, 2007); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (court has inherent power to disqualify counsel at its discretion, which is not supplanted by the Federal Rules of Civil Procedure). Disqualification is a drastic measure that should be subjected to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.* 760 F.2d 1045, 1050 (9th Cir. 1985); *Silva*, 2007 WL 1046888 at *1.

The Court must determine a motion to disqualify counsel by measuring the facts of the particular case. *Beck v. Board of Regents of State of Kan.*, 568 F. Supp. 1107, 1110 (D. Kan. 1983). A decision to disqualify counsel "must be based on a factual inquiry conducted in a manner allowing appellate review, but an evidentiary hearing is not necessarily required." *The MJK Family LLC v. Corporate Eagle Management*, --- F. Supp. 2d ---, 2009 WL 4928821, *6 (E.D. Mich. Dec. 21, 2009), citing *General Mill Supply Co. v. SCA Servs.*, 697 F.2d 704, 710 (6th Cir. 1982).

It is well-established that a court may disqualify counsel for prejudicial professional misconduct. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("The

16

disqualification of an attorney in order to forestall violation of ethical principles is a matter

committed to the sound discretion of the trial court"); *Ceramco, Inc. v. Lee Pharmaceuticals*, 510

F.2d 268, 270-71 (2d Cir. 1975). The Court should disqualify counsel if the offending

attorney's conduct threatens to "taint" the underlying trial. *Data Capture Solutions Repair &*

*Remarketing, Inc. v. Symbol Technologies, Inc.*, 2008 WL 4681676 (D. Conn. Oct. 17, 2008)

(disqualification should only be granted where violation of Rules of Professional Conduct poses

"risk of trial taint"); *Biocore Medical Technologies, Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664

(D. Kan. 1998) (same). The court must recognize "the need to check certain egregious forms of

misconduct" – while leaving less serious allegations of ethical impropriety to the federal and

state disciplinary machinery. *Board of Ed. Of City of New York v. Nyquist*, 590 F.2d 1241, 1246

(2d Cir. 1979).

Ms. Bullis' bad faith and egregious conduct here is evident from the factual record. Her

continued participation as co-counsel for the class threatens to unduly taint, stall and interfere

with these proceedings. Ms. Bullis did far more here than violate her duty to cooperate with co-

counsel and to refrain from interfering with the attorney-client relationship between Ms. Martin

and retained Class Counsel.

To begin, Ms. Bullis did not show candor to the tribunal when falsely stating that Ms.

Martin was not informed of the settlement until January 21, 2010. *See* Rule 3.3, Washington

Rules of Professional Conduct ("RPC"); Futscher and Hansen Declarations.

Ms. Bullis has made up a list of objections to the progression of this case to the

preliminary approval stage, supposedly in the interests of Ms. Martin and the class, when her true

motivation is her pecuniary self-interest. *See* Rule 3.1, Washington RPC (requiring basis in fact

17

for asserting an issue in a proceeding); Wattel Dec. at 2.[10] Ms. Bullis' filings in this case were thus undeniably made with the indefensible purpose of disrupting the progression of this case to the preliminary approval stage, ostensibly in the interests of the class, but truly for the purpose of working a separate deal with the defendant, in order to line her own pockets. This is not just a matter of not making meritorious claims. It is a shockingly transparent and blatant violation of Rule 3.5, Washington RPC ("lawyer shall not engage in conduct intended to disrupt a tribunal"), and Rule 8.4(c) and (d), Washington RPC (professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" or to "engage in conduct that is prejudicial to the administration of justice").

Ms. Bullis also privately contacted Mr. Harber in an attempt to persuade him to abandon his cooperation with Class Counsel and to assist her efforts to interfere with this and the *Shin* matters. In so doing, she made knowing false statements of fact to Mr. Harber. Mr. Harber's deposition confirms that Ms. Bullis falsely told him that Ms. Hayes planned to advocate to the Court at the *Shin* final approval hearing for the imposition of a mode of damage calculation in diminished value cases generally, which would effectively put Mr. Harber "out of a job." *See* Rule 4.1, Washington RPC ("In the course of a representation, a lawyer shall not make a false statement of material fact or law to a third person").

As stated earlier, the Court's role is to make a decision regarding disqualification of counsel based on all the relevant facts. *Taylor v. County of Berks*, 2003 WL 21119689 (E.D. Pa. May 16, 2003) (disqualifying plaintiff's counsel based on "the totality of the facts"). Given the totality of circumstances here, the Court must recognize that Ms. Bullis' conduct is truly the type

---

[10] Ms. Bullis' intent to collect additional fees is blatantly apparent when she herself describes her substantively identical filings in *Shin* in correspondence to Ms. Martin and to another client, Mr. Martin Hovenkotter. These letters are available for the Court to review *in camera*.

18

of egregious misconduct that warrants the unusual measure of disqualification. The Court should so order.

**F.    Conclusion**

The Court should allow time for the negotiation of attorneys' fees, the documentation of the settlement agreement and the presentation of a motion for preliminary approval of the proposed settlement in this matter. The Court should also enter its order disqualifying Ms. Bullis from further representation in this matter.

RESPECTFULLY SUBMITTED this 3rd day of February, 2010.

LOWENBERG, LOPEZ & HANSEN, PS

/s/ Stephen M. Hansen

STEPHEN M, HANSEN, WSBA # 15642
Of Attorneys for Plaintiff

19

Debra Brewer Hayes
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX 77027
Telephone: (713) 622-7271
Fax: (713) 623-8724
dhayes@dhayeslaw.com

Elaine A. Ryan
Patricia N. Syverson
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2901 N. Central Ave., Suite 1000
Phoenix, AZ 85012
Telephone: (602) 274-1100
Fax: (602) 798-5825

Van Bunch
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
57 Carriage Hill
Signal Mountain, Tennessee 37377
Telephone: (423) 886-9736
David A. Futscher
PARRY DEERING FUTSCHER
& SPARKS, PSC
411 Garrard Street, P.O. Box 2618
Covington, KY 41012-2618
Telephone: (859) 291-9000
Fax: (859) 291-9300
dfutscher@pdfslaw.com

20

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2010, I caused the foregoing Class Plaintiffs' Response to

Memorandum of Class Representative Marilyn Martin and Motion to Disqualify to be

electronically filed with the Clerk of the Court using the CM/ECF system which will send

notification to all counsel to be noticed.


/s/Debra Brewer Hayes
DEBRA BREWER HAYES


21

THE HONORABLE RONALD B. LEIGHTON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SU SHIN, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>ESURANCE INSURANCE COMPANY, a Wisconsin corporation, ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, a California corporation, ESURANCE INC., a Delaware corporation, and ESURANCE INSURANCE SERVICES, INC., a Delaware corporation,<br><br>      Defendants. | Case No. 08-CV-05626-RBL<br><br>CLASS PLAINTIFFS' OPPOSITION TO "MEMORANDUM OF AUTHORITIES TO POSTPONE CLASS PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND SETTLEMENT CLASS CERTIFICATION" |

TO THE HONORABLE RONALD B. LEIGHTON:

  Counsel for the preliminarily-approved Settling Class respectfully submit their opposition to the "Memorandum of Authorities to Postpone Class Plaintiff's Motion for Final

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

1   Approval of Class Action Settlement and Settlement Class Certification" filed on January 14,

2   2010, by attorney Alana Bullis, purportedly on behalf of Class Representative Su Shin, and

3   request that the Court find no merit to the tardy assertions made by Ms. Bullis and enter its

4   Order of Final Approval of the Settlement.

5   **A. The objection to the Settlement is late and should be disregarded for that reason.**
6   **Additionally, the objection should be disregarded because both Ms. Shin and Ms. Bullis**
    **assented to the Settlement before entry of the Order of preliminary approval.**
7

8       On October 2, 2009, this Court, following a full hearing, entered its Order preliminarily

9   approving the proposed settlement of this action under which some 2800 Esurance insureds

10  could file claims to receive payments averaging $283 for payment of diminished value ("DV")

11

12  resulting from damage to their vehicles in an accident with an uninsured or underinsured

13  motorist. Before that hearing and the entry of the Order of preliminary approval, both Class

14  Representative Su Shin and her referring counsel, Ms. Bullis, indicated their assent to and

15  approval of the proposed settlement. *See* email correspondence from Ms. Bullis dated July 16,

16  2009, indicating Ms. Shin's approval, and executed signature page of Ms. Bullis dated August

17

18  3, 2009, attached as **Exhibits 1 and 2**, respectively.

19      Pursuant to the Court's Order preliminarily approving the proposed Settlement, anyone

20  with any objection to the Settlement or who wished not to participate in the Settlement could

21  file an objection or opt out of the Class by filing appropriate documentation on or before

22

23  December 29, 2009. No one did so.

24      Thereafter, beginning with an email from Ms. Bullis on January 4, 2010, attached as

25  **Exhibit 3**, Ms. Bullis began expressing her unfounded concerns about the proposed Settlement.

26

27

28  OPPOSITION TO MOTION TO POSTPONE                    LOWENBERG, LOPEZ & HANSEN, P.S.
    FINAL APPROVAL OF SETTLEMENT                              ATTORNEYS AT LAW
                                                              SUITE 450, RUST BUILDING
                                                               950 PACIFIC AVENUE
                                                        TACOMA, WASHINGTON 98402-4441
                                                        (253) 383-1964/ (253) 838-4993
                                                             (253) 383-1808 FAX

                                    - 2 -

Class Counsel spoke with Ms. Bullis and met personally with her for almost three hours on January 13, 2010, in an unsuccessful attempt to address and resolve her concerns.

The next day, Ms. Bullis filed her "Memorandum of Authorities to Postpone Class Plaintiff's Motion for Final Approval of Class Action Settlement and Settlement Class Certification" in which she set forth basically three concerns with the proposed Settlement: (1) that the scope of the release was too broad; (2) that a provision in the Settlement Agreement and incorporated in the Settlement may violate Rule of Professional Conduct 5.6(b); and (3) that the settlement amount was inadequate because it failed to "value" unasserted claims under Washington's Consumer Protection Act.

At oral argument on January 15, 2010, Ms. Bullis raised an additional issue on adequacy of the settlement, asserting that the Settlement failed to account for or advise the Class of certain asserted personal income tax consequences of payments made on claims paid under the settlement.

While the Court entertained Ms. Bullis' tardy filings and permitted her to air her grievances in open court, the fact remains that Ms. Bullis' attempts to delay the Settlement are untimely and inexcusable. They should be denied on that basis alone. *See, e.g., Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207 (D. N.J. 2005); *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 476 (S.D. Fla. 2002); *Haynes v. Shoney's, Inc.*, 1993 WL 19915 at *2 (N.D. Fla. Jan. 25, 1993) (unpub.) (objections filed two days after deadline "would be reason enough to reject objection"). Importantly, both Ms. Bullis and Ms. Shin previously assented to the Settlement. Court-approved Notice to the class was given in

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 3 -

1    reliance on that assent.  Neither Ms. Bullis nor Ms. Shin have raised any grounds sufficient to

2    excuse the late-filed objection or justifying withdrawal of their assent to the Settlement.

3        The Court ordered Class Counsel to respond to Ms. Bullis' Motion.  For the reasons that

4    follow and as argued on January 15, 2010, any purported objections to the Settlement should be

5    emphatically over-ruled and the Settlement should receive final Court approval.

6

7    **B.  The scope of release is garden variety and of the sort routinely provided in settling any
     claim, class or otherwise.**

8

9        As the Court noted during oral argument on January 15, 2010, settlements routinely

10   resolve all claims arising out of the transaction or occurrence giving rise to the claims stated in

11   the complaint, whether known or unknown.  Indeed, the release language at issue in this case is

12   transactionally-limited in precisely that manner:

13

14           "Released Claims" means and includes any and all unknown claims, known

15           claims, rights, demands, actions, causes of action, suits, debts, liens, contracts,

16           liabilities, agreements, interest, costs, expenses or losses for any actions that are

17           or could have been alleged by the named plaintiff or any class member against

18           Esurance that relate in any way whatsoever to this Action.

19

20   Settlement Agreement, para. 26.

21       The definition of "Unknown Claims" in the Settlement Agreement is similarly limited

22   to only the transactions giving rise to the Action, here, for DV payments:

23           "Unknown Claims" means any claims arising out of facts found hereafter to be

24           other than or different from the facts now believed to be true, relating to any

25           matter covered by this agreement, as to any of the released claims.

26

27   Settlement Agreement, para. 33.

28

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 4 -

Notwithstanding this plain and easily understood language, Ms. Bullis presents two arguments in support of her position that the release is overly broad.

First, she argues that the Settlement releases claims including claims which were not asserted in the action, perhaps based upon facts not yet known. This position is clearly untenable, as it is well-established that claims not presented may be included in the release if they are based on the identical factual predicate.

As the Ninth Circuit has recognized, the "weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.[1]" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992) (citations omitted). "[W]here a particular type of relief potentially available to the class members is compromised in the settlement process, it is mainly irrelevant whether or not that relief was specifically requested in the complaint. The breadth of negotiations is not necessarily strictly confined by the pleadings." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 632 n. 18 (9th Cir. 1982).

Other Circuits are in complete agreement that allowing a broader scope of release "serves the important policy of judicial economy by permitting parties to enter into comprehensive agreements that prevent re-litigation of settled questions at the core of a class action." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366-67 (3d Cir.

---

[1]   The release at issue in *City of Seattle* was obviously broader in scope than the one at issue here; here, the release does not extend to matters that "might not have been presentable," but is limited to only those which "are or could have been" raised. Still, the Ninth Circuit found it valid.

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 5 -

1   2001) (citations omitted); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d

2   1041, 1044 (1st Cir. 1996) (court may permit release of claim based on identical factual

3   predicate; rejecting argument that approval of settlement should be overturned because plaintiff

4   released claims not raised in the complaint). In addition, class action releases may include

5   "claims not presented and even those which could not have been presented as long as the

6   released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart*

7   *Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005). "There is no impropriety in

8   including in a settlement a description of claims that is somewhat broader than those that have

9   been specifically pleaded. In fact, most settling defendants insist on this." *In re Gen. Am. Life*

10  *Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004).

11

12          It is important to note that it is commonplace and permissible in this context for the

13  release to include claims "unknown" to the class. Cases which approved class settlements

14  with releases of known and unknown claims include *In re Prudential Ins. Co. America Sales*

15  *Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998); *Bussie v. Allmerica Financial*

16  *Corp.*, 50 F. Supp.2d 59 (D. Mass. 1999) and *Varacallo v. Massachusetts Mut. Life Ins. Co.*,

17  226 F.R.D. 207 (D.N.J. 2005) (rejecting objectors' argument that settlement was not fair

18

19  because the scope of release was too broad, including claims unknown to the class).

20

21          Secondly, Ms. Bullis argues that the release and/or the Notice is faulty because the

22  scope of the release (as pertaining to unknown claims) was not contained in the Notice and,

23

24  citing no authority, she maintains this "clearly is not fair." A settlement notice is adequate if

25  it fairly apprises members of "the terms of settlement, including the scope of the release." *Wal-*

26  *Mart Stores Inc. v. VISA U.S.A. Inc.*, supra at 124. Based on the notice language she cites,

27

28

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 6 -

1   which notifies the class that unless they exclude themselves they would not be able to be a part

2   of "any other lawsuit against Esurance about the factual and legal issues in this case," it is

3   difficult to see how class members were not "given sufficient notice and opportunity to object

4   to the fairness of the release." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460

5   (2d Cir. 1982).

6

7       Moreover, the Settlement Agreement itself is available for viewing on the website

8   pertaining to this Action and Settlement. Anyone interested in reading it need only click on the

9   link.

10  **C. There is neither merit nor support for the contention that provisions in the Settlement**
11  **Agreement violate Rules of Professional Conduct.**

12      Since there were no opt-outs to represent in follow-on cases against Esurance, the
13
14  supposed issue under the ABA Model Rules is moot. In another example of Ms. Bullis' "shoot
15  first, ask questions later" approach, she fails to admit this simple fact – there is no issue here
16  under the present state of facts. Moreover, a fair reading of the provision at issue and some
17
18  basic research would have revealed to Ms. Bullis that on top of being moot, the issue she raises
19  is baseless under the law. Moreover, despite the Court's request that Ms. Bullis supply an
20  affidavit or other potentially admissible evidence of her asserted "expert opinion" supporting
21  her position by January 21, 2010, she has not done so.

22      The interpretation and application of the rules of ethics to the conduct of attorneys
23
24  appearing in federal court is controlled by federal law. *See, e.g., Grievance Committee for the*
25  *Southern District of New York v. Simels*, 48 F.3d 640, 645 (2d Cir.1995) (in interpreting rules
26  of ethics "well established principles of federalism require that federal courts not be bound by
27  either the interpretations of state courts or opinions of various bar association committees");

28  OPPOSITION TO MOTION TO POSTPONE
    FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 7 -

1   *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 624 (S.D.N.Y.1990) ("Federal

2   law governs the conduct of attorneys in the federal courts."); *Suffolk v. Long Island Lighting*

3   *Co.*, 710 F.Supp. 1407, 1413 (E.D.N.Y.1989) ("A federal court is not bound to enforce New

4   York's view of what constitutes ethical professional conduct").

5       The "sparse case law interpreting" ABA Model Rule 5.6(b) "suggests a judicial

6   reluctance to interpret these rules as a bar to restrictive covenants in settlement agreements."

7

8   *Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*,   53 F.Supp.2d 338, 343

9   (E.D.N.Y.1999).

10      The annotated comments to ABA Model Rule 5.6(b) provide as follows:

11

12      In settling their client's cases, lawyers may not restrict their own *future*

13      employment.  In other words, a plaintiff's lawyer is not allowed to promise not

14      to represent anyone else with similar claims against the defendant, and the

15      defendant is not allowed to ask:

16

17          First, permitting such agreements restricts the access of the public

18          to lawyers who, by virtue of their background experience, might

19          be the very best available talent to represent these individuals . . .

20          Second, the use of such agreements may provide clients with

21          rewards that bear less relationship to the merits of their claims

22          than they do to the desire of the defendant to "buy off" plaintiff's

23          counsel. Third, the offering of such restrictive agreements places

24          the plaintiff's lawyer in a situation where there is conflict

25          between the interests of present clients and those of *future* clients.

26   (Emphasis added).

27

28

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 8 -

Def.'s Resp. to Pl.'s Motion for
Class Cert. 2:09-cv-00218 JLR - pg 1281 of 1402

1  The above demonstrates the concerns pertain solely to restrictions against *future* employment,

2  the word "future" being the operative word.

3      Federal decisions concerning this rule are few.  In a case from the New York Court of

4  Appeals (whose interpretations of ethical rules do not bind this court, but are nevertheless an

5  appropriate source of guidance), stated in interpreting the equivalent state rule: "The type of

6  restriction that violates DR 2-108(B) is one that *completely prohibits the lawyer from*

7

8  *representing clients* and thus offends the right of members of the public to select and repose

9  confidence in lawyers of their choice without restriction by providing full availability of legal

10  counsel." *Cohen v. Lord*, Day & Lord, 75 N.Y.2d 95, 106 n. 2, 550 N.E.2d 410, 416, 551

11  N.Y.S.2d 157, 163 (1989) (citation and internal quotation marks omitted) (emphasis added).

12

13      In this case there are no such restrictions.  The provision in controversy was designed

14  for the express purpose of *prohibiting* a conflict of interest created by class counsel

15  encouraging members of the class to opt out and then representing opt-outs against the

16  Defendant in this matter.  The provision pertains only to those class members who would elect

17  to opt-out from the class, and not to undefined or unknown *future* clients.  There are no opt-

18

19  outs in this case.

20      Nothing within the language prohibits representation of *future* clients against the

21  defendant.  Moreover, the express language of the agreement expressly nullifies any restriction

22  that would violate the Rules of Professional Conduct.  In other words, any prohibition that

23  would violate the RPC's or ethical rules is unenforceable.  Ms. Bullis' contention that an

24  improper motive should be attached to the language which indicates that the provision is *not*

25

26  enforceable to the extent it would conflict with a rule is misplaced - to the contrary, the

27

28

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 9 -

1   language was designed and included to avoid the type of situation that the Rule is designed to

2   prohibit.

3       The most analogous federal decision analyzing Model Rule 5.6(b) found that provisions

4   of a settlement agreement requiring class counsel to advise future claimants against filing

5   certain claims falling short of certain medical criteria did not violate the rule because counsel

6

7   did not intend these provisions to create a binding obligation on their part to refrain from

8   representing clients who did not meet these criteria but wished to sue the defendant. *Georgine*

9   *v. Amchem Products, Inc.*, 157 F.R.D. 246 (E.D.Pa.1994), *rev'd on other grounds*, 83 F.3d 610

10

11  (3d Cir.1996), *aff'd sub nom.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct.

12  2231, 138 L.Ed.2d 689 (1997).   In this case, there is no intention (or obligation) on the part of

13  class counsel to engage in future conduct that would violate ethical rules.   The provision only

14  acknowledges the obvious – counsel were not to try to undercut the very settlement they

15  presented to the Court as "fair, reasonable and adequate" by then encouraging opt-outs.

16  **D.  There is no merit to the contention that Class Counsel should have asserted "bad faith"
17      claims; they added no appreciable value to the settlement.**

18

19      For the reasons stated at oral argument and in the briefing in support of Final Approval,

20  it is uncontested that the average pay-out under the settlement, $283 per claim, is "fair,

21  reasonable and adequate." Ms. Bullis complains, however, that additional claims should have

22  been asserted under the Washington Consumer Protection Act and added value to the Class

23  claims settled. As the Court noted, however, settlement values reflect the totality of

24  circumstances then in effect, including not only individual potential recoveries, but also the

25

26  likelihood of success on the merits and, importantly, the ability to resolve the case without

27

28  OPPOSITION TO MOTION TO POSTPONE              LOWENBERG, LOPEZ & HANSEN, P.S.
    FINAL APPROVAL OF SETTLEMENT                      ATTORNEYS AT LAW
                                                   SUITE 450, RUST BUILDING
                                                    950 PACIFIC AVENUE
                                                TACOMA, WASHINGTON 98402-4441
                                                   (253) 383-1964/ (253) 838-4993
                                                     (253) 383-1808 FAX

                            - 10 -

1  prolonged, expensive litigation and provide payment to Class Members now, not years from

2  now.

3      There are considerable obstacles to the certification of a nationwide class alleging false

4  or deceptive practices in claims handling under the Washington consumer protection

5

6  statute. State consumer protection laws "vary considerably, and courts must respect these

7  differences rather than apply one state's laws to sales in other states with different rules.[2]" *In re*

8  *Bridgestone/Firestone Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002). Moreover, consumer fraud

9  laws of the states "differ with regard to the defendant's state of mind, type of prohibited

10  conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few." *In re*

11  *Prempro*, 230 F.R.D. 555, 564 (E.D. Ark. 2005). As a result, a court obliged to apply the laws

12  of all fifty states would find individual questions to overwhelm any common questions. *In re*

13

14  *Rezulin Products Liability Litig.*, 210 F.R.D. 61, 68 (S.D.N.Y. 2002).

15      In the end, a "nationwide class alleging violations of the laws of multiple jurisdictions

16  would likely require at least one representative plaintiff from each jurisdiction" to meet

17

18  the adequacy requirements of Fed. R. Civ. P. 23(a), when it comes time for the motion for class

19  certification. *Whitson v. Bumbo*, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) (dismissing

20  causes of action framed as nationwide class allegations of violation of each states' respective

21  consumer protection laws).

22      Just yesterday, moreover, the Washington Supreme Court published its opinion in

23

24  *Schnall v. AT&T*, Case No. 80572-5, appeal from King County Superior Court Case No. 02-2-

25

26  [2]    This is not necessarily true of claims based on form contracts. *See Flanagan v. Allstate Ins. Co.*,
   242 F.R.D. 421, 428 (N.D. Ill. 2007); *Universal Serv. Tel. Billing Practices Litig.*, 219 F.R.D. 661, 667
27  (D. Kan. 2004).

28  OPPOSITION TO MOTION TO POSTPONE        LOWENBERG, LOPEZ & HANSEN, P.S.
   FINAL APPROVAL OF SETTLEMENT                 ATTORNEYS AT LAW
                                         SUITE 450, RUST BUILDING
                                         950 PACIFIC AVENUE
                               TACOMA, WASHINGTON 98402-4441
                               (253) 383-1964/ (253) 838-4993
                                  (253) 383-1808 FAX

- 11 -

1   05776-4 (Hon. Douglas A. North), in which it held that the Washington Consumer Protection

2   Act could not be extended to claims arising in other states. *See* Slip op. at 15 ("nothing in our

3   law indicates that CPA claims by nonresidents for acts occurring outside of Washington can be

4   entertained under the statute"). [3] The *Schnall* Court concluded that a nationwide class action

5   should not be certified under the Washington CPA. *See* Slip op. at 22 (Washington need not

6   apply its Consumer Protection Act "to citizens of other states in order to protect the interests of

7   citizens of Washington. A nationwide class would be unmanageable and unduly burdensome

8   

9   on the trial court and the state judicial system and serve no real benefit to plaintiffs who are free

10  to bring statewide class actions in their home states.").

11

12          The *Schall* ruling applies with even greater force here. In that case, the Washington

13  Supreme Court declined to extend the reach of the state's Consumer Protection Act extra-

14  territorially against a corporation domiciled in this State. Esurance is not a Washington

15  domiciliary, so applying its Consumer Protection Act would be even more problematic. There

16  is no appreciable "added value" for asserting such claims. [4]

17

18  E.   *There are no tax consequences concerning payment of an award of damages for damage to a capital asset.*

19

20          Ms. Bullis has raised concerns that payment of damages to class members for

21  diminution of value to their vehicles could result in such damages being categorized as

22

23

24  _____

    [3]      available at:
25  http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=805725MAJ.
    Copy attached as **Exhibit 4**.

26  [4]      The same is not necessarily true, however, of the certifiability of a nationwide breach of
    contract class with form contracts all containing essentially the same operative language and lacking the
27  choice of law provisions which drove the findings in *Schnall*.

28

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 12 -

1  "ordinary income" for tax purposes. Again, thoughtful consideration of the issue and basic

2  research would have quelled any such concern, as it is groundless in law and fact.

3      If a recovery compensates solely for damages to capital assets, the recovery will be

4  treated as capital. Thus, it would produce a capital gain or would reduce the taxpayer's capital

5  loss, depending upon the taxpayer's basis in the asset. See 47 AM. JUR. Trials § 591; and

6

7  *Marcalus Manufacturing Co., Inc. v. Commissioner*, 30 T.C. 1345, 1354 (1958)(no gain [i.e.,

8  income] was realized because the amount received to compensate taxpayer for damaged asset

9  did not exceed the adjusted basis of the property immediately prior to the involuntary

10
   conversion.)  In this case, the *only* way payment of any settlement could result in a taxable
11
   consequence is if the settlement payment ($283 on average) exceeded the class member's basis
12
13  (i.e., the purchase price) in the automobile.

14      In determining whether receipts are taxable as ordinary income or as a return of capital,

15  it is immaterial whether taxpayer effected collection amicably or by resolving a dispute through

16
   compromise or litigation.  "It is the nature of the underlying claim that controls and not the
17
18  manner of collection."  *Thomson v. Commissioer*, 406 F.2d 1006, 1008 (9th Cir. 1969) (quoting

19  *Spangler v. Commissioner*, 323 F.2d 913, 916 (9th Cir. 1963)).  In this case, the "underlying

20  claim" alleged in Plaintiff's Class Action Complaint concerns diminished value claims

21  pertaining to automobiles.  There can be no doubt that the claim involves loss in value to a
22
23  capital asset.

24  ***CONCLUSION***

25      For all of the foregoing reasons, the motion by attorney Alana Bullis, purportedly on

26  filed on behalf of Class Representative Su Shin, should be **DENIED.**

27

28
OPPOSITION TO MOTION TO POSTPONE                    LOWENBERG, LOPEZ & HANSEN, P.S.
FINAL APPROVAL OF SETTLEMENT                              ATTORNEYS AT LAW
                                                        SUITE 450, RUST BUILDING
                                                          950 PACIFIC AVENUE
                                                   TACOMA, WASHINGTON 98402-4441
                                                     (253) 383-1964/ (253) 838-4993
                                                         (253) 383-1808 FAX

                                   - 13 -

RESPECTFULLY SUBMITTED submitted this 22nd day of January, 2010.

LOWENBERG, LOPEZ & HANSEN, PS

STEPHEN M, HANSEN, WSBA # 15642

Of Attorneys for Plaintiff

Debra Brewer Hayes
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone:  (713) 622-7271
Fax:  (713) 623-8724
dhayes@dhayeslaw.com

Elaine A. Ryan
Patricia N. Syverson
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2901 N. Central Ave., Suite 1000
Phoenix, AZ  85012
Telephone:  (602) 274-1100
Fax:  (602) 798-5825

Van Bunch
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
57 Carriage Hill
Signal Mountain, Tennessee  37377
Telephone:  (423) 886-9736

David A. Futscher
PARRY DEERING FUTSCHER
& SPARKS, PSC
411 Garrard Street, P.O. Box 2618
Covington, KY  41012-2618
Telephone:  (859) 291-9000
Fax:  (859) 291-9300
dfutscher@pdfslaw.com

OPPOSITION TO MOTION TO POSTPONE
FINAL APPROVAL OF SETTLEMENT

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON  98402-4441
(253) 383-1964/ (253) 838-4993
(253) 383-1808 FAX

- 14 -