# EXHIBIT G

Supreme Court No. _____
Court of Appeals No. 30880-1-II

**IN THE SUPREME COURT**
**OF THE STATE OF WASHINGTON**

DAVID MOELLER,

Plaintiff/Respondent,

v.

FARMERS INSURANCE COMPANY OF WASHINGTON and
FARMERS INSURANCE EXCHANGE,

Defendants/Petitioners.

**PETITION FOR DISCRETIONARY REVIEW**

Jill D. Bowman, WSBA #11754
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
(206) 624-0900

Attorneys for Petitioners Farmers
Insurance Company of Washington
and Farmers Insurance Exchange

70024188.4 0045556-00018

TABLE OF CONTENTS

IDENTITY OF PETITIONERS ................................................................. 1

COURT OF APPEALS' DECISION ........................................................ 1

ISSUES PRESENTED FOR REVIEW ...................................................... 1

STATEMENT OF THE CASE ................................................................ 2
    A.       Statement of Facts .............................................................. 2
    B.       Procedural Background ...................................................... 3

ARGUMENT ......................................................................................... 6
    A.       The Court of Appeals' Interpretation of Farmers'
             Automobile Insurance Policy Conflicts with the
             Majority View and Raises an Issue of Substantial
             Public Interest That Warrants This Court's Review ............ 6
    B.       A Class Certification Order That Allows Damages
             to Be Awarded on a Class-Wide Basis Without
             Class-Wide or Individualized Proof of Liability Is
             Unconstitutional and Warrants Review ............................ 13

CONCLUSION ................................................................................... 20

70024188.4 0045556-00018

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Allgood v. Meridian Sec. Ins. Co.,*
   836 N.E.2d 243 (Ind. 2005).................................................................8, 9, 12

*Am. Mfrs. Mut. Ins. Co. v. Schaefer,*
   124 S.W.3d 154 (Tex. 2003) ..................................................................9, 12

*Bickel v. Nationwide Mut. Ins. Co.,*
   206 Va. 419, 143 S.E.2d 903 (1965) ...................................................12

*Carlton v. Trinity Universal Ins. Co.,*
   32 S.W.3d 454 (Tex. Ct. App. 2000).....................................................10

*Culhane v. Western Nat'l Mut. Ins. Co.,*
   704 N.W.2d 287 (S.D. 2005).................................................................13

*Davis v. Farmers Ins. Co. of Arizona,*
   140 N.M. 249, 142 P.3d 17 (2006), *cert. quashed,* 142 N.M.
   346, 166 P.3d 1090 (2007) .............................................................8, 12

*Driscoll v. State Farm Mut. Auto. Ins. Co.,*
   227 F. Supp. 2d 696 (E.D. Mich. 2002) .....................................8, 12, 13

*Gov't Employees Ins. Co. v. Bloodworth,*
   No. M2003-02986-COA-R10-CV, 2007 Tenn. App. LEXIS
   404 (Tenn. Ct. App. June 29, 2007) ..................................13, 16, 17, 18

*In re Hydrogen Peroxide Antitrust Litig.,*
   552 F.3d 305 (3d Cir. 2008) ..................................................................16

*Johnson v. Illinois Nat'l Ins. Co.,*
   818 So.2d 100 (La. Ct. App. 2001) .........................................................9

*Lupo v. Shelter Mut. Ins. Co.,*
   70 S.W.3d 16 (Mo. Ct. App. 2002) .......................................................11

*McLaughlin v. Am. Tobacco Co.,*
   522 F.3d 215 (2d Cir. 2008) ..................................................................18

70024188.4 0045556-00018                          ii

*Muise v. GPU, Inc.,*
  371 N.J. Super. 13, 851 A.2d 799 (N.J. Ct. App. 2004) ...................... 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
  259 F.3d 154 (3d Cir. 2001) ............................................................ 17

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.,*
  78 Wn. App. 707, 899 P.2d 6 (1995) ................................................ 13

*O'Brien v. Progressive N. Ins. Co.,*
  785 A.2d 281 (Del. 2001) ................................................................ 10

*Panag v. Farmers Ins. Co. of Washington,*
  166 Wn.2d 27, 204 P.3d 885 (2009) ................................................ 18

*Ray v. Farmers Ins. Exch.,*
  200 Cal. App. 3d 1411, 246 Cal. Rptr. 593 (1988) ........................ 8, 12

*Schnall v. AT&T Wireless Servs., Inc.,*
  168 Wn.2d 125, 225 P.3d 929 (2010) .............................................. 15

*Schwendeman v. USAA Cas. Ins. Co.,*
  116 Wn. App. 9, 65 P.3d 1 (2003) ................................................ 9, 16

*Seabed Harvesting, Inc. v. Dep't of Natural Res.,*
  114 Wn. App. 791, 60 P.3d 658 (2002) ............................................ 13

*Siegle v. Progressive Consumers Ins. Co.,*
  788 So. 2d 355 (Fla. Ct. App. 2001), *aff'd,* 819 So. 2d 732 (Fla.
  2002) ............................................................................................ 8, 12

*Siegle v. Progressive Consumers Ins. Co.,*
  819 So. 2d 732 (Fla. 2002) .............................................................. 12

*Sims v. Allstate Ins. Co.,*
  365 Ill. App. 3d 997, 851 N.E.2d 701, *appeal denied,* 2006 Ill.
  LEXIS 1885 (Ill. Nov. 29, 2006) ............................................ 9, 10, 12

*Sitton v. State Farm Mut. Auto. Ins. Co.,*
  116 Wn. App. 245, 63 P.3d 198 (2003) .................................... 2, 13, 18

*Weisfeld v. Sun Chem. Corp.,*
  210 F.R.D. 136 (D.N.J. 2002), *aff'd,* 84 F. App'x 257 (3d Cir.
  2004) ............................................................................................. 18

STATUTES, REGULATIONS, AND RULES

CR 23(b)(3)..................................................................................passim

OTHER AUTHORITIES

*Report of the Judicial Conference Committee on Rules of Practice
and Procedure to the Chief Justice of the United States and
Members of the Judicial Conference of the United States* 10
(2002)...............................................................................................16

Webster's Third New Int'l Dictionary (1976)............................................7

70024188.4 0045556-00018                    iv

## IDENTITY OF PETITIONERS

Petitioners are Farmers Insurance Company of Washington ("Farmers") and Farmers Insurance Exchange ("FIE"), respondents/cross appellants in the Court of Appeals.

## COURT OF APPEALS' DECISION

The Court of Appeals issued a published opinion on March 16, 2010, more than five years after oral argument. A copy of the opinion is attached in the Appendix ("App.") at App. 1-15.

## ISSUES PRESENTED FOR REVIEW

1.      On an issue of first impression in this state, the Court of Appeals ruled that an automobile insurance policy, which provided coverage for loss limited to the amount it would cost to repair or replace the damaged property with other of like kind and quality, obligated the insurer, after paying the cost of repair, to pay the insured an additional sum for the vehicle's "diminished market value." Does this ruling, which rejects the strong majority rule in other states (especially among recent cases), and which affects insurance practices throughout the state, raise an issue of substantial public interest that should be determined by this Court?

2.      The Court of Appeals affirmed certification of a CR 23(b)(3) class action despite (a) plaintiff's admission that defendants'

70024188.4 0045556-00018                          1

actions caused no injury to some class members, (b) plaintiff's lack of proof of defendants' potential liability to every class member, and (c) the conflict with Division One's decision in *Sitton v. State Farm Mut. Auto. Ins. Co.,* 116 Wn. App. 245, 63 P.3d 198 (2003). In so doing, the Court of Appeals sanctioned the prosecution of a class action and potential award of class-wide damages without competent proof of class-wide liability. Does this ruling, which violates defendants' due process rights, raise an issue of substantial public interest that should be reviewed by this Court?

## STATEMENT OF THE CASE

### A.    Statement of Facts

Plaintiff David Moeller's 1996 Honda Civic, insured by Farmers, was damaged in a collision occurring in November 1998. CP 1-34, 39, 524-25. The insurance policy stated that Farmers would "pay for **loss to your insured car** caused by **collision** less any applicable deductibles." CP 19. "**Loss**" was defined as "direct and accidental loss of or damage to **your insured car**, including its equipment." *Id.* The policy did not contain definitions of the terms "direct" and "accidental," but defined "**accident**" as "a sudden event ... resulting in **bodily injury** or **property damage** neither expected nor intended by **the insured person**." CP 12. "**Property damage**" was defined as "physical injury to or destruction of tangible property, including loss of its use." *Id.*

70024188.4 0045556-00018                                2

Moeller's policy provided that Farmers could "pay the loss in money or repair or replace damaged or stolen property." CP 20. The Limits of Liability clause provided that Farmers' "limits of liability for loss shall not exceed ... [t]he amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality; or with new property less an adjustment for physical deterioration and/or depreciation ...." *Id.*; CP 33. Either Farmers or the insured could demand an appraisal of the amount of loss. CP 20.

Farmers elected to pay the cost to repair Moeller's damaged car. CP 79-80. Moeller authorized the repair and did not demand an appraisal of his loss. CP 79. After Moeller acknowledged the repairs were "complete" and "acceptable," Farmers paid the full repair cost, less Moeller's $500 deductible. CP 79-80.

**B.     Procedural Background**

Moeller filed this action on May 18, 1999. CP 382-91. Suing on his own behalf and on behalf of a putative class of Farmers policyholders residing in the state of Washington, Moeller asserted claims for breach of contract, insurance bad faith, Consumer Protection Act ("CPA") violations, and failure to make prompt payment of his insurance claim in alleged violation of provisions of the Washington Administrative Code. CP 36-47.

70024188.4 0045556-00018                      3

More than two years after commencing his lawsuit, Moeller moved for class certification under CR 23(b)(3).  CP 476-679.  He argued that when certain cars sustain certain kinds of collision damage, there is a difference between the pre-accident value of the car and the car's value after it is repaired and returned to the insured (i.e., alleged "diminished value").  CP 474.  Diminished value exists, according to Moeller, because such cars "cannot be repaired to their pre-accident condition."  CP 145. Moeller hypothesized that determining whether diminished value in fact exists, and the amount of class-wide damages attributable to it, could be proved with testimony by a statistician who would use sales data collected from car auctions to perform a regression analysis, and then testify regarding any "statistical variation in the price of wrecked and repaired cars and unwrecked cars."  RP 48-49 (Certification Hearing, June 27, 2002); CP 680-85.

Moeller admitted that some members of the proposed class would not have sustained any diminished value injury (and therefore no uncompensated loss) because, for example, their cars had previously been "wrecked and repaired."  RP 77 (Certification Hearing, June 27, 2002). To address this problem, he proposed the class-wide "damage[s] estimate" be "discount[ed]" by "lop[ping] ... off" some amount.  *Id.* at 77-78.

70024188.4 0045556-00018                  4

The trial court granted Moeller's motion, App. 42-56 (CP 1588-

1602), and on September 13, 2002, certified a CR 23(b)(3) class of

> all persons who: (1) were insured pursuant to a casualty
> automobile insurance policy issued by Farmers for the state
> of Washington; (2) received payment under their collision
> or comprehensive coverages for damage to an insured
> automobile from May 30, 1993 to the date of class
> certification in this action; and (3) did not receive payment
> for inherent diminished value where: (a) the repair
> estimate including supplements totaled at least $1,000,
> (b) the vehicle was no more than six years old (model year
> plus five years) and had less than 90,000 miles on it at the
> time of the accident, and (c) the vehicle suffered structural
> (frame) damage and/or deformed sheet metal and/or
> required body or paint work.

> Excluded from the class are Defendants; their officers and
> directors; this Court and any member of the Court's
> immediate family; and those individuals whose vehicles
> were leased or total losses.

App. 55 (CP 1601).

Several months later, Farmers and FIE successfully moved for

summary judgment on the grounds that Farmers' policy did not require

payment of diminished value claims and that Moeller's bad faith and CPA

claims were barred because Farmers' decision that the policy did not cover

diminished value claims was reasonable as a matter of law.  CP 81-104;

App. 22-42. Moeller appealed.  App. 20-21.  Farmers and FIE cross-

appealed the class certification ruling.  App. 16-19 (CP 1584-1602).

70024188.4 0045556-00018                         5

On March 16, 2010, the Court of Appeals issued a published opinion reversing the trial court's ruling on Moeller's breach of contract and CPA claims, affirming the trial court's decision to certify the case as a class action under CR 23(b)(3), and remanding for further proceedings. App. 1-15. Farmers and FIE seek discretionary review.

## ARGUMENT

A.   **The Court of Appeals' Interpretation of Farmers' Automobile Insurance Policy Conflicts with the Majority View and Raises an Issue of Substantial Public Interest That Warrants This Court's Review.**

Automobile insurance policies typically provide that an insurer has the contractual right to choose between paying an insured's loss in money or repairing or replacing a damaged vehicle. In the nearly unanimous view of modern courts, an insurer that elects to repair a vehicle has no obligation to pay the repair cost *and* pay for the vehicle's alleged "diminished value." These courts conclude that when a damaged vehicle is repaired so that its appearance and function are substantially restored, the insurer has fully satisfied its contractual obligation to pay the insured's loss. The Court of Appeals' contrary decision is at odds with the majority view and lacks a reasoned basis. The opinion raises an issue of substantial public importance that should be determined by this Court.

70024188.4 0045556-00018                 6

The Court of Appeals' decision hinged on interpretation of the Payment of Loss and Limits of Liability clauses in the Farmers policy. App. 8-10. The Payment of Loss clause allows Farmers to choose between paying a loss in money or repairing or replacing damaged or stolen property; the Limits of Liability clause limits Farmers' liability for loss to "[t]he amount which it would cost to repair or replace damaged ... property with other of like kind and quality; or with new property less an adjustment for physical deterioration and/or depreciation." CP 20; CP 33. The appellate court acknowledged that the terms "repair" and "replace" are unambiguous, but concluded that the obligation to "repair or replace damaged ... property with other of like kind and quality" is ambiguous and can mean that a repaired vehicle's "capacity and value post-loss should be similar to its capacity and value pre-loss." App. 9-10. The court drew this conclusion after examining dictionary definitions of the terms "like," "kind," and "quality." Citing *Webster's Third New International Dictionary* (1976), the court found the terms mean "the same as or similar to," "fundamental nature," and "degree of excellence: grade, caliber," respectively. *Id.* at 9.

None of the definitions mentions the concept of value. Nevertheless, the appellate court concluded that the phrase "like kind and

70024188.4 0045556-00018                                    7

quality" means that Farmers' repair or replace obligation encompasses an obligation to restore a damaged vehicle's *"appearance, function, and value,"* and therefore if a vehicle cannot be restored to its pre-loss "status," Farmers must pay the insured for the vehicle's diminished value. *Id.* at 9-10.

This interpretation has been rejected by a large majority of the courts that have examined identical or similar insurance provisions. For example, in *Siegle v. Progressive Consumers Ins. Co.*, 788 So. 2d 355, 359-61 (Fla. Ct. App. 2001), *aff'd*, 819 So. 2d 732 (Fla. 2002), the court rejected the very same argument (i.e., that an obligation to repair or replace damaged property with other of like kind or quality obligates an insurer to restore a collision-damaged vehicle to its pre-accident appearance, function, and value). In *Davis v. Farmers Ins. Co. of Arizona*, 140 N.M. 249, 255, 142 P.3d 17 (2006), *cert. quashed*, 142 N.M. 346, 166 P.3d 1090 (2007), the court examined a policy with language identical to the language in Moeller's policy, and concluded that "a reasonable insured could not read 'diminished market value' into the phrase 'like kind and quality ....'"[1] As one court explained, the "like kind and quality" clause

---

[1] *Accord, e.g., Driscoll v. State Farm Mut. Auto. Ins. Co.*, 227 F. Supp. 2d 696, 706-08 (E.D. Mich. 2002); *Ray v. Farmers Ins. Exch.*, 200 Cal. App. 3d 1411, 246 Cal. Rptr. 593, 594-96 (1988); *Allgood v. Meridian Sec. Ins. Co.*, 836

(continued . . .)

in the "repair or replace" limits-of-liability provision refers to "replace"[2]

and means that "[i]f an insurer elects to repair a vehicle and must replace

parts in doing so, it must use parts of 'like kind and quality,' and if an

insurer elects to replace the vehicle, it must do so with a vehicle of 'like

kind and quality.'" *Sims v. Allstate Ins. Co.*, 365 Ill. App. 3d 997, 1003,

851 N.E.2d 701, *appeal denied*, 2006 Ill. LEXIS 1885 (Ill. Nov. 29, 2006).

---

(. . . continued)
N.E.2d 243, 247-48 (Ind. 2005); *Johnson v. Illinois Nat'l Ins. Co.*, 818 So.2d
100, 104 (La. Ct. App. 2001); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d
154, 160 (Tex. 2003).

   [2] The *Allgood* court, 836 N.E.2d at 247-48, explained further:
      To say one would repair an item with goods of like
      kind or quality is simply not correct English. An
      item of property (or a part of that item) is "replaced"
      with other property, but it is "repaired" with tools
      and labor.... "[L]ike kind and quality"
      unambiguously refers only to replacement, not to
      repairs, and the verb "restore" appears nowhere in
      the policy.

   In a similar vein, when comparing USAA Casualty Insurance Company's
promise to replace an insured's "stolen or damaged property with new property
of like kind and quality, less an allowance for depreciation and physical
deterioration," with State Farm's guarantee "to use parts of like kind and quality
and to restore the insured's vehicle to its preloss condition," Division One of the
Washington Court of Appeals concluded "USAA's policy does not make this
guarantee." *Schwendeman v. USAA Cas. Ins. Co.*, 116 Wn. App. 9, 24, 65 P.3d 1
(2003). Thus, Division One did not find that a "like kind and quality" clause
requires restoration of a vehicle's pre-loss condition and value.

   Despite the Court of Appeals' suggestion to the contrary, *see* App. 6, 10,
nowhere in the Farmers policy is there any promise to restore a vehicle to its
"pre-loss condition" or "pre-loss status."

70024188.4 0045556-00018       9

It does not mean that an insurer is required to repair *and* pay for

diminished value. *See, e.g., id.*

In *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281 (Del. 2001),

plaintiffs brought suit under a policy with the same "repair or replace ...

with like kind and quality" language found in Farmers' policy, alleging, as

does Moeller, that even after their car had been repaired, physical damage

remained. Noting the trial judge had assumed the alleged remaining

damage resulted in "diminished value"[3] and that plaintiffs would be able

to prove damages, the Delaware Supreme Court affirmed the dismissal of

the action, holding that the policy unambiguously gave the insurer the

option to choose between the cost of repair or paying the full value of the

vehicle before the covered damage occurred, and that under the repair or

replace option, the insurer's liability was capped at the cost of returning

the damaged vehicle to substantially the same physical, operating, and

mechanical condition as existed before the loss. 785 A.2d at 290-91;

*accord Carlton v. Trinity Universal Ins. Co.,* 32 S.W.3d 454, 465 (Tex. Ct.

---

[3] To assess the summary judgment granted to Farmers, the Court of
Appeals made the same assumption. *See* App. 6 (referring to post-repair
"remaining, irreparable physical damage" as resulting in diminished value). But
whether any class member's car actually suffered diminished value remains an
issue of fact. *See* App. 47 (CP 1593); *see also* Brief of Appellant at 5 and Reply
Brief of Appellant/Brief of Cross Respondent at 1 (identifying as "disputed issue
of fact" whether class members' cars were restored to pre-loss condition).

10

App. 2000) (holding that when insurer has "fully, completely, and adequately 'repaired or replaced the property with other of like kind and quality,' any reduction in market value of the vehicle due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement" and insurer has no obligation to pay for diminution in value); *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 23 (Mo. Ct. App. 2002) (same).

Implicitly acknowledging that its ruling aligns Washington with the minority view, the Court of Appeals stated in a footnote that it found case law from other jurisdictions of "limited value" because, in most of the cases, the policies limited the insurer's liability to the "lesser of" the vehicle's "actual cash value" or the cost of repair or replacement. App. 8 n.10. Farmers' policy language did not have the "lesser of" language, but allowed the company to choose between paying the loss in money or repairing or replacing damaged property, and stated that Farmers' limits of liability "shall not exceed" the amount it would cost to repair or replace the damaged property.

Comparing the "lesser of" and "shall not exceed" clauses, the New Mexico Court of Appeals held this "trivial difference in language" does not mean that Farmers must pay the highest-cost alternative of its three

70024188.4 0045556-00018                    11

options: payment in money, repair, or replacement.[4] *See Davis*, 142 P.3d at 23-24. That court observed there are "a number of cases that have disallowed diminished market value where the policies contained the same or similar 'will not exceed' language." *Id.* at 24 (citations omitted); *accord Driscoll v. State Farm Mut. Auto. Ins. Co.*, 227 F. Supp. 2d 696, 698, 708 (E.D. Mich. 2002); *Ray v. Farmers Ins. Exch.*, 200 Cal. App. 3d 1411, 246 Cal. Rptr. 593, 596 (1988).

Holding an insurer liable for diminished value renders meaningless the insurer's contractual right to elect to repair or replace a damaged vehicle rather than to pay its actual cash value at the time of the loss. *See, e.g., Ray,* 200 Cal. App. 3d 1411, 246 Cal. Rptr. at 596; *Driscoll*, 227 F. Supp. 2d at 707; *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 739 (Fla. 2002); *Sims*, 851 N.E.2d at 706-07; *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 248 (Ind. 2005); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 160 (Tex. 2003); *Bickel v. Nationwide Mut. Ins. Co.*, 206 Va. 419, 143 S.E.2d 903, 906 (1965). The Court of Appeals' contrary ruling eviscerated Farmers' contractual right of choice, and would do the same for other insurers with similar policies.

---

[4] No "average insured" would expect his or her insurer to choose the highest-cost option to pay for a loss.

70024188.4 0045556-00018                    12

That insurers are *not* obligated by the common terms of insurance policies to both repair a damaged vehicle and pay the insured for any diminished value is "nearly the unanimous view of the multitude of courts." *Culhane v. W. Nat'l Mut. Ins. Co.*, 704 N.W.2d 287, 296 (S.D. 2005); *see Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 Tenn. App. LEXIS 404, at *108 (Tenn. Ct. App. June 29, 2007). Disregarding this abundant authority, the Court of Appeals held to the contrary. Whether this state should continue to disregard "the better view," *Driscoll*, 227 F. Supp. 2d at 707, is an issue of substantial public interest that warrants review by this Court.

**B.    A Class Certification Order That Allows Damages to Be Awarded on a Class-Wide Basis Without Class-Wide or Individualized Proof of Liability Is Unconstitutional and Warrants Review.**

The possibility of an award of class-wide damages without competent proof of liability to every class member offends due process. *See Sitton,*, 116 Wn. App. at 258, 63 P.3d 198. To establish liability for breach of contract, a claimant bears the burden of proving a contractual duty, breach of the duty, and resulting injury.[5] Moeller admitted he cannot prove breach or resulting injury on a class-wide basis, and his trial plan

---

[5] *See Seabed Harvesting, Inc. v. Dep't of Natural Res.*, 114 Wn. App. 791, 797, 60 P.3d 658 (2002); *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712-13, 899 P.2d 6 (1995).

shows he has no intention of providing individualized proof of liability for class members. Although Moeller's trial plan does not satisfy due process requirements, the Court of Appeals affirmed class certification under CR 23(b)(3).

Moeller contends that Farmers and FIE breached their contractual duty to pay class members their entire insured loss when the class members' cars were in accidents and sustained certain types of damage. According to Moeller, because repairs cannot restore certain damaged cars to their pre-accident condition and value, repairing a class member's car without also paying for the car's diminished value is inadequate payment of the loss and therefore a breach of the class member's insurance contract. But Moeller does not plan to prove his claim of breach and resulting injury with evidence of the pre-accident and post-repair values of class members' cars. Instead, using a statistical methodology and data from car auction sales, Moeller plans to prove that, on average, cars that are "wrecked and repaired" sell for lower prices than do cars that are "unwrecked," RP 48-49, and therefore, as a statistical matter, diminished value "exists." Moeller then plans to categorize and quantify the alleged *average* decreases in value associated with types or amounts of damage, multiply each alleged *average* amount by the number of class members in

70024188.4 0045556-00018                      14

each damage category, and then tally the numbers to provide a class-wide "damage[s] estimate." *See, e.g.,* RP 63-64, 73-78, 91-94, 160 (Certification Hearing, June 27, 2002).

This trial plan is constitutionally defective because Moeller's evidence cannot prove class-wide liability. Moeller admits that class members whose cars previously were "damaged in the same area of the vehicle ... don't get any more diminished value." RP 77 (Certification Hearing, June 27, 2002). If a class member's car is not less valuable after it is repaired – because it was previously damaged in the same area – then that class member's insurance contract is not breached when Farmers repairs the car but does not also pay anything for the car's non-existent diminution in value. In such a case, Farmers fully paid the insured loss and there is no breach or resulting injury. Without these essential elements, there is no liability for breach of contract.[6]

The same is true for an insured's car that is more valuable post-repair than it was before the accident occurred. If before an accident a car had dents and scratches, but the post-accident repairs and new paint job so

---

[6] Nor is there any liability for a CPA violation. In a private CPA action, there must be some causal link between the alleged unfair or deceptive act or practice and the consumer's injury. *See Schnall v. AT&T Wireless Servs., Inc.,* 168 Wn.2d 125, 144-46, 225 P.3d 929 (2010). When an insured loss is fully paid through repair, there is no injury caused by Farmers' failure to tender additional payment.

improve the car's appearance that any diminution in value allegedly

attributable to "weakened metal," for example, is outweighed by the

increase in value attributable to the car's improved appearance, then

Farmers did not commit any breach of contract by paying only for the

repairs.[7] A class member whose car is equally or more valuable post-

repair has no viable damages claim for breach of contract.

Moeller's burden at class certification was to demonstrate that

Farmers' alleged contract breach and the class members' claimed resulting

injury were "capable of proof at trial through evidence that is common to

the class rather than individual to its members." *In re Hydrogen Peroxide*

*Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008).[8]  Moeller did not

meet this burden.  Merely showing that diminished value "exists" in

---

[7] *See Bloodworth*, 2007 Tenn. App. LEXIS 404, at *141 n.36 (noting that
*the same type of evidence as was proposed by Moeller* "ignores the possibility
that the pre-accident value of a vehicle, based on its condition, ... may be
increased after repair"); *cf. Schwendeman*, 116 Wn. App. at 22-29, 65 P.3d 1
(holding individualized proof of the condition of each vehicle repaired was
required to determine whether insurer could be held liable for breaching its
contractual obligation to replace damaged parts with others of like kind and
quality).

[8] *Cf. Report of the Judicial Conference Committee on Rules of Practice
and Procedure to the Chief Justice of the United States and Members of the
Judicial Conference of the United States* 10 (2002) (explaining that "issues
bearing on certification" include "whether the evidence on the merits is common
to the members of the proposed class; whether the issues are susceptible to class-
wide proof" (quoted in *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at
319)).

70024188.4 0045556-00018                     16

theory does not prove that every class member's insurance contract was breached. *See Bloodworth*, 2007 Tenn. App. LEXIS 404, at *137-47.[9] Moeller admitted as much when he acknowledged that when a car is repeatedly damaged and repaired, a class member is not entitled to "any more diminished value." RP 77 (Certification Hearing, June 27, 2002).

Because Moeller admittedly cannot prove by common evidence (through expert testimony or otherwise) that *some injury* to each class member actually occurred, certification was untenable. *See, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-89 (3d Cir. 2001) (affirming denial of class certification, explaining that ability of plaintiff's expert "to calculate an aggregate amount of damages does not absolve plaintiffs from the duty to prove each [class member] was harmed by the defendants' practice," that "[p]roof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)," and that "the issue is not the calculation of damages but whether or not class members have any

---

[9] Considering *the very same type of proof as was proposed by Moeller*, the *Bloodworth* court explained that plaintiffs' evidentiary model "may provide a basis for the factfinder to decide that repair cannot restore vehicles with damage as defined in the class to their pre-accident condition and value (leaving aside the question of whether it can establish the impossibility of substantial restoration)," but it does not establish entitlement to diminished value damages. 2007 Tenn. App. LEXIS 404, at 140, 144. Put differently, such proof does not establish class-wide liability.

70024188.4 0045556-00018                              17

claims at all"); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 143 (D.N.J. 2002) (denying class certification, observing "[n]ot only do Plaintiffs have the burden of proving they can *calculate* the damages allegedly suffered by each class member, but to satisfy the antitrust injury requirement, Plaintiffs must demonstrate that 'some damage to each individual' actually occurred" (citation omitted), *aff'd*, 84 F. App'x 257 (3d Cir. 2004).[10]

Moeller's trial plan shows Moeller does not intend to prove that each and every class member sustained actual injury. The plan violates due process as much as did the trial plan in *Sitton*. It contemplates an award of class-wide damages without requiring that the essential elements of the claims be proved for every class member. *See Sitton*, 116 Wn. App. at 258, 63 P.3d 198; *accord, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231-32 (2d Cir. 2008).

The *Sitton* trial plan was vacated because its effect was to "eliminate causation as an element of plaintiffs' bad faith and CPA claims." 116 Wn. App. at 258, 63 P.3d 198. The class certification order in Moeller has the same effect. Allowing Moeller to rely on statistical

---

[10] *See also Bloodworth*, 2007 Tenn. App. LEXIS 404, at *134-35 n.32 (observing "there is a difference in computing individual damages and proving that some injury has been suffered, which is an essential element of liability"); *cf. Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 58, 204 P.3d 885 (2009) (acknowledging "'[i]njury' is distinct from 'damages'").

evidence, without any consideration of the pre-loss and post-repair condition of each class member's damaged car, amounts to eliminating breach and resulting injury as elements of Moeller's and the class members' contract claims and eliminating causation as an element of Moeller's and the class members' CPA claims. It relieves Moeller of the burden of affirmatively proving the elements of his claims, and effectively converts those elements into affirmative defenses.[11] Using the class action device, which is purely a procedural tool, to reverse the burden of proof improperly alters substantive rights and violates due process.

The Court of Appeals' decision shows no awareness of the due process issues. Because of the substantial public importance of ensuring that class actions are conducted without violating defendants'

---

[11] *See, e.g.,* RP 77 (Certification Hearing, June 27, 2002) (characterizing as element of "defense" any evidence that individual class member is not entitled to diminished value payment); CP 1598 (stating that Moeller's litigation plan takes into account "the steps necessary to ... analyze the data on the existence or amount of diminished value, *make adjustments to the classwide damages for any defenses raised (and substantiated by Defendants)*, and then provide for notification and allocation of any damages awarded to the class after trial" (emphasis added)). Because proof of liability is a prerequisite to an award of damages, the trial plan's flaw is not remedied by "lop[ping] ... off" some amount from Moeller's class-wide damages estimate, RP 77-78, to account for those class members who have no viable damages claim. *See, e.g., Muise v. GPU, Inc.,* 371 N.J. Super. 13, 851 A.2d 799, 819-23 (N.J. Super. Ct. App. Div. 2004) (upholding trial court's rejection of plaintiffs' statistical damages model where there was no proof of compensable injury to every class member; rejecting plaintiffs' argument that statistical model of class-wide damages is permissible where evidence shows "vast majority" of class members sustained injury).

70024188.4 0045556-00018                    19

constitutional rights, this Court should accept discretionary review of the class certification decision.

## CONCLUSION

For the reasons stated, this Court should grant discretionary review of both issues raised in this petition.

DATED:  April /4, 2010.

STOEL RIVES LLP

Jill D. Bowman, WSBA #11754

Attorneys for Petitioners Farmers
Insurance Company of Washington
and Farmers Insurance Exchange

70024188.4 0045556-00018                    20

APPENDIX

| Document | Page Numbers |
|---|---|
| Court of Appeals, Published Opinion, No. 30880-1-II, Filed March 16, 2010 | 1-15 |
| Notice of Cross-Appeal (excluding exhibit), Pierce County Superior Court, No. 99 2 07850 6, Filed September 30, 2003 | 16-19 |
| Notice of Appeal (excluding Exhibits), Pierce County Superior Court, No. 99 2 07850 6, Filed September 18, 2003 | 20-21 |
| Order Granting Summary Judgment of Dismissal (including Exhibit A), Pierce County Superior Court, No. 99 2 07850 6, Filed September 9, 2003 | 22-41 |
| Class Certification Order, Pierce County Superior Court, No. 99 2 07850 6, Filed September 13, 2002 | 42-56 |

70043586.1 0045556-00018

FILED
COURT OF APPEALS
DIVISION II

TO MAR 16 AM 11: 51

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID MOELLER, on behalf of himself and all others similarly situated, | No. 30880-1-II |
| Appellant and Cross Respondent, | |
| v. | |
| FARMERS INSURANCE COMPANY OF WASHINGTON and FARMERS INSURANCE EXCHANGE, | PUBLISHED OPINION |
| Respondents and Cross Appellants. | |

HOUGHTON, P.J. — David Moeller insured his automobile through Farmers Insurance Company. After the vehicle sustained damage in a collision, Farmers paid the full cost of repairs, less a deductible. Moeller claimed that the policy covered loss for the diminished value of his vehicle, but Farmers disagreed.

Moeller filed a class action lawsuit, alleging breach of contract, insurance bad faith, and violations of the Washington Administrative Code and Consumer Protection Act (CPA).[1] The trial court certified a class under CR 23(b)(3). It then granted Farmers' motion for summary judgment, finding that the policy did not cover diminished value, and dismissed the CPA claims.

---

[1] Chapter 19.86 RCW.

APP. 1

No. 30880-1-II

Moeller appeals the order granting summary judgment.  Farmers cross-appeals the class action certification.  We affirm in part, reverse in part, and remand for further proceedings.

FACTS

Moeller owned a 1996 Honda Civic CRX.  Farmers insured the vehicle, covering loss from collision and comprehensive damage.  After his vehicle sustained accident damage, Moeller notified Farmers.  An adjuster inspected and elected to repair the vehicle.  Farmers did not compensate Moeller for the vehicle's diminished value, that is damage that cannot be repaired such as weakened metal.

Moeller filed a third amended class action complaint against Farmers and Farmers Insurance Exchange (collectively Farmers) on behalf of himself and all others similarly situated (collectively Moeller).  In his complaint, Moeller alleged (1) breach of contract, (2) insurance bad faith, (3) failure to disclose information/CPA violation, and (4) failure to make prompt payment of claim.

At the crux of Moeller's complaint was Farmers' failure to restore his vehicle to its "pre-loss condition through payment of the difference in the value between the vehicle's pre-loss value and its value after it was damaged, properly repaired and returned."  Clerk's Papers (CP) at 435.

After four days of oral argument, the trial court certified a class under CR 23(b)(3).  We denied Farmers' motion for discretionary review of that order.

2

APP. 2

No. 30880-1-II

Farmers moved for summary judgment, claiming (1) the policy did not cover diminished value and (2) its denial of the diminished value claim was reasonable as a matter of law, thus barring Moeller's bad faith and CPA claims.[2]  The trial court granted the motion.

Moeller appeals and Farmers cross-appeals.

## ANALYSIS

### POLICY LANGUAGE

The relevant portions of the policy provide:

**DEFINITIONS**

. . . .

**Accident** or **occurrence** means a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **Insured person.**

. . . .

**Damages** are the cost of compensating those who suffer **bodily injury** or **property damage** from an **accident.**

. . . .

**Property damage** means physical injury to or destruction of tangible property, including loss of its use.

. . . .

**PART IV - DAMAGE TO YOUR CAR**

. . . .

**Coverage G - Collision**
We will pay for loss to your **Insured car** caused by collision less any applicable deductibles.

. . . .

**Additional Definitions Used in This Part Only**

. . . .

2.  **Loss** means direct and accidental loss of or damage to your **Insured car,** including its equipment.

. . . .

**Limits of Liability**
Our limits of liability for **loss** shall not exceed:
1.  The amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality, or with new property less an adjustment for physical deterioration and/or depreciation.

---

[2] For our purposes, Moeller's bad faith and failure to make prompt payment claims fold into the CPA argument.

3

APP. 3

No. 30880-1-II

. . . .
**Payment of Loss**
We may pay the loss in money or repair or replace damaged or stolen property.

CP at 12, 19-20.

STANDARD OF REVIEW

We review orders granting summary judgment de novo, engaging in the same inquiry as

the trial court. *Qwest Corp. v. City of Bellevue*, 161 Wn.2d 353, 358, 166 P.3d 667 (2007). On

review of any pleadings, depositions, answers to interrogatories, admissions, and affidavits on

file, a court may grant summary judgment if there are no genuine issues as to any material fact,

thus entitling the moving party to judgment as a matter of law. *Vallandigham v. Clover Park*

*Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005); CR 56(c).[3] When reasonable

persons could reach but one conclusion, summary judgment may be granted. *Hansen v. Friend*,

118 Wn.2d 476, 485, 824 P.2d 483 (1992).

We interpret an insurance policy using contract analysis as a matter of law. *Quadrant*

*Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). We review de novo a

summary judgment ruling on contract interpretation. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d

420, 423-24, 932 P.2d 1244 (1997).

When interpreting a policy's terms, we do not analyze words and phrases in isolation.

*Peasley*, 131 Wn.2d at 424. Rather, we read the policy in its entirety, giving effect to each

provision. *Peasley*, 131 Wn.2d at 424.

---

[3] CR 56(c) provides, in relevant part: "The judgment sought shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law."

4

APP. 4

No. 30880-1-II

An insurance policy must be interpreted in the manner in which the average insured would understand it. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000). We give terms not defined in the policy their " 'plain, ordinary, and popular' " meaning. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998) (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)). We may ascertain this by referring to standard English dictionaries. *Matthews v. Penn-America Ins. Co.*, 106 Wn. App. 745, 765, 25 P.3d 451 (2001).

When faced with clear and unambiguous language, we enforce the policy as written. *Peasley*, 131 Wn.2d at 424. An ambiguous clause is one susceptible to two different, reasonable interpretations. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992). Extrinsic evidence is admissible to assist the court in ascertaining the parties' intent and in interpreting the contract. *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569, 919 P.2d 594 (1996). After examining the available extrinsic evidence, we resolve any remaining ambiguity against the insurer and in favor of the insured. *Quadrant Corp.*, 154 Wn.2d at 172.

Our analysis differs, depending on whether an inclusionary or exclusionary clause is at issue. *See Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wn. App. 597, 602-03, 17 P.3d 626 (2000). We liberally construe inclusionary clauses, providing coverage whenever possible. *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 515-16, 940 P.2d 252 (1997). In contrast, we strictly construe exclusionary clauses against the drafter. *Quadrant Corp.*, 154 Wn.2d at 172.

5

APP. 5

No. 30880-1-II

## BREACH OF CONTRACT

### COVERAGE CLAUSE[4]

First, Moeller contends that his policy covers diminished value.[5] Although Moeller does not seek stigma damages, we begin our analysis by explaining the differences between diminished value and stigma damages. A vehicle suffers diminished value when it sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its pre-loss condition. The remaining, irreparable physical damage, such as, for example, weakened metal which cannot be repaired and which results in diminished value. In contrast, stigma damages occur after the vehicle has been fully restored to its pre-loss condition, but it carries an intangible taint due to its having been involved in an accident.

The coverage clause states that Farmers "will pay for loss to your **Insured car** caused by collision less any applicable deductibles."[6] CP at 19. The definitions state that "loss" is the "direct and accidental loss of or damage to your **Insured car**, including its equipment." CP at 19. Although the policy does not define "accidental," it provides that "accident" means "a sudden event . . . resulting in . . . **property damage** neither expected nor intended by the **Insured person**." CP at 12. Moreover, the policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use." CP at 12.

---

[4] The question presented is not whether *any* insured may recover for diminished value in Washington. *But see* Respondents/Cross-Appellants' Br. at 6 ("the question of a first-party insured's contractual entitlement to payment for a vehicle's diminished value is one of first impression in this state"). Rather, the issue is whether Moeller's insurance policy covers diminished value. This distinction is important.

[5] Farmers does not explicitly address coverage but, rather, it argues that the limits of liability clause precludes recovery for diminished value. *See* Respondent/Cross-Appellants' Br. at 10.

[6] The parties do not dispute that this incident involved an accidental collision with Moeller's insured vehicle.

6

APP. 6

No. 30880-1-II

But the policy does not define "direct" and "damage."[7] Accordingly, we examine a standard English dictionary to determine their plain and ordinary meanings. *Matthews*, 106 Wn. App. at 765.

"Direct" means "without any intervening agency or step: without any intruding or diverting factor." WEBSTER'S THIRD NEW INT'L DICTIONARY 640 (1976). Commentators generally agree with this definition. As noted in COUCH ON INSURANCE, where an insurance policy covers direct and accidental loss to the insured vehicle, the term "direct" "refers to [a] causal relationship, and is to be interpreted as limited to the harm resulting from an immediate or proximate cause as distinguished from a remote cause." 11 Lee R. Russ, COUCH ON INSURANCE, § 156:21 (3d ed. 1998) (Supp. 2009) (footnotes omitted). In addition, "damage" is defined as "loss due to injury: injury or harm to person, property, or reputation." WEBSTER'S, *supra*, at 571.

Moeller's collision damages have been repaired and Farmers paid for those repairs. But there remains damage that cannot be repaired, e.g., weakened metal. Farmers has not paid for this diminished value loss.

Here, the policy covers diminished value. "[D]irect" losses include those proximately caused by the initial harm. CP at 19. A collision begins a chain of events that sometimes results in a tangible, physical injury that cannot be fully repaired. Absent an intervening cause, diminished value is a loss proximately caused by the collision and thus is covered. As Moeller argues,

---

[7] The policy defines the term "damages" as "the cost of compensating those who suffer **bodily injury or property damage from an accident.**" CP at 12. For purposes of this contract policy, the terms "damages" and "damage" apparently have different meanings.

7

APP. 7

No. 30880-1-II

"[B]ecause it is indisputable that there was physical injury to [his] vehicle[], any and all damages

flowing therefrom, and not expressly excluded by the policy, are clearly covered." Appellant's

Br. at 22.

Because the policy covers diminished value, we examine whether Farmers limited its

liability elsewhere in the policy.[8]

LIMITS OF LIABILITY CLAUSE

Moeller next contends that the limits of liability clause[9] does not preclude recovery for

diminished value.[10]  We agree.

---

[8] Washington courts have not analyzed similar policy language to determine whether diminished value is a covered loss.  But other jurisdictions have addressed this issue.  Most courts have determined that diminished value is a covered loss under a "direct and accidental loss" coverage clause.  *See, e.g., Campbell v. Markel Am. Ins. Co.*, 822 So. 2d 617, 623 (La. Ct. App. 2001) (after noting that the insurer did not dispute that diminished value was a covered loss, the court agreed that the phrase "direct and accidental loss" was broad enough to cover diminished value).

[9] Although the parties briefly address the exclusions clause, neither focuses on this argument.  Because diminished value is not specifically named in the exclusions clause and we give a narrow reading to such clauses, the question is not whether diminished value is excluded under the contract.  Rather, our inquiry is whether the limits of liability clause prohibits recovery of diminished value.

[10] Both parties rely extensively on case law from other jurisdictions, some of which allow recovery for diminished value, *see, e.g., Hyden v. Farmers Ins. Exc.*, 20 P.3d 1222 (Colo. Ct. App. 2000); *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001); and others that deny such recovery, *see e.g., Ray v. Farmers Ins. Exch.*, 200 Cal. App. 3d 1411, 246 Cal. Rptr. 593 (1988); *Sims v. Allstate*, 365 Ill. App. 3d 997, 851 N.E.2d 701 (2006); *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243 (Ind. 2005); *Davis v. Farmers Ins. Co.*, 140 N.M. 249, 142 P.3d 17 (2006); *Am. Mfrgs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex. 2003).

In a majority of these cases, the policy expressly limits liability to the "lesser" of the vehicle's "actual cash value" or the cost of repair or replacement.  *See e.g. Schaefer*, 124 S.W.3d at 156.  Most cases involving this "lesser" and "actual cash value" language have declined recovery for diminished value because the insured was not entitled to both repairs and monetary compensation.  *See Schaefer*, 124 S.W.3d at 159.  Instead, the insurer could choose the "lesser" of these options.  There is no such language here.  Because of the different policy language, these cases are of limited value in our analysis.

In other jurisdictions, the courts found no ambiguity, thus distinguishing them from the situation here.  *Sims*, 851 N.E.2d at 707; *Allgood*, 836 N.E.2d 248; *Davis*, 142 P.3d at 24.

8

APP. 8

No. 30880-1-II

Here, the limits of liability clause provides that Farmers' liability for loss would not exceed "[t]he amount which it would cost to repair or replace damaged . . . property with other of like kind and quality, or with new property less an adjustment for physical deterioration and/or depreciation." CP at 20. When read alone, the terms "repair" and "replace" are unambiguous. But "repair" and "replace" cannot be read in isolation. *See Peasley*, 131 Wn.2d at 424 (noting that words and phrases cannot be interpreted in isolation). Instead, we must examine whether Farmers' obligation to "repair or replace damaged . . . property with other of like kind and quality" is ambiguous. CP at 20.

The policy does not define the terms "like," "kind," and "quality" and, therefore, we turn again to a standard English dictionary. *Matthews*, 106 Wn. App. at 765. "Like" is defined as "the same as or similar to." WEBSTER'S, *supra*, at 1310. Webster's provides that "kind" refers to "fundamental nature." WEBSTER'S, *supra*, at 1243. And "quality" is a "degree of excellence: grade, caliber." WEBSTER'S, *supra*, at 1858.

Moeller posits that the clause "like kind and quality" means a restoration of *appearance*, *function*, and *value*. He argues that the amount of his premiums was based, in part, on the pre-loss value of the vehicle. When the vehicle returned from the auto shop, the average insured could reasonably expect it to be similar in nature, caliber, and value. Otherwise stated, after repair of replacement with like kind and quality, the vehicle's capacity and value post-loss should be similar to its capacity and value pre-loss. This is a reasonable interpretation.[11]

Farmers argues that the "like kind and quality" could reasonably be an obligation to restore the vehicle to a similar appearance and function. As it explains, "[j]ust as a plate that is

9

APP. 9

No. 30880-1-II

broken in two can be repaired by gluing the parts together and making the plate usable again, a damaged car be repaired by pounding out dents or replacing damaged parts so that the vehicle can be driven again." Respondent/Cross-Appellant's Br. at 13. Farmers asserts that a reasonable interpretation of this clause suggests that the vehicle need only be "restored to good condition with parts and workmanship of the same essential nature that existed on the vehicle prior to the accident." Respondent/Cross-Appellant's Br. at 18-19.

Farmers' argument about the reasonableness of its interpretation does not persuade us. Even under its interpretation, the vehicle could not be restored to its pre-loss status because the nature of metal and stressed, but working parts, cannot be repaired.

The limits of liability clause and does not exclude recovery here. We reverse the summary judgment order and remand.

### CONSUMER PROTECTION ACT

Next, Moeller contends that Farmers' actions constituted per se violations of the Washington Administrative Code and, thus, per se violations of the CPA. Here, the trial court determined that Moeller premised his CPA claim on a successful breach of contract claim. Because we reverse the trial court's summary judgment on the contract claim, we remand for further proceedings on Moeller's CPA claim.

### CROSS APPEAL ON CLASS CERTIFICATION

In its cross appeal, Farmers argues that the trial court abused its discretion when it certified a class under CR 23(b)(3). We disagree.

---

[11] In a strikingly similar case, *Gonzales v. Farmers Ins. Co.*, 345 Or. 382, 196 P.3d 1 (2008), the Oregon Supreme Court found coverage. In doing so, it relied on established Oregon precedent. *Gonzales*, 196 P.3d at 7-8.

10

APP. 10

No. 30880-1-II

When a party seeks class certification, it must satisfy the requirements of CR 23. Under

CR 23(a), numerosity, commonality, typicality, and adequacy of representation comprise the

four prerequisites to certification.[12] Farmers does not challenge these prerequisites.

In addition to the demands of CR 23(a), a party must also satisfy one of the three

requirements of CR 23(b). Here, the trial court certified a class under CR 23(b)(3), which

provides for certification if

> [t]he court finds that the questions of law or fact common to the members
> of the class predominate over any questions affecting only individual members,
> and that a class action is superior to other available methods for the fair and
> efficient adjudication of the controversy. The matters pertinent to the findings
> include:  (A) the interest of members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against members
> of the class; (C) the desirability or undesirability of concentrating the litigation of
> the claims in the particular forum; (D) the difficulties likely to be encountered in
> the management of a class action.

We review the trial court's decision for a manifest abuse of discretion. *Nelson v.*

*Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 188-89, 157 P.3d 847 (2007). A trial court abuses its

discretion when it bases its decision on untenable or unreasonable grounds. *Chuong Van Pham*

*v. City of Seattle*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). Generally, we uphold the

certification decision if it has tenable, reasonable support and if the record indicates that the trial

court considered the CR 23 criteria. *Nelson*, 160 Wn.2d at 188-89.

---

[12] CR 23(a) provides:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all only if (1) the class is so numerous that joinder of all
> members is impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class, and (4) the representative parties will fairly and
> adequately protect the interests of the class.

11

No. 30880-1-II

Although we liberally construe CR 23 in favor of certification, class actions must strictly conform to the rule's requirements. *Weston v. Emerald City Pizza LLC*, 137 Wn. App. 164, 168, 151 P.3d 1090 (2007). When determining whether to certify a class, the trial court must engage in a rigorous analysis to ensure that the prerequisites of CR 23 have been established. *Weston*, 137 Wn. App. at 168.

Courts afford CR 23 liberal interpretation because it "avoids multiplicity of litigation, 'saves members of the class the cost and trouble of filing individual suits[,] and . . . also frees the defendant from the harassment of identical future litigation.' " *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 318, 54 P.3d 665 (2002) (quoting *Brown v. Brown*, 6 Wn. App. 249, 256-57, 492 P.2d 581 (1971)). " '[A] primary function of the class suit is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group.' " *Behr*, 113 Wn. App. at 318-19 (quoting *Brown*, 6 Wn. App. at 253). In close cases, then, we resolve doubts in favor of allowing or maintaining the class. *Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wn. App. 245, 250, 63 P.3d 198 (2003).

Under CR 23(b)(3), the trial court must determine that common issues of law or fact predominate over questions affecting individual members and that a class action is the superior method of adjudication. *Sitton*, 116 Wn. App. at 253. In this analysis, we engage in a " 'pragmatic' inquiry into whether there is a 'common nucleus of operative facts' to each class member's claim." *Behr*, 113 Wn. App. at 323 (quoting *Clark v. Bonded Adjustment Co.*, 204 F.R.D. 662, 666 (E.D. Wash. 2002)).

12

APP. 12

No. 30880-1-II

Questions of judicial economy remain central. *Sitton*, 116 Wn. App. at 255. That class members may have to make individual showings of damages does not preclude class certification. *Behr*, 113 Wn. App. at 323.

Here, the trial court certified a class under CR 23(b)(3), defining that class as follows,

> [A]ll persons who: (1) were insured pursuant to a casualty automobile insurance policy issued by Farmers for the state of Washington; (2) received payment under their collision or comprehensive coverages for damage to an insured automobile from May 30, 1993 to the date of class certification in this action; and (3) did not receive payment for inherent diminished value where:  (a) the repair estimate including supplements totaled at least $1,000, (b) the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident, and (c) the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.
> Excluded from the class are Defendants; their officers and directors; this Court and any member of the Court's immediate family; and those individuals whose vehicles were leased or total losses.

VI CP at 1582.

In its analysis, the trial court identified several common issues of law and fact: (1) where the relevant policy language was materially identical, whether the class members' insurance policies covered diminished value; (2) whether "each class member's vehicle suffered a reduction in value as a result of the vehicle having been in an accident without consideration of repair related diminished value"; (3) whether each class member's vehicle could be returned to preaccident condition; and (4) whether Farmers engaged in "a common and systematic course of conduct designed to process physical damage claims so as to avoid acknowledging or paying diminished value claims in first party insurance contracts." VI CP at 1574.

When determining whether these common issues of fact and law predominated over individual concerns, the trial court analyzed the four factors set forth in CR 23(b)(3)(A)-(D). It

13

APP. 13

No. 30880-1-II

identified CR 23(b)(3)(D), the management factor, as a heavily disputed issue and the most significant factor in its examination.

In conclusion, the trial court determined that "the only conceivable method to adjudicate or resolve this case is through a class action, as the de minimus size of individual claims would leave policyholders without practical recourse, absent class treatment, to address the contract construction (legal) and damages (fact) issues." VI CP at 1579.

Tenable reasons support the trial court's determination that common issues predominated over individual issues. The trial court identified the common nucleus of operative facts, namely, that class members shared the same insurance policy, potentially suffered damage, and were allegedly harmed by Farmers' course of conduct.[13] Because each claim has a de minimus value, individuals are unlikely to pursue separate actions. Even though individual issues may pose management problems for the trial court, this does not preclude certification.[14]

---

[13] Farmers cites *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d, 100, 835 N.Ed.2d 801, 296 Ill. Dec. 448 (2005), in its cross appeal. In *Avery*, the Illinois Supreme Court reversed in part on class certification. We do not find the *Avery* analysis persuasive, as that matter involved a class with varying insurance contracts in 48 states that could not be given uniform interpretation.

[14] In addition, Farmers argues "that the class certification order was based on *predictions* by Moeller and his experts that proof of a particular type would permit Moeller to establish liability to all class members without any individualized proof." Respondent/Cross-Appellants' Reply Br. at 20. Thus, it claims that it cannot obtain a binding adjudication against all members of the class. Respondent/Cross-Appellants' Br. at 46. But the trial court determined that Moeller offered an acceptable plan of proof:
> Plaintiffs have also presented the Court with a preliminary plan of how to proceed to gather the data on vehicles and how to manage this litigation as a class action. Their plan evidences a keen understanding of the steps necessary to process claims, identify class members, analyze the data on the existence or amount of diminished value, make adjustments to the classwide damages for any defenses raised (and substantiated by Defendants), and then provide for notification and allocation of any damages awarded to the class after trial. Plaintiff's counsel have exhibited an understanding of the sources of data, cross checks on that data, supplemental sources of data, and the use of computers to index and manipulate that data. This will expedite the retrieval, sorting, and analysis of pertinent data for both the Plaintiffs and Defendants.

14

**APP. 14**

No. 30880-1-II

Nor does it, as Farmers contends, result in an improper shift in the burden of proof.

Given the common, overriding issues of law and fact, judicial economy warranted certification.[15]

As such, Farmers' argument fails.

We affirm in part, reverse in part, and remand for further proceedings.

*Houghton, P.J.*

Houghton, P.J.

We concur:

*Bridgewater, J.*

Bridgewater, J.

*Armstrong, J.*

Armstrong, J.

---

CP at 1579-80. We see nothing in the record indicating that the trial court abused its discretion on this point.

[15] Farmers also argues that implementation of the certification order results in an impermissible bifurcation: "the supposed classwide finding of liability would have to be reexamined in each claim proceeding, to determine whether that particular class member suffered any injury." Respondent/Cross-Appellants' Br. at 44-45. The trial court rejected Farmers' injury argument:

> After close consideration and scrutiny of the desirability and claimed need to assert individual defenses in each particular case, it is the Court's finding, based on the evidence and argument of counsel, that in the course of identifying the particular class members and in evaluating their particular cases, that the Defendants in this case will be able to present any relevant information to the Court and jury in a classwide trial and that classwide treatment is therefore preferable.

CP at 1578. The trial court acted within its discretion when it determined that classwide treatment both protected Farmers' interests and served interests of judicial economy.

15

APP. 15



17636 10/18/2003 00116

FILED
DEPT. 19
IN OPEN COURT

Sept 3,
OCT 0 1 2003

Pierce County Clerk
By_____ DEPUTY

1

2

3

4

5

6            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
             IN AND FOR PIERCE COUNTY
7

8   DAVID MOELLER,                      No. 99-2-078560-6

9           Plaintiff,                  Court of Appeals No. 30880-1-II

        v.                              NOTICE OF CROSS APPEAL TO THE COURT
10                                      OF APPEALS
    FARMERS INSURANCE COMPANY
11  OF WASHINGTON and FARMERS           Assigned Judge:  Honorable Marywave Van Deren
    INSURANCE EXCHANGE,                                  Remann Hall
12
            Defendants.
13

14       The Defendants, Farmers Insurance Company of Washington and Farmers Insurance

15  Exchange, seek review by Division II of the Court of Appeals of the Order Granting Class

16  Certification as entered by the Hon. Marywave Van Deren on September 13, 2002, and as filed

17  with the Pierce County Clerk.

18       A copy of the Order is attached to this Notice.

19       Dated this 29th day of September, 2003.

20                                      GORDON & POLSCER, L.L.C.

21
                                        By_____
22                                        Joseph D. Hampton, WSBA No. 15297
                                          Scott Jonsson, WSBA No. 13820
23                                        Russell W. Pike, WSBA No. 17715
                                          Attorneys for Defendants Farmers Insurance
24                                        Exchange and Farmers Insurance Company
                                          of Washington
25

26
    NOTICE OF CROSS APPEAL - 1                        GORDON & POLSCER, L.L.C.
    \\gordon\PolN\Active Cases\000643\Appeals\CrossAppeal.Notice.doc   1000 Second Avenue, Suite 1500
                                                                       Seattle, WA 98104
                                    ORIGINAL                           (206) 223-4226

                                        1584

                                       APP. 16

17636  10/10/2003  60:17

| | |
|---|---|
| 1 | **PLAINTIFF'S COUNSEL:** |
| 2 | |
| 3 | Stephen M. Hansen<br>LOWENBERG, LOPEZ & HANSEN |
| 4 | 950 Pacific Avenue<br>Suite 450, Rust Building |
| 5 | Tacoma, Washington 98402-4441<br>Telephone: (253) 383-1964 |
| 6 | Facsimile: (253) 383-1808 |
| 7 | Debra Hayes |
| 8 | REICH & BINSTOCK<br>4265 San Felipe, Suite 1000<br>Houston, TX 77027 |
| 9 | Telephone: (713) 622-7271<br>Facsimile: (713) 623-8724 |
| 10 | |
| 11 | Scott P. Nealey<br>LIEFF, CABRASER, HEIMANN |
| 12 | & BERNSTEIN, LLP<br>275 Battery Street, 30th Floor |
| 13 | San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000 |
| 14 | Facsimile: (415) 956-1008 |
| 15 | Terrell W. Oxford |
| 16 | SUSMAN & GODFREY, LLP<br>901 Main Street, Suite 4100 |
| 17 | Dallas, TX 75202-3775<br>Telephone: (214) 754-1900 |
| 18 | Facsimile: (214) 754-1933 |

**DEFENDANTS' COUNSEL:**

Scott A. Jonsson
Russell W. Pike
GORDON & POLSCER, L.L.C.
121 SW Morison Street, Suite 1200
Portland, OR 97204
Telephone: (503) 242-2922
Facsimile: (503) 242-1264

Joseph D. Hampton
GORDON & POLSCER, L.L.C.
1000 Second Avenue, Suite 1500
Seattle, WA 98104
Telephone: (206) 223-4226
Facsimile: (206) 223-5459

NOTICE OF CROSS APPEAL - 2
VgrbeatsltActive Cases\00643\Appeal\CrossAppeal.Notice.doc

GORDON & POLSCER, L.L.C.
1000 Second Avenue, Suite 1500
Seattle, WA 98104
(206) 223-4226

1585

APP. 17

17636 10/10/2003 00110

## CERTIFICATE OF SERVICE

I, Jennifer L. Sims, declare as follows:

1)   I am a citizen of the United States and a resident of the State of Washington.  I am over the age of 18 years and not a party to the within entitled cause.  I am employed by the law firm of Gordon & Polscer, L.L.C., whose address is 1000 Second Avenue, Suite 1500, Seattle, Washington 98104.

2)   By the end of the business day on September 30, 2003, I caused to be served upon counsel of record at the addresses and in the manner described below, the following documents:

   • **Notice of Cross Appeal to the Court of Appeals; and**

   • **Certificate of Service.**

| | |
|---|---|
| Stephen Hansen<br>Lowenberg, Lopez & Hansen, P.S.<br>Suite 450, Rust Building<br>950 Pacific Avenue<br>Tacoma, WA 98402-4441 | ☐ U.S. Mail<br>☑ Hand Delivery<br>☑ Telefax<br>☐ UPS |
| Mary N. Stimnel<br>Cohen, Milstein, Hausfeld & Toll, PLLC<br>1100 New York Avenue NW<br>West Tower, Suite 500<br>Washington, DC  20005-3964 | ☑ U.S. Mail<br>☐ Hand Delivery<br>☐ Telefax<br>☐ UPS |
| Scott P. Nealey, Esq.<br>Leiff, Cabraser, Heimann & Bernstein, LLP<br>Embarcadero Center West<br>275 Battery Street; 30th Floor<br>San Francisco, CA  94111-3339 | ☑ U.S. Mail<br>☐ Hand Delivery<br>☐ Telefax<br>☐ UPS |
| Deborah Brewer-Hayes<br>Reich & Binstock<br>4265 San Felipe, #1000<br>Houston, TX  77027 | ☑ U.S. Mail<br>☐ Hand Delivery<br>☐ Telefax<br>☐ UPS |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

NOTICE OF CROSS APPEAL - 3
W:\jsms\isActive Case\00043\Appeal\CrossAppeal.Ntuice.doc

GORDON & POLSCER, L.L.C.
1000 Second Avenue, Suite 1500
Seattle, WA 98104
(206) 223-4226

1586

APP. 18

17696 18/18/2883 88119



DATED this 30th day of September, 2003.

_____
Jennifer L. Sima

1
2
3
4
5
6.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

NOTICE OF CROSS APPEAL - 4
\\gproseh4\Active Case\00843\Appeal\Cross Appeal Notice.doc

GORDON & POLSCER, L.L.C.
1000 Second Avenue, Suite 1500
Seattle, WA 98104
(206) 223-4226

1587

APP. 19

16766 9/19/2003 00001



FILED
IN COUNTY CLERK'S OFFICE

A.M. SEP 1 8 2003 P.M.

PIERCE COUNTY, WASHINGTON
KEVIN STOCK, County Clerk
BY _____ DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

| DAVID MOELLER, | |
|---|---|
| Plaintiff, | NO.  99-2-07850-6 |
| vs. | NOTICE OF APPEAL TO THE COURT OF APPEALS |
| FARMERS INSURANCE COMPANY OF WASHINGTON and FARMERS INSURANCE EXCHANGE, | |
| Defendants. | |

The Plaintiff, DAVID MOELLER, seeks review by Division II of the Court of Appeals of the Order Granting Summary Judgment of Dismissal and Judgment for Defendants as entered by the Honorable MARYWAVE VAN DEREN on September 9, 2003, and as filed with the Pierce County Clerk.  Copies of these decisions are attached.

DATED this 17th day of September, 2003.

LOWENBERG, LOPEZ & HANSEN, P.S.

STEPHEN M. HANSEN, WSBA 15642
Of Attorneys for Plaintiff
(Additional Counsel for Plaintiff listed below)

NOTICE OF APPEAL - 1

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW
SUITE 450, RUST BUILDING
950 PACIFIC AVENUE
TACOMA, WASHINGTON 98402-4441
(253) 383-1894 / (253) 636-4003
(253) 383-1806 fax

ORIGINAL

APP. 20

16766 9/19/2003 00002

1   **DEFENDANTS' ATTORNEY:**

2   GORDON & POLSCER, L.L.P.
    Scott A. Jonsson, WSBA#: 13820
3   121 SW Morrison St Ste 1200
    Portland, OR 97204
4

5

6                           **PLAINTIFF'S COUNSEL:**

7                           Debra Hayes
8                           REICH & BINSTOCK
    4265 San Felipe, Suite 1000
9                           Houston, TX 77027
    Telephone: (713) 622-7271
10                        Facsimile: (713) 623-8724

11                        Elizabeth J. Cabraser
    Morris A. Ratner
12                      Scott P. Nealey
13                    LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
14                  275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
15                  Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
16

17                  Terrell W. Oxford
    SUSMAN GODFREY, LLP
18                901 Main Street, Suite 4100
    Dallas, TX 75202-3775
19                Telephone: (214) 754-1900
    Facsimile: (214) 754-1933
20

21

22

23

24

25

26

27

28   NOTICE OF APPEAL - 2            LOWENBERG, LOPEZ & HANSEN, P.S.
                                     ATTORNEYS AT LAW
                              SUITE 450, RUST BUILDING
                              950 PACIFIC AVENUE
                         TACOMA, WASHINGTON 98402-4441
                        (253) 383-1964 / (253) 838-4993
                           (253) 383-1603 fax

APP. 21

16474 9/12/2003 00008



FILED
DEPT. 19
IN OPEN COURT

SEP 09 2003

Pierce County Clerk
By_____
DEPUTY

99-2-07850-8  18853508  ORGSJ  09-12-03

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR PIERCE COUNTY

| | |
|---|---|
| DAVID MOELLER, | No. 99 2 07850 6 |
| Plaintiff, | ORDER GRANTING SUMMARY JUDGMENT OF DISMISSAL |
| v. | Motion for Summary Judgment |
| FARMERS INSURANCE COMPANY OF WASHINGTON and FARMERS INSURANCE EXCHANGE, | Date of Hearing: July 29, 2003 Assigned Judge: Honorable Marywave Van Deren Department 19 |
| Defendants. | |

## I. HEARING

**1.1.    Date:** July 29, 2003

**1.2.    Appearances:** Plaintiffs appeared by and through their attorneys of record Scott P. Nealey, Esq. of Leiff, Cabraser, Heimann & Bernstein, LLP, and Stephen Hansen of Lowenberg, Lopez & Hansen, and defendants appeared by and through their attorneys of record, Scott A. Jonsson and Joseph D. Hampton of Gordon & Polscer, L.L.P.

**1.3.    Notice:** Adequate notice of hearing was provided to all parties.

**1.4.    Purpose:** The purpose of the hearing was to entertain defendants' Motion for Summary Judgment.

**1.5.    Record:** The parties submitted the following pleadings and papers in support and opposition to the Motion:

ORDER GRANTING SUMMARY
JUDGMENT OF DISMISSAL - 1
\\agnesia\RActive Cases\00643\Pleadings\SJMotion\order.doc

GORDON & POLSCER, L.L.P.
1000 Second Avenue, Suite 1500
Seattle, WA 98104
(206) 223-4226

ORIGINAL

APP. 22

16474 5/12/2003 0000!

**From Defendants:**

(1)   Defendants' Motion for Summary Judgment;

(2)   Declaration of Joseph D. Hampton in Support of Defendants' Motion for Summary Judgment, with Exhibits Thereto;

(3)   Appendix of Trial Court and Out-of-State Cases to Defendants' Motion for Summary Judgment; and

(4)   Defendants' Reply Memorandum in Support of Motion for Summary Judgment.

**From Plaintiffs:**

(1)   Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment;

(2)   Declaration of Stephen M. Hansen in Opposition to Defendants' Motion for Summary Judgment and Exhibits thereto;

(3)   Declaration of Public Records Officer.

## II.  RULING

The court reviewed all written submissions of the parties, including documentary evidence, deposition testimony, declarations, memoranda and briefs of law, case law and other legal authorities provided by the parties. The court heard extensive oral argument from both sides. The court was fully apprised in the premises.

In open court on July 29, 2003, the Court delivered an oral ruling on Defendants' Motion for Summary Judgment. A true and correct copy of the transcript of the ruling is attached hereto as Exhibit A, and incorporated herein by reference.

## III.  ORDER

Pursuant to the foregoing Ruling, it is hereby ORDERED as follows:

3.1.   Defendants' Motion for Summary Judgment is hereby GRANTED.

**ORDER GRANTING SUMMARY**
**JUDGMENT OF DISMISSAL - 2**
Wgcm\wll\Active Cases\09943\Pleadings\SJ\Motion\order.doc

**GORDON & POLSCER, L.L.P.**
1000 Second Avenue, Suite 1500
Seattle, WA  98104
(206) 223-4226

APP. 23

16474 9/12/2003 00010

1      **3.2.**    All claims of any nature by David Moeller and any member of the class against

2  defendants are hereby DISMISSED with prejudice.

3      **3.3.**    Defendants are entitled to recover their statutory attorneys fees incurred in this

4  action.

5      **3.4.**    There is no just reason for delay, and entry of a final judgment in favor of

6  Defendants shall immediately follow.

7      DONE IN OPEN COURT this __9__ day of September, 2003.

8

9                                _Marywave Van Deren_

10                              Judge Marywave Van Deren

Presented by:

11                         FILED
                            DEPT. 19

GORDON & POLSCER, L.L.P.       IN OPEN COURT

12

13                              SEP 09 2003

By_____

14  Joseph D. Hampton, WSBA No. 15297   Pierce County Clerk
    Scott A. Jonsson, WSBA No. 13820    By_____

15    Kevin Kelly, *Pro Hac Vice*           DEPUTY

Attorneys for Defendants Farmers Insurance

16  Exchange and Farmers Insurance Company of
    Washington

17

18  Approved as to form; notice of
    presentation waived:

19

    LOWENBERG, LOPEZ & HANSEN

20

21

22  By:_____

     Stephen Hansen, WSBA No. 15647

23  Attorney for Plaintiffs

24

25

26

**ORDER GRANTING SUMMARY**
**JUDGMENT OF DISMISSAL - 3**
    Tapwesk\\Active Cases\\064\\CP\\Pleadings\\SJDatsder\\order.doc

                            GORDON & POLSCER, L.L.P.
                        1000 Second Avenue, Suite 1500
                         Seattle, WA  98104
                         (206) 223-4226

APP. 24

16474 9/12/2003 00011

```
 1

 2

 3

 4

 5

 6            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

 7                 IN AND FOR THE COUNTY OF PIERCE

 8     THE HONORABLE MARYWAVE VAN DEREN          DEPARTMENT 19

 9     ─────────────────────────────────────────────────────

10     DAVID MOELLER,                 )
                                      )
11              Plaintiff,            )
                                      )
12          vs.                       )   NO. 99-2-07850-6
                                      )
13     FARMERS INSURANCE COMPANY OF   )
       WASHINGTON and FARMERS         )
14     INSURANCE EXCHANGE,            )
                                      )
15              Defendants.           )
                                      )
16     ─────────────────────────────────────────────────────

                       EXCERPT OF
17            VERBATIM REPORT OF PROCEEDINGS
                     JUDGE'S RULING
18     ─────────────────────────────────────────────────────

19

20                  JULY 29, 2003              COPY

21
       APPEARANCES:  (See first page of text.)
22

23

24     DIANNE Y. WILSON, CCR-RPR    Reporter No. 82124
              Official Court Reporter   (253) 798-7736
25            930 Tacoma Avenue South, Department 19
                 Tacoma, Washington 98402
```

EXHIBIT A

16474 9/12/2003 00012
Moeller v. Farmers - Ruling - 7/29/03

1    APPEARANCES:

2

3         For the Plaintiffs:    SCOTT NEALEY
                                  STEPHEN HANSEN
4
          For the Defendants:    SCOTT JONSSON
5                                 JOSEPH HAMPTON

6

7                    ****** ******

8

9         BE IT REMEMBERED that on Tuesday, the 29th day of

10   JULY, 2003, at Pierce County Superior Court, Department 19,

11   5501 Sixth Avenue, Tacoma, Washington, before THE HONORABLE

12   MARYWAVE VAN DEREN and reported by Dianne Y. Wilson,

13   CCR-RPR, the following proceedings were had, to wit:

14

15                   ****** ******

16

17                    (The foregoing proceedings

18                     reported but not transcribed.)

19         THE COURT: Okay. Well, counsel, I spent

20   hours and hours, not nearly as many as you did, by any

21   stretch of the imagination, but I took at least one full

22   day off the bench and closeted myself to read everything

23   that you had provided in this case and to study this case,

24   because it's so crucially important to all of these

25   policyholders and to the defendants Farmers Insurance

                                                         2

                        APP. 26

16474 9/12/2003 00013.
Moeller v. Farmers - Ruling - 7/29/03

1    Company and Farmers Insurance Exchange and because
2    Washington doesn't have any guiding authority for us on the
3    primary issue.  And after doing that, I wrote down some of
4    my comments, which I have added to today during the
5    argument. And so I want to go through this fairly
6    methodically.
7            Farmers brings this matter before the Court on its
8    summary judgment on the issue of contract coverage for the
9    claims of class plaintiffs for diminished value of vehicles
10   repaired under the Third Edition of Farmers Insurance Group
11   of Companies E-Z Reader Car Policy for Washington.  Farmers
12   also brings a summary judgment motion on Consumer
13   Protection Act claims against it for violation of
14   applicable Washington Administrative Code provisions and
15   bad faith contrary to RCW 19.86.
16           Plaintiffs respond that the matter may not be
17   decided favorably for Farmers on summary judgment due to
18   the presence of issues of fact relating to whether
19   plaintiffs have suffered an actual loss in value from
20   unrepairable vehicles, that the Farmers policy does not
21   cover diminished value losses, or that the policy coverage
22   is ambiguous and therefore must be construed in favor of
23   the insureds, and, further, that the Consumer Protection
24   Act claim can also prevail absent a finding of no coverage
25   and it is a factual issue which must await trial.

3

APP. 27

16474.9/12/2003 00014
Moeller v. Farmers - Ruling - 7/29/03

1      Both sides of this dispute have ably and thoroughly

2   prepared the materials and the arguments submitted for the

3   Court's consideration.  The Court has set aside numerous

4   hours to read all the submissions of the parties, even

5   those which have been the subject of the defendant Farmers

6   motion to strike, since the motion to strike was not

7   received until the day before the argument was set to be

8   heard in June and the Court had already read the materials

9   from both plaintiffs and defendants.  The Court has also

10  made an attempt to read the copies of the cases which each

11  side cited as well as the entire insurance policy and the

12  reply memos each side submitted with their attachments.

13       It is through the materials and the arguments of

14  counsel that this Court was educated about the numerous

15  cases nationwide dealing with the issues presented to this

16  Court.  In the course of hearing the matter for

17  certification of the class, the Court realized that this

18  was not an isolated case, that attorneys from numerous

19  local, regional and far-flung firms were examining vehicle

20  insurance policies and the coverage they afford insureds.

21       But it was in the preparation for this hearing that

22  the Court confronted the large number of cases decided in

23  the trial courts of numerous states, which then moved to

24  the appellate courts in those states, resulting in a

25  plethora of published opinions on the meaning and

4

APP. 28

1  interpretation of the contracts insuring automobiles for

2  losses when claims for diminished value were made by

3  insureds.

4      What I draw from the materials and cases is that

5  there is definitely a split of opinion among different

6  states on the issues presented, as well as differences in

7  approach to the cases over time.  Washington provides no

8  appellate guidance for the trial courts on the issues

9  relating to the insurance policy.

10     Other courts have interpreted exactly the same

11  contract language relating to repair, like kind and

12  quality, the limits of liability clauses read in

13  conjunction with the coverage provisions, and payment of

14  loss provisions.  In some instances, there have been

15  variations in language of policies.  And one court in

16  addressing the lack of the language of like kind and

17  quality in two of the three cases consolidated for appeal

18  pointed out that the absence of the term from the Allstate

19  and State Farm policies was not dispositive of the issue

20  regarding whether the policies provided coverage for

21  diminution of value.  That is in O'Brien v. Progressive

22  Northern Insurance, 785 A.2d. 281, decided in 2001.

23     This Court finds that the better-reasoned cases

24  consistently apply the proper contract interpretation

25  standards in their analysis before reaching the issues

5

APP. 29

1  presented on a factual basis.  Those standards are

2  paramount in properly addressing the serious issues which

3  confronted the counsel and the Court in this case.

4       There are certain basic rules which the Court must

5  observe in the interpretation of an insurance contract when

6  it is disputed.  The Court is confined to the four corners

7  of the document unless it is persuaded that the words used

8  in the document itself are used ambiguously or that the

9  language of the policy is ambiguous, unless the extrinsic

10  evidence relates to the mutual intent of the parties.

11  Keytronic Corporation v. Aetna Fire Underwriters Insurance,

12  124 Wn.2d. 618, 1994.

13       Extrinsic evidence is not used to interpret a

14  standard and unambiguous form insurance policy when no

15  actual negotiations occur unless the extrinsic evidence

16  relates to the situation of the parties or the

17  circumstances under which the contract was executed.

18  Spratt v. Crusader Insurance Company, 109 Wn.App. 944,

19  2002.

20       The Court may not use extrinsic evidence in

21  deciding whether the contract is ambiguous when the

22  language is plain and clear on its face.  The Court must

23  first review the language of the contract to decide if the

24  language in controversy is reasonably or fairly susceptible

25  to two or more different interpretations.

6

APP. 30

1    The Court is to apply the ordinary person's reading
2  of contested language and shall not torture the language of
3  the policy to create an ambiguity where an ordinary reading
4  leaves no room for uncertainty.  Disagreement between the
5  parties on the meaning of the language does not of itself
6  create an ambiguity.  The existence of a split in the case
7  law reported from numerous jurisdictions does not render
8  the language in dispute ambiguous.
9      Extrinsic evidence admitted for the purpose of
10  determining the intent of the parties shall not vary the
11  terms of the agreement.  Extrinsic evidence cannot be
12  admitted to add to, modify, or contradict express written
13  terms of the agreement.
14      If the Court finds that the terms of the insurance
15  agreement are ambiguous, it shall be interpreted liberally
16  in favor of the insured and strictly against the insurer
17  who prepared the policy.  An ambiguity in coverage shall be
18  construed in favor of coverage for the insured.
19      One of the first issues raised by the defendants is
20  whether the evidence offered by plaintiffs on the
21  interpretation of the contract by insurance company
22  employees and others is admissible on the issue of the
23  meaning or ambiguity of terms of the agreement; that is,
24  does extrinsic evidence regarding the interpretation of the
25  contract to include diminished value add to, modify, or

7

APP. 31

1  contradict the writing which is the insurance contract

2  between the parties?

3       The term "diminished value" does not appear in this

4  insurance policy.  The only explicit reference to value of

5  the insured car appears in the Limit of Liability

6  Endorsement S7995, stating that increases in value of a

7  repaired vehicle may be the basis of a deduction from the

8  amount paid in covering a loss to the insured.

9       A reading of this term to require inclusion of its

10  opposite meaning -- that is, diminished value -- for the

11  purpose of increasing the payments by the insurance company

12  required under the limits of liability provision for

13  repaired vehicles would recklessly ignore the directions to

14  the trial courts.  It would not only be the addition of a

15  term but also of an obligation not mentioned elsewhere in

16  the policy.

17       In this instance, the Court will not use the

18  offered extrinsic evidence of opinions and interpretations

19  of the written policy which relate to unstated terms which

20  appear to add to, modify, or vary the written contract.

21       Turning to the contract as a whole, it's recognized

22  that courts and others may find that diminished value of a

23  repaired vehicle, upon proper proof, may be a direct and

24  accidental loss, thus covered by insurance unless the

25  definitions, coverage statements, limits of liability, and

8

APP. 32

16474 9/12/2008 80019

Moeller v. Farmers - Ruling - 7/29/03

1    payment of loss provisions exclude it from coverage in a

2    public policy.

3           This policy defines various terms. "Damages" is

4    defined on page 3 as the cost of compensation to those who

5    suffered property damage. "Property damage" is defined on

6    page 3 as physical injury to or destruction of tangible

7    property. "Insured car" is defined on page 3 as the

8    vehicle. "Loss" is defined in Part IV on page 10 as direct

9    damage to the insured car. "Limits of liability" is

10   defined on page 11 and on Endorsement S7995 as an amount

11   which, quote, "shall not exceed the amount which it would

12   cost to repair damaged property with other of like kind and

13   quality" when read with the pertinent definition.

14          The exclusion provisions relate to specific losses

15   which are not covered by the policy. As such, and read

16   with their ordinary meanings, they are not ambiguous. A

17   question has been raised about whether an additional

18   exclusion relating to diminished value should have been in

19   the policy to clarify included and excluded coverage. The

20   Court finds no ambiguity for the failure of an exclusion to

21   be listed in this instance.

22          Putting these policy provisions together to read

23   the policy as a whole, to determine what coverage is

24   available to the insured, a loss is the cost of

25   compensation to those who suffer physical injury to or

9

APP. 33

16474 9/12/2003 00020
Moeller v. Farmers - Ruling - 7/29/03

1   destruction of tangible property relating to the insured

2   car.  The limit of payment for this loss is the amount

3   which does not exceed the cost of repair to the vehicle to

4   like kind and quality.

5       Value of the vehicle prior to the accident which

6   resulted in the loss is not tangible property, nor is it a

7   physical injury to be compensated.

8       Numerous states have found the same interpretation

9   of this contract language to be persuasive and controlling,

10  thereby not ambiguous, and not construed to include the

11  preaccident value of the car as a compensable loss.

12      This Court finds that read as a whole this

13  insurance agreement cannot be said to include a payment for

14  diminished value upon repair, the only issue which is

15  presented here.  The definitions, the coverage portions,

16  the payment of loss provisions, the limits of liability, as

17  well as the appraisal rights granted to each party of the

18  contract to obtain an independent assessment of the loss

19  all combine to create a comprehensive scheme for asserting,

20  adjusting, and resolving coverage for various losses to

21  vehicles and the choice of which avenue to address losses:

22  repair, replace, or pay cash.

23      No one has argued or brought the Court's attention

24  to the independent assessment right contained in the

25  policy.  But such a right contained in the policy assures

10

APP. 34

1    that a covered insured may raise their own issue of value

2    of the vehicle if they wish to do so in having their loss

3    adjusted and resolved with the insurance company.

4        The choice of which avenue to pursue absent resort

5    to the appraisal rights granted to each party is left to

6    the insurance company.  To require that when anything other

7    than payment for new property, less applicable deductions,

8    is the chosen avenue to redress loss that there be cash

9    payments plus repair or replacement makes the choice of

10    means meaningless to the insurance company.  The provisions

11    of the insurance policy which provide for repair or

12    preplacement become superfluous.  The amount paid in each

13    instance becomes the same, despite the fact that repairs

14    can return the vehicle to utility comparable to that which

15    existed before the loss.

16        Courts are directed to interpret contracts so that

17    effect is given to each term, rather than to render some

18    terms useless.  Ascribing to the phrase "repair or replace

19    with like kind and quality," the obligation to compensate

20    the insured for things which may not be reasonably repaired

21    or replaced renders this phrase useless and as such is not

22    consistent with the rules of contract interpretation.

23        The Court is persuaded by the weight of authority

24    from other jurisdictions that "like kind and quality"

25    language is unambiguous and does not provide coverage for

11

APP. 35

16474 9/12/2003 00022
Moeller v. Farmers - Ruling - 7/29/03

1   diminished value, even in those cases where a loss of

2   market value may be demonstrated by persuasive evidence.

3       The plain and ordinary meaning is given to the

4   terms of the policy to establish the intent of the parties.

5   When a term is not defined within an insurance policy, the

6   Court may look at its ordinary dictionary meaning.

7   "Repair" means to restore to sound condition after injury,

8   to restore or replace in part or putting together what is

9   torn or broken, or to bring back to good and usable

10  condition, according to Webster's Third New International

11  Dictionary, originally 1923, revised in 1993, and the

12  Riverside Webster's II, Dictionary, page 580, Revised

13  Edition, 1996. There is no inherent concept of value in

14  the ordinary meaning of the word "repair."

15      Thus the insurance company's limit of liability is

16  capped at the limit of returning the damaged vehicle to

17  substantially the same physical, operating, and mechanical

18  condition that exists before the loss, and summary judgment

19  is granted to the defendants on this issue.

20      With regard to the Consumer Protection Act claim

21  under RCW 19.86, the Court finds that this determination is

22  a question of law. Further, if there is a debate over

23  coverage, there is no liability for an insurer under the

24  Consumer Protection Act if the insurer refused to pay over

25  that coverage disagreement.

12

APP. 36

1      Under Ellwein, Leingang, and Transcontinental, the

2 insured must show that the insurer acted in bad faith as a

3 matter of law, that there was no reasonable basis for the

4 insurer's actions in refusing to investigate or refusing

5 coverage.

6      An insurer must fully and fairly investigate a

7 claim under the policy. Here, the company had repaired the

8 vehicles. A claim for a nonspecified loss does not trigger

9 a duty to do more. The Court finds that the defendants

10 need not have investigated plaintiff's claim further due to

11 their determination that there was no coverage for the

12 additional diminished value claim.

13      With regard to the claims that defendants committed

14 violations of the Washington Administrative Code, Sections

15 284-30-330 and 350, for failure to disclose benefits of the

16 contract, concealed coverage, misrepresented facts or

17 policy provisions, refused to pay with reasonable

18 investigation, or compelled the insured to pursue

19 litigation to obtain the benefits of the policy, the Court

20 finds that there was not a duty imposed on the insurance

21 company to inform claimants that some insureds felt there

22 was greater coverage than that specified in the contract

23 and thus generate more claims work. Thus this claim fails

24 as well.

25      Pursuant to Coventry, the insured must allege and

13

1  ·prove actual damages caused by the insurer's refusal to

2  cover a claimed loss when the case proceeds after a

3  determination of no coverage.

4       There having been no evidence deduced at this stage

5  by the plaintiff regarding damages caused by the refusal to

6  cover diminished value, and attorneys' fees not being

7  allowed except by statute or contract, the Court dismisses

8  this claim as well.

9       Do you have a proposed order? ·

10          MR. HAMPTON:  I do, your Honor.

11          MR. JONSSON:  It had been prepared with a

12  couple things in mind.  Number one, it anticipated that the

13  motion to strike would be granted.  Therefore it has some

14  language to that effect in it.  It also sets forth a

15  ruling, but I think that may be superseded by your Honor's

16  lengthy and detailed statement on the record here today.

17       So I'm not exactly sure how we ought to proceed.  I

18  guess it's possible that we could change part of the

19  original to just -- Excuse me.  If I may approach the

20  bench.

21       If you look on the second page, there is a lengthy

22  recitation of a ruling.  And I would propose that we simply

23  strike that out and say "as pursuant to the Court's oral

24  decision on the record on July 29th."

25          THE COURT:  Well, you know, I think it might

14

1  be better to have you draft something and let plaintiffs'

2  lawyers review it and then note it for presentation,

3  because it's --

4              MR. JONSSON:  We'll do that.

5              MR. HAMPTON:  We'll be happy to do that, your

6  Honor.

7              THE COURT:  And then run it by them.  If they

8  sign off on it, fine.  If you have an argument about

9  presentation, we'll take it up at that time.

10             MR. JONSSON:  Your Honor, with your permission

11  we'll order a transcript of the hearing where your

12  conclusions were made and then use that as a verbatim

13  finding by the Court.

14             THE COURT:  It's up to you to sort it out as

15  to findings and conclusions.  I simply wrote out my

16  opinion.  And I rely on good counsel to translate it in the

17  appropriate context for the Court of Appeals.

18             Frankly, I think this is a very interesting

19  question.  I am hoping that Washington at some point does

20  give us some appellate guidance on these policies.  I know

21  that it's very big in the industry.  I know it's very big

22  among plaintiffs' attorneys to get this issue resolved,

23  because it's a very expensive process to pursue through

24  class actions.  And I'm hoping -- And I only regret that we

25  don't have any clear guidance here, because I think the

15

APP. 39

16474 9/12/2003 00026.
Moeller v. Farmers. - Ruling - 7/29/03

1   Court of Appeals and the Supreme Court of Washington could

2   go -- Any way is possible.  This is my reading of it.  And

3   as the trial court, who is just the first step in these

4   decisions, I can only do the best that I think the case

5   shows.

6        But I certainly respect both parties' ability to

7   appeal these decisions and get us some, hopefully

8   published, guidance on the issues.

9             MR. JONSSON:   Thank you, your Honor.

10            MR. HAMPTON:,  Thank you, your Honor.

11            MR. NEALEY:   Thank you, your Honor.

12            MR. HANSEN:   Thank you, your Honor.

13                          (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

                                                  16

APP. 40

16474 9/12/2003 00027

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

THE HONORABLE MARYWAVE VAN DEREN                    DEPARTMENT 19

---

DAVID MOELLER,                        )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )    NO. 99-2-07850-6
                                      )
FARMERS INSURANCE COMPANY OF          )
WASHINGTON and FARMERS                )    REPORTER'S CERTIFICATE
INSURANCE EXCHANGE,                   )
                                      )
            Defendants.               )

---

STATE OF WASHINGTON    )
                       )  ss
COUNTY OF PIERCE       )

            I, Dianne Y. Wilson, Official Reporter of the

Superior Court of the State of Washington, County of

Pierce, do hereby certify that the foregoing is a true and

correct partial transcript of the proceedings, Judge's

Ruling, held in the above-entitled matter on JULY 29, 2003.

            Dated this 1st day of August, 2003.


            _____
            Dianne Y. Wilson, CCR NO. WI-LS-OD-Y461RO
            Official Reporter    Reporter No. 82124

                                                        17

APP. 41

09/25/03  THU 18:48 FAX 15032421284          GORDON&POLSCER                    ☒004
                                                       17636  18/18/2003  88128



THE HONORABLE MARY WAVE VANDEREN

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

DAVID MOELLER,

        Plaintiff,

  vs.

FARMERS INSURANCE COMPANY OF
WASHINGTON and FARMERS
INSURANCE EXCHANGE,

        Defendants.

NO. 99-2-07850-6

CLASS CERTIFICATION ORDER

Before the Court is Plaintiff's Motion for Class Certification which seeks certification of the following class under both CR 23(b)(2) and 23(b)(3):

> all persons who: (1) were insured pursuant to a casualty automobile insurance policy issued by Farmers for the state of Washington; (2) received payment under their collision or comprehensive coverages for damage to an insured automobile from May 30, 1993 to the date of class certification in this action; and (3) did not receive payment for inherent diminished value where: (a) the repair estimate including supplements totaled at least $1,000, (b) the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident, and (c) the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.

CLASS CERTIFICATION ORDER - 1/15

LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW

09/25/03  THU 18:44  [TX/RX NO 8216]

1588

APP. 42

09/25/03  THU 18:48 FAX 15032421264          GORDON&POLSCER                         ☒006
                                                                17636  10/18/2009  08121

1    The proposed class does not include Defendants or their officers or directors; this Court

2    or any member of the Court's immediate family; or persons whose insured vehicles were leased.

3    . The Parties' Claims

4    The record shows that Plaintiff was in an accident in Puyallup, Washington on November

5    19, 1998 in which his 1996 Honda Civic sustained damage to his vehicle.  Plaintiff filed a claim

6    under the collision provisions of his Farmers automobile insurance policy, and Farmers

7    subsequently paid for repairs to his vehicle, which Plaintiff alleges were substandard.

8    After his vehicle was repaired, Plaintiff made a claim for the alleged inherent diminished

9    value sustained by his vehicle as a result of the accident.  Plaintiff sought coverage for the

10   diminished value resulting from the accident damage that persisted even after repair.  Farmers .

11   Insurance Company of Washington denied this claim for inherent diminished value, contending

12   that such a claim was not available to a first party insured under the Farmers insurance policy

13   issued to the Plaintiff.  In this suit, Plaintiff makes no claim for any loss resulting from the

14   alleged substandard repairs, which the parties have referred to as "repair related diminished

15   value."

16   Plaintiff asserts that inherent diminished value is a well-recognized factor in the

17   automobile industry.  Plaintiff also asserts that inherent diminished value has been recognized by

18   the Washington State Insurance Commissioner as a "direct loss", and that Farmers has

19   recognized and paid inherent diminished value claims, but only to those claimants sophisticated

20   and aggressive enough to seek and insist on payment.

21   The record reveals that there is no express exclusion for diminished value in Farmers'

22   insurance policies.  Plaintiffs allege that despite the lack of any exclusion for diminished value in

23   its insurance contract, that Farmers' common classwide practice is not to inform its insureds of a

24   diminished value loss or to provide estimates of damages which include payment for diminished

25   value.

26

27

28   CLASS CERTIFICATION ORDER - 2/15                    LOWENBERG, LOPEZ & HANSEN, P.S.
                                                              ATTORNEYS AT LAW

09/25/03  THU 18:44  [TX/RX NO 8214]

1589

APP. 43

09/25/03  THU 18:43 FAX 15032421294         GORDON&POLSCER                         ☐006
                                                                17656  18/18/2003  88122

1     Farmers asserts that it has not paid inherent diminished value claims except in the third

2   party context where Farmers steps into the shoes of an under or uninsured driver who is at fault

3   in an accident involving a Farmers insured. Farmers claims that in this context, the insured is

4   also in a third party position. Farmers further notes that the contract language in Farmers'

5   insurance policy has been interpreted by some courts to not cover diminished value claims.

6     Plaintiff contends that the requirements of Washington Superior Court Civil Rule 23 have

7   been met. Defendants contend, among other arguments, that the CR 23 prerequisites are not met

8   because individual issues of fact as to claims and defenses predominate over common issues of

9   fact and law; that the nature of Plaintiff's claim allegedly compels individualized consideration

10  of each vehicle and/or claim file, thereby rendering the manageability of a class action treatment

11  of these claims impossible or unduly burdensome; that there is only the speculative existence of

12  a method of calculating the value of damages; that Plaintiff's claims fail the typicality test; and

13  that a class action would defeat the rights of some Plaintiffs and also defeat the Defendants' right

14  to assert individualized defenses to claims of class members. This written decision reflects and

15  incorporates by reference the Court's oral decision rendered on July 26, 2002. As discussed

16  below, the Court has carefully considered, and now rejects, each of these arguments.

17      **Class Certification Standard**

18    The Court's ruling is governed by CR 23. A class action is a specialized proceeding and

19  in general must be brought and maintained in strict conformity with the requirements of CR 23.

20  Class certification should be granted only after rigorous analysis, to ensure the prerequisites of

21  CR 23 have been satisfied. In rendering its decision the Court is not to consider the merits of the

22  Plaintiff's case, or the possibility of eventual success at trial, in making a determination of

23  whether a class should be certified. However, the Court may look beyond the pleadings and

24  make a preliminary inquiry into the merits of the action so as to obtain an understanding of the

25  claims, defenses, relevant facts, and application of substantive law to determine if class treatment

26  is appropriate. *See State v. Oda*, ____ Wn.App. ____, 44 P.3d 8 (2002).

27

28  <u>CLASS CERTIFICATION ORDER</u> - 3/15                    LOWENBERG, LOPEZ & HANSEN, P.S.
                                                               ATTORNEYS AT LAW

09/25/03  THU 16:44  [TX/RX NO 8214]

1590

09/25/03  THU 18:49 FAX 15053421284     GORDONAPOLSCER                    ☒007
17636 18/18/2003 00123

1       The Court is aware that, as noted in the Manual for Complex Litigation, class

2   certification, or its denial, can substantially affect such fundamental matters as the structure and

3   stakes of the litigation, who the parties are, how discovery is conducted, the procedure for

4   motion practice, application of alternative dispute resolution procedures, if any, the approach to

5   settlement negotiations, and the running of the statute of limitations against unnamed plaintiffs.

6   Manual for Complex Litigation, Third § 30.1 at 212.  The Court is also aware that some

7   commentators have criticized state courts for being too lenient in certifying classes under state

8   analogs to Fed. R. Civ. P. 23, and for not carefully considering the class certification issues

9   before them.  Because the stakes are high for both parties, the concern of both parties for a

10  proper decision is important.

11      In reaching its decision and findings the Court examined the record developed by the

12  parties.  Prior to class certification, the Court addressed, among other matters, Defendants'

13  motion for summary judgment, Defendants' opposition to Plaintiff's motion to join Farmers

14  Insurance Exchange as a party, and motion practice by both parties regarding experts and

15  witnesses.  The substantial discovery to date has been overseen by a special master, with this

16  Court evaluating the master's recommendations.

17      Prior to the hearing on class certification, the Court considered, amongst other

18  submissions:  Plaintiff's Motion for Class Certification and Attachments A through F;

19  Defendants' Brief in Opposition to Plaintiff's Motion; Scott Jonsson's Declaration in Support of

20  Defendants' Opposition and Attachments A to X thereto; and Defendants' Supplemental Brief in

21  Opposition and Attachments A through E thereto; and Plaintiff's Reply Memorandum and

22  Attachments A through C thereto.

23      The Court also reviewed the depositions, declarations and affidavit testimony of the

24  expert witnesses for the Plaintiff, and the expert or corporate witnesses for the Defendants which

25  were heavily relied on by both sides.  These witnesses, whose testimony was made part of the

26  record, include Messrs. Batton, Griglio, West, Jonsson, McGaughey, Randall, Snowden, Neville,

27

28  CLASS CERTIFICATION ORDER - 4/15                    LOWENBERG, LOPEZ & HANSEN, P.S.
                                                              ATTORNEYS AT LAW

09/25/03  THU 18:44  [TX/RX NO 8214]

1591

09/25/03  THU 16:40 FAX 15b32421264          GORDON&POLSCER                              ⌀008

                                                                17636  10/10/2003  00124

1   Drs. Siskin and Welch, and Ms. Mendoza. Throughout the class certification argument, the

2   testimony of these witnesses on contested matters was thoroughly argued by both sides.

3        Recognizing the importance of the class certification issue, the Court heard four days of

4   oral argument. This extensive argument, with the opportunity for more than one attorney to

5   either respond or argue for each side, is not normally allowed on a motion. However, the Court

6   recognizes that class action certification is an important stage of any class action case, and it

7   therefore tried to make every allowance to allow the parties to argue their positions, and to

8   submit supplemental briefing and authority. For example, the Court allowed additional briefing

9   on the issue of CR 23(b)(2) certification for injunctive and declaratory relief.

10       The parties' comprehensive and complete discussion of the class certification issues, and

11  their efforts to address the Court's many questions, allowed the Court an ample opportunity to

12  become familiar with the claims, potential defenses, relevant facts, management of the case as a

13  class, application of substantive law to the relevant facts, and some of the potential witnesses and

14  their qualifications.

15       Class certification requires that all four requirements of CR 23(a), numerosity,

16  commonality, typicality, and adequacy be satisfied along with at least one of the three sections of

17  CR 23(b). The party proposing certification bears the burden of proving each element of the

18  certification requirements. Each will be considered in turn.

19  CR 23(a) REQUIREMENTS

20      Numerosity

21       Based upon the record before it, the Court finds that the numerosity requirement is

22  certainly met because there may be as many as 200,000 class members. Absent certification,

23  joinder is impracticable. The value of each potential Plaintiff's claims is sufficiently low to deter

24  many, if not most, of the potential class members from pursuing individual claims. Litigation of

25  multiple separate claims by even a fraction of the plaintiff class members would impose a

26

27

28  CLASS CERTIFICATION ORDER - 5/15                    LOWENBERG, LOPEZ & HANSEN, P.S.
                                                            ATTORNEYS AT LAW
                                                          FIFTH AVE. ISLAND BUILDING

09/25/03  THU 15:44  [TX/RX NO 8214]

1572

09/25/03  THU 16:49 FAX 15032421264          GORDON&POLSCER                          ☒009
                                                            17636  10/18/2003  80125

1    hardship on the litigants and the Court. There was no serious dispute that the numerosity

2    requirement is satisfied.

3          Commonality

4          The Court finds that there are issues of law and fact common to the class. First, the

5    relevant language of the insurance policies at issue is materially identical, and the legal issues

6    arising from this common contract language therefore presents a common legal issue, whether

7    Farmers' full coverage casualty automobile insurance provision of the policy issued to Plaintiff

8    covers any reduction in value of a vehicle which has been involved in an accident. All members

9    of the proposed class suffer from the same allegedly wrongful conduct by Farmers in the

10   interpretation of the policy language.

11         Second, the Court finds that there is an underlying and overriding common issue of fact:

12   has each class member's vehicle suffered a reduction in value as a result of the vehicle having

13   been in an accident without consideration of repair related diminished value? The Court finds

14   that other common issues of fact exist, including, whether vehicles in the class can be returned to

15   their preaccident condition, and whether Farmers' business practices present a common and

16   systematic course of conduct designed to process physical damage claims so as to avoid

17   acknowledging or paying diminished value claims in first party insurance contracts.

18         Other issues of fact which may vary in degree are whether, and if so, how much, a

19   vehicle's value might have been affected by either the accident or by improvements resulting

20   from the repair process. Defendants argue that the possibility of such factual issues makes a

21   class action unmanageable or the identification of class members impossible or unduly

22   burdensome. The Court does not believe that Class certification will deprive Defendants of an

23   opportunity to present any defenses to asserted claims which might decrease the damages paid to

24   any particular Plaintiff. Moreover, differences in damages to individual class members is not a

25   basis for defeating class certification. I therefore find that the commonality requirement is

26   satisfied.

27

28   CLASS CERTIFICATION ORDER - 6/15                    LOWENBERG, LOPEZ & HANSEN, P.S.
                                                              ATTORNEYS AT LAW

09/25/03  THU 16:44  [TX/RX NO 8214]

1533

APP. 47

09/25/03  THU 16:50 FAX 15032421284          GORDON&POLSCER                    ☒010
17636  10/18/2003  68126

**Typicality**

1       **Typicality**

2       Defendants contest the typicality of Mr. Moeller, and therefore his ability to serve as a

3  class representative. They argue that he used his car for pizza delivery, a commercial use, and

4  that he refused to allow Farmers to see if his vehicle had been properly repaired after he filed a

5  claim for diminished value.

6       Mr. Moeller challenges the way Farmers handles claims for property damage and the

7  alleged fact that Farmers fails to pay inherent diminished value once a car has been in an

8  accident under a first party claim. Mr. Moeller's car was in an accident, and it suffered the

9  identical types of damage applicable to all class members' vehicles. He received payment under

10  his collision or comprehensive coverage for damages to his 1996 Honda within the class period,

11  and did not receive payment for diminished value. The Court finds that Moeller's claims are

12  typical.

13       The Court further finds that Mr. Moeller does not have a conflict with those insureds who

14  may have additional claims for such items as windshield repair, electrical damage, suspension

15  damage, or repair related diminished value. The Court finds that the typicality requirement of

16  CR 23(a) is met by Mr. Moeller.

17       **Adequacy**

18       The Court further finds that Mr. Moeller will fairly and adequately protect the interests of

19  the class. Even though it does not appear to be disputed that Plaintiff's counsel would be

20  adequate, in addition to Mr. Moeller's qualifications, the Court carefully scrutinized Plaintiff's

21  counsel.

22       The Court has independently considered the quality and experience of the proposed class

23  counsel that have appeared before it. Taking into consideration its own experience with

24  Plaintiff's Counsel over the course of the case, including the quality of their briefing and

25  argument on the law and the facts, the Court finds that they are knowledgeable and experienced

26  in this type of litigation.

27

28  CLASS CERTIFICATION ORDER - 7/15         LOWENBERG, LOPEZ & HANSEN, P.S.
ATTORNEYS AT LAW

09/25/03  THU 16:44  [TX/RX NO 5214]

1594

APP. 48

09/25/03   THU 18:50 FAX 15032421284          GORDON&POLSCER                    @011
                                                          17636  18/18/2883  88127

1     While there is no evidence in the record of class counsel's ability to absorb the cost in

2  time and money of this litigation, it is clear that class counsel has already invested substantial

3  effort, time and money in this and other class action suits related to the issues in this case.

4  Furthermore, Plaintiff's counsel has retained experts, including Dr. Siskin, who have undertaken

5  significant work (along with data gatherers in Texas to undertake the costly, complex, and

6  lengthy project of gathering data to create a damage model). Plaintiff's Counsel's financial and

7  legal resources appear to the Court to be more than adequate.

8     The elements of CR 23(a) have been satisfied.

9     **CR 23(b) REQUIREMENTS**

10    Plaintiffs have requested certification under both 23(b)(2) as to injunctive relief and

11  23(b)(3) as to damages. Because 23(b)(2) had not been addressed in the parties' initial briefing,

12  additional time was granted to both parties to brief this issue. The Court will address each part

13  of the Rule in turn.

14    **CR 23(b)(2) Certification**

15    Actions or claims for classwide injunctive or declaratory relief are appropriate for (b)(2)

16  certification where, as here, they involve uniform group remedies. Such relief may often be

17  awarded without requiring a specific or time consuming inquiry into the varying circumstances

18  and merits of each class member's individual case. Therefore, when CR 23(b)(2) applies, it may

19  obviate the need for what may be relatively complex damage calculations under CR 23(b)(3).

20    For these reasons, proposed (b)(2) classes need not withstand a court's independent probe

21  into the superiority of the class action over other available methods of adjudication or the degree

22  to which common issues predominate over those affecting only individual class members. While

23  granting CR 23(b)(2) class certification would seem an easier route to take here, Plaintiffs have

24  argued that CR 23(b)(2) relief could potentially serve as the basis for the eventual awarding of

25  damages relief to each class member. It thus appears to this Court that in the facts of this case,

26  monetary relief predominates, precluding certification under CR (b)(2).

27

28  CLASS CERTIFICATION ORDER - 8/15                        LOWENBERG, LOPEZ & HANSEN, P.S.
                                                                 ATTORNEYS AT LAW

09/25/03   THU 18:44  [TX/RX NO 8214]

1585

**APP. 49**

09/25/03   THU 16:51 FAX 15032421284          GORDON&POLSCER                                    Ø012

17636  10/13/2003  08128

1    This Court thus denies certification under CR 23(b)(2), finding that the Plaintiff's

2    requested relief, as pled, is predominantly a claim for damages, not equitable relief. This

3    opinion is based on both the late mentioned and unpled assertion of relief under CR 23(b)(2) and

4    a rigorous analysis of the claim through the Court's hearing and weighing all of the evidence and

5    argument.

6        CR 23(b)(3) Certification

7        In determining whether the prerequisites of CR 23(b)(3) are met, this Court is directed to

8    determine whether common questions of fact or law predominate over questions affecting only

9    individual members and whether a class action is superior to other available methods for the fair

10   and efficient adjudication of the controversy.  The following factors are pertinent to the Court's

11   consideration of these two important issues:  The interest of members of the class individually

12   controlling the prosecution or defense of separate actions; the extent and nature of any litigation

13   already commenced by or against a member of the class; the desirability or undesirability of

14   concentrating litigation in a particular forum; and the difficulty likely to be encountered in

15   management of the proposed class action.  After carefully considering each factor the Court finds

16   as follows:

17       As to the first factor, Defendants assert that they have a due process interest in presenting

18   defenses to individual claims on a case-by-case basis.  Defendants argue that they cannot

19   adequately protect their interests unless they can present all factual issues individually as to each

20   class member at trial.  Plaintiff argues that there is nothing in class treatment which would

21   prevent the Defendants from presenting evidence on individual claims and defenses.  Plaintiffs

22   argue, however, that the best way for Plaintiffs to present their case (and for the Court to

23   determine whether diminished value can and will be shown for class members) is to use common

24   classwide evidence such as the model being developed by their expert Dr. Siskin based on

25   information gathered at auto auctions and from Defendants' own files.  Plaintiffs argue that this

26   model, supported by other evidence, can be adjusted to take into account any defenses raised by

27

28   CLASS CERTIFICATION ORDER  - 9/15                          LOWENBERG, LOPEZ & HANSEN, P.S.
                                                                 ATTORNEYS AT LAW

08/25/03   THU 16:44   [TX/RX NO 8214]

1596

09/25/03  THU 16:51 FAX 15032421284          GORDON&FOLSCER                          ☐023

17636 10/18/2003  08129

1   the Defendants, so that the jury can adjust any eventual class wide award to take into account

2   any relevant defenses raised by Defendants.

3          No other potential class members have come forward to advise the Court that they have

4   an interest in pursuing or controlling the prosecution of separate actions on their own behalf.

5   After close consideration and scrutiny of the desirability and claimed need to assert individual

6   defenses in each particular case, it is the Court's finding, based on the evidence and argument of

7   counsel, that in the course of identifying the particular class members and in evaluating their

8   particular cases, that the Defendants in this case will be able to present any relevant information

9   to the Court and jury in a classwide trial and that classwide treatment is therefore preferable.

10         Regarding the second factor, the Court is not aware of any other litigation already

11  commenced by or against a member of the proposed class. Therefore, this does not weigh for or

12  against class certification.

13         As to the third factor, this case is limited to Farmers insureds in the State of Washington

14  during the relevant period with claims within the class definition. The desirability or

15  undesirability of having this case in Pierce County as opposed to any other county is not argued

16  by either party, so it therefore does not weigh in favor of or against class certification by this

17  Court.

18         The final factor, the difficulty likely to be encountered in management of the class action

19  as proposed, has been heavily disputed. Defendant argues that each claim file or vehicle must be

20  reviewed or investigated and that information on the preaccident condition of each vehicle must

21  be known to determine the existence and amount of diminished value.

22         Defendants first argue that neither they, nor any of their archival resources, can produce

23  the critical records necessary to manage, gather, and synthesize the data necessary to adequately

24  identify the class members and determine if they are owed payment for inherent diminished

25  value. Defendant has identified 19 to 20 factors which its expert has testified are necessary in

26  order to properly evaluate whether diminished value exists. Plaintiff disagrees. The court finds,

27

28  <u>CLASS CERTIFICATION ORDER</u> - 10/15          LOWENBERG, LOPEZ & HANSEN, P.S.
                                                    ATTORNEYS AT LAW

09/25/03  THU 16:44  [TX/RX NO 5214]

/597

APP. 51

09/25/03  THU 15:51 FAX 15032421264        GORDON&POLSCER                    @014
·17636 ·10/18/2003  08198

1    however, that what factors do, or do not affect, or interact with diminished value is ultimately an

2    empirical question to be resolved at trial.  Defendants therefore argue that this case is not

3    manageable because one cannot accurately identify the class members or whether they suffered

4    damages without prohibitively expensive and time consuming efforts.  Defendants assert that

5    individual minitrials will be necessary and these minitrials will overwhelm any benefits of a

6    class action.

7        The Court has seriously considered these arguments and has regarded the manageability

8    of this case as a significant factor, if not the most significant factor, in reaching its decision.

9    Neither the number of potential class members nor the purported difficulty in obtaining data on

10    them defeat class certification unless such problems of management make a class action less fair

11    and efficient than other available techniques.  Here, the only conceivable method to adjudicate or

12    resolve this case is through a class action, as the de minimis size of individual claims would

13    leave policyholders without practical recourse, absent class treatment, to address the contract

14    construction (legal) and damages (fact) issues.

15        Defendants argued, and attempted to present evidence, that the cost of the resources and

16    labor required to identify members of the class would exceed several million dollars.  Although

17    the Court did not admit such evidence, the Court does not find Defendants' evidence competent

18    or believable on this point.  Plaintiff, however, has presented Exhibit 1, which shows the sources

19    of information in Defendants' possession which can be used to ascertain class members and to

20    provide the basis for a class damage calculation.  Plaintiffs have also presented the Court with a

21    preliminary plan of how to proceed to gather the data on vehicles and how to manage this

22    litigation as a class action.  Their plan evidences a keen understanding of the steps necessary to

23    process claims, identify class members, analyze the data on the existence or amount of

24    diminished value, make adjustments to the classwide damages for any defenses raised (and

25    substantiated by Defendants), and then provide for notification and allocation of any damages

26    awarded to the class after trial.  Plaintiffs' counsel have exhibited an understanding of the

27

28    CLASS CERTIFICATION ORDER - 11/15            LOWENBERG, LOPEZ & HANSEN, P.S.
                                                               ATTORNEYS AT LAW

09/25/03  THU 16:44  [TX/RX NO 5214]

Def.'s Resp. to Pl.'s Motion for
Class Cert. 2:09-cv-00218 JLR - pg 1366 of 1402

09/25/03   THU 16:52 FAX 15032421264          GORDON&POLSCER                                ☐015

1   sources of data, cross checks on that data, supplemental sources of data, and the use of

2   computers to index and manipulate that data. This will expedite the retrieval, sorting, and

3   analysis of pertinent data for both the Plaintiffs and Defendants.

4          Defendants next argue that the Plaintiff proposes a fail safe class, one which would bind

5   the Defendants if Plaintiffs prevailed but which would not bind the class member if the case is

6   dismissed with no findings of damages. Defendants argue that they cannot achieve finality with

7   this proposed class definitions.

8          The proposed class definition must be precise, objective, presently ascertainable, and

9   must not depend on subjective criteria or the merits of the case or require extensive factual

10  inquiry to determine who is a class member. This standard is set out in *In re: Copper Antitrust*

11  *Lit.*, 196 F.R.D. 348 (W.D. Wis. 2000).

12         On these issues, the Court has carefully scrutinized the cases cited by Defendants, the

13  facts of those cases, and the arguments by both parties. The Court finds that the proposed class

14  does not rely on the mental state of any plaintiff and does not require the Court to determine that

15  inherent diminished value actually exists in order to identify the class members. Thus, the Court

16  will not need to make a decision regarding the merits of the Plaintiffs' claims in order to

17  determine class membership. Further, it should be noted that the Court need not, and has not,

18  determined the contract construction issue in order to certify the class. The elements of the

19  definition of this class are all ascertainable by reference to objective data.

20         Class members must be insured by Farmers under a full coverage casualty automobile

21  policy for the state of Washington. They must have received actual payment from Farmers for

22  comprehensive or collision damage from May 30, 1993, to today. They must not have received

23  any payment for diminished value. Their vehicle must have suffered damage totaling at least

24  $1,000. The vehicle must not have been more than six years old at the time of the accident and

25  must not have had more than 90,000 miles on it at the time of the accident. The vehicle must

26  have suffered from structural, frame, damage and/or deformed sheet metal and/or required body

27

28  CLASS CERTIFICATION ORDER - 12/15                    LOWENBERG, LOPEZ & HANSEN, P.S.
                                                         ATTORNEYS AT LAW

1   work or paint.  None of these elements refers to any subjective factor for ascertaining whether an

2   insured is a member of the proposed class.

3          The Court therefore finds that any insured within this objective definition will be bound

4   by the decision in this case unless he opts out of the class.

5          Finally, there has been much argument between expert witnesses on the existence, or

6   nonexistence, of inherent diminished value.  The methodology proposed by Dr. Siskin has been

7   challenged, as has the lack of existence of exact data, and the method proposes to use to gather

8   data on sales.  Defendants also argue that under Washington law, damages cannot be calculated.

9   These arguments, and others put forth by Defendants, go to the merits of the Plaintiffs' claims.

10         In allowing the presentation and argument on these points, the Court has gained

11   considerable insight to the case and now understands how this case will proceed as a class

12   action, what management it will require, and whether it can be accommodated by this Court.

13   These were vitally important matters for the Court to comprehend in making a determination

14   about whether a class action is a superior manageable way to address this case.  This is the

15   central and key issue as far as the Court is concerned: whether or not the proposed class action

16   is practical, feasible, appropriate, and superior to litigate the concerns of both parties.

17   Considerations which entered into the Court's decision were articulated above, as well as the

18   economy of time for both the Court and the litigants, economy of expense for all concerned, and

19   whether a class action would promote a uniformity of decisions to accomplish equity and justice

20   for all involved.

21         After carefully and closely considering all of these factors, my decision is that a class

22   action is a superior, although not perfect means, for policyholders to pursue any claims they may

23   have for inherent diminished value against Farmers.  The Court finds that such an action should

24   not, and will not, impede Farmers' ability to investigate particular class members claims, and

25   present evidence on individual claims supporting defenses unique to each claim and defend

26   against the nature and extent of damages, if any, in this Court.

27

28   CLASS CERTIFICATION ORDER - 13/15                    LOWENBERG, LOPEZ & HANSEN, P.S.
                                                              ATTORNEYS AT LAW

1600

APP. 54

09/25/03  THU 18:53 FAX 15032421284          GORDON&FOLSCHER                    @017
                                                              17636  18/18/2883  88133

1    The class members are potentially numerous, with allegedly small claims for inherent

2    diminished value, impractical for other means of fair and uniform resolution.  Farmers and their

3    insureds need clarity on this issue, which can only be achieved with efficiency and finality

4    through a class action, with its economy of time, effort, and expense.

5    The Court therefore certifies the following class:

6        all persons who: (1) were insured pursuant to a casualty
         automobile insurance policy issued by Farmers for the state of
7        Washington; (2) received payment under their collision or
         comprehensive coverage for damage to an insured automobile
8        from May 30, 1997 to the date of class certification in this action;
         and (3) did not receive payment for inherent diminished value
9        where: (a) the repair estimate including supplements totaled at
         least $1,000; (b) the vehicle was no more than six years old (model
10       year plus five years) and had less than 90,000 miles on it at the
         time of the accident; and (c) the vehicle suffered structural (frame)
11       damage and/or deformed sheet metal and/or required body or paint
         work.

12       Excluded from the class are Defendants, their officers and
         directors; the Court and any member of the Court's immediate
13       family; and those individuals whose vehicles were leased or total
         losses.

14

15   Mr. Mueller is appointed as a representative of the Class and Stephen M. Hansen of

16   Lowenberg, Lopez & Hansen, P.S.; Elizabeth J. Cabraser, Morris A. Ratner, and Scott P. Nealey

17   of Lieff, Cabraser, Heimann & Bernstein, LLP; Debra Hayes of Reich & Binstock; Mary N.

18   Strimel of Cohen, Milstein, Hausfeld & Toll, P.L.L.C.; and Terrell W. Oxford of Susman

19   Godfrey, LLP are appointed as Class Counsel.

20       IT IS SO ORDERED.

21       DONE IN OPEN COURT this 13th day of September, 2002.

22

23                                             /s/
                                       MARYWAVE VAN DEREN
24                                     SUPERIOR COURT JUDGE

25

26

27

28   CLASS CERTIFICATION ORDER - 14/15          LOWENBERG, LOPEZ & HANSEN, P.S.
                                                       ATTORNEYS AT LAW
                                                     SUITE 450, PLAZA BUILDING

                    09/25/03  THU 18:44  [TX/RX NO 8214]

1601

APP. 55

09/25/03  THU 16:53 FAX 15032421264          GORDON&POLSCER                                ☒018
                                                                    17636  10/10/2009  80134



1  Presented by:

2  LOWENBERG, LOPEZ & HANSEN, P.S.

3

4  Stephen M. Hansen, WSBA #15642
   Of Attorneys for Plaintiff

5

6  Copy Received, Approved for Entry;
   Notice of Presentation Waived
7
   GORDON & POLSCER, L.L.P.
8

9

10  SCOTT A. JOHNSON, WSBA#: 13820
11  Of Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  CLASS CERTIFICATION ORDER - 15/15                 LOWENBERG, LOPEZ & HANSEN, P.S.
                                                        ATTORNEYS AT LAW
                                                      SUITE 450, RUST BUILDING
                                                       950 Pacific Avenue

                                        09/25/03  THU 16:44  [TX/RX NO 8214]

                                        1602

APP. 56

**CERTIFICATE OF SERVICE BY MAIL**

I certify that on April _14_, 2010, I caused copies of the foregoing

**PETITION FOR DISCRETIONARY REVIEW** to be sent via email

(where indicated) and via U.S. Mail, first class, postage prepaid, to the

following counsel of record, at the following addresses:

Stephen M. Hansen
Lowenberg, Lopez & Hansen, P.S.
950 Pacific Avenue, Suite 450
Tacoma, WA 98402-4441

Kenneth W. Masters (via email and
U.S. mail)
Wiggins & Masters PLLC
241 Madison Avenue N
Bainbridge Island, WA 98110-1811

Elizabeth A. Cabraser
Morris A. Ratner
Scott P. Nealey
Lieff, Cabraser, Heimann &
Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Jill D. Bowman, WSBA No. 11754

70024188.4 0045556-00018