UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN HOVENKOTTER,<br><br>Plaintiff,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF ILLINOIS,<br><br>Defendant. | CASE NO. C09-0218JLR<br><br>ORDER DENYING MOTION FOR CLASS CERTIFICATION |

## I. INTRODUCTION

This is a putative class action based on Plaintiff Martin Hovenkotter's allegations that Defendant SAFECO Insurance Company of Illinois ("Safeco") issued a uninsured and underinsured coverage policy in 28 states, including Washington,[1] that provided that

---

[1] The other 27 states are Alaska, Arkansas, California, Colorado, Georgia, Idaho, Illinois, Indiana, Louisiana, Maryland, Mississippi, Montana, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wyoming.

ORDER- 1

Safeco would "pay for damages which an insured is legally entitled to recover." The policy language at issue is consistent throughout the numerous policies issued by Safeco to consumers in the 28 states identified. (*See* Mot. (Dkt. # 44) Ex. A ("Uniform Policy Language Chart").) Mr. Hovenkotter contends that Washington and other states require that Safeco pay its insureds not only for the cost to repair their damaged vehicle but also that it compensates the insured for the diminution value that is associated with the repairs. This is based on the "general conviction that a vehicle which has been damaged and then repaired is worth less." (Hansen Decl. (Dkt. # 45) Ex. 2 (SICI-5854 (Safeco online policy).)

There are two motions before the court: (1) Plaintiff Martin Hovenkotter's motion to certify class (Dkt. # 44); and (2) Defendant Safeco's motion to exclude the affidavit of expert Larry Batton and the Declaration of Nayak L. Polissar, Ph.D. (Dkt. # 50). Having reviewed the papers submitted in support and opposition, and having heard the argument of counsel, the court DENIES Mr. Hovenkotter's motion to certify class (Dkt. # 44); and GRANTS in part and DENIES in part Safeco's motion to exclude affidavits (Dkt. # 50). As the former motion depends, in part, on the resolution of the latter, the court first addresses the motion to exclude expert testimony (the *Daubert* motion).

## II. BACKGROUND

**A.  "Don't Ask, Don't Tell"**

Although Safeco acknowledges that in many instances an insured will suffer diminution loss as a result of an accident, Safeco's position is that the insured must specifically request that the diminution value be awarded. If the insured does not ask for

ORDER- 2

this form of recovery then Safeco does not compensate for it. Safeco's representative, Michael Carroll, Vice President and Manager of Personal Lines, testified that it is Safeco's policy not to train or instruct its claims examiners to disclose to the insured that they may make a claim for diminished value. (Hansen Decl. Ex. 5 ("Carroll Dep.") at 9-10; 120).) Instead, Safeco, as stated by Mr. Carroll, takes the position that "it's incumbent upon the insured to inform us that they're making a claim for diminished value and then we will set a task up with our field appraisers to go in and investigate that and determine if it's owed or not." (*Id.* at 120.) Mr. Hovenkotter refers to this as the "don't ask, don't tell" policy.

**B.     Mr. Hovenkotter's Individual Claims against Safeco**

Mr. Hovenkotter is a car enthusiast who has bought and sold over 40 cars in his lifetime. (Powers Decl. (Dkt. # 51) Ex. 1 ("Hovenkotter Dep.") at 25, 39.) He enjoys vehicles that are "fun and interesting" and "collector vehicles." (*Id.* at 39, 43.) In January 2007, Mr. Hovenkotter's 2006 Mazda Speed 6 AWD four-door sedan, a "fairly unique" and "high-performance vehicle," was parked in downtown Issaquah for the night due to a snowstorm. (*Id.* at 43, 75-76.) When Mr. Hovenkotter returned the following day to collect his vehicle there was a dent in the front end of the vehicle. (*Id.* at 75-76.) The damage to the Mazda was estimated at $2,874.58. (Compl. (Dkt. # 1) at ¶ 4.1.) Safeco paid to have the damage repaired under Mr. Hovenkotter's collision policy with Safeco, less his deductible. (*Id.* at ¶ 4.2.) Safeco did not discuss diminution value with Mr. Hovenkotter during this transaction.

ORDER- 3

Five months after the repairs were completed on his Mazda, Mr. Hovenkotter sold it for less than the list price. (Hovenkotter Dep. at 117-18.) After he sold his Mazda, Mr. Hovenkotter consulted a lawyer who notified Safeco that it had improperly characterized Mr. Hovenkotter's claim as falling under the collision policy as opposed to under the uninsured motorist policy. (Carroll Aff. (Dkt. # 51) Ex. A.) Safeco agreed with Mr. Hovenkotter's lawyer that the claim had been improperly categorized as a collision claim and refunded a portion of Mr. Hovenkotter's deductible. (*Id.*) Mr. Hovenkotter thereafter brought this class action based on Safeco's failure to inform him of his right to compensation based on diminution value.

### III.   ANALYSIS

**I.   *Daubert* Motion**

Safeco seeks to exclude the expert opinions of Larry Batton and Nayak L. Polissar, Ph.,D. (Mot. at 1.) First, Safeco contends that both expert opinions were submitted after the close of class discovery which, alone, warrants exclusion of both reports. Second, Safeco argues that neither expert has provided the requisite foundation for reliability to meet the standards set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In addition to opposing Safeco's substantive arguments, Mr. Hovenkotter also raises the procedural question of whether a full-blown *Daubert* hearing is required for the court's determination of class certification.

    1. Timeliness of Expert Reports

On August 3, 2009, the court ordered that the discovery phase of this case be bifurcated. (Order (Dkt. # 36) at 1.) As ordered by the court, the first phase of discovery

was limited to the production of evidence relating to class certification requirements. (*Id.*) This also included expert discovery on the issue of class certification. (*Id.*) The court ordered that this phase of discovery be completed by November 5, 2009. (*Id.*) On November 3, 2009, the parties requested, and the court granted, an extension of time for completing class certification discovery to February 20, 2010. (Order (Dkt. # 39) at 3.) On February 10, 2010, the parties filed another stipulation requesting an extension until May 20, 2010. (Stip. (Dkt. # 41) at 2.) On February 11, 2010, the court denied the stipulation as further continuances would not secure the "just, speedy, and inexpensive determination" of this action as required by Federal Rule of Civil Procedure 1. (Order (Dkt. # 43) at 2.)

On February 20, 2010, counsel for Mr. Hovenkotter sent via email his "supplemental Rule 26 initial disclosures." (Dawson Decl. (Dkt. # 61) Ex. B.) In his disclosure, Mr. Hovenkotter's counsel identified as potential witnesses: Larry Batton of the Automobile Appraisal Group, Inc., and Nayak Polissar, Ph.D. (*Id.*, Ex. C at 5-6.) Counsel explained that Mr. Batton is expected to opine that: (1) vehicles involved in accidents will incur diminished value; (2) diminished value exists across geographical regions and across all types of vehicles; (3) diminished value can be determined without a physical inspection of the vehicle; (4) diminished value can be calculated; (5) there is a relationship between the amount of damage, the pre-loss value of the vehicle, and the diminished value; and (6) Mr. Hovenkotter's vehicle suffered diminished value. (*Id.* at 5-6.) As for Dr. Polissar's testimony, counsel for Mr. Hovenkotter disclosed that he is

expected to testify regarding class-wide damages using multiple regression analysis principles. (*Id.* at 6.)

Over the next five days, counsel for Mr. Hovenkotter amended and supplemented the expert disclosures by sending Dr. Polissar's curriculum vitae together with an expert report prepared by Bernard R. Siskin, Ph.D., in a matter before the Washington Superior Court, a signed affidavit from Mr. Batton, and other materials supporting the expert opinions. (*Id.*, Exs. C-G.) One month past the due date for class certification discovery, Dr. Polissar filed his own declaration in support of class certification. (Polissar Decl. (Dkt. # 44-9).)

Safeco moves to strike the late-filed expert disclosures pursuant to Federal Rule of Civil Procedure 37(c)(1). Rule 37(c)(1) provides that if a party fails to provide information as required by Rule 26(a) or (e), the party is not permitted to use the information on a motion or otherwise, unless the failure was "substantially justified or is harmless." Safeco argues that pursuant to the court's order bifurcating discovery, Mr. Hovenkotter's expert disclosures were due on February 20. Safeco also takes the position that the expert disclosures must comply with all the requirements set forth in Rule 26(a)(2)(B), including providing a complete statement of the opinion, the data or other information considered by the expert, any exhibits that will be used to summarize the opinion, a list of qualifications for the witness, a list of cases in which the witness testified, and a statement of the compensation. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). Generally, absent an order of the court, these disclosures must be made 90 days before the date set for trial. Fed. R. Civ. P. 26(a)(2)(C).

The court was not explicit in its order bifurcating discovery as to the extent of detail required for the expert disclosures on class certification and therefore will not hold either party to the standard set forth in Rule 26(a)(2)(B). The order was, however, explicit on the due date for such disclosures. It appears that the parties may have been operating under the assumption that the court would grant a second stipulation to extend the due date for class discovery and were not prepared fully for meeting the February 20th deadline. This is not an excuse for failing to meet the deadline. The court nevertheless finds that Mr. Hovenkotter's expert disclosures that were served in an ad hoc method over a five-day period were harmless and did not substantially hinder Safeco's ability to defend the class certification motion. This is not true of Dr. Polissar's declaration. The court strikes this declaration as it was filed over a month past the deadline and only filed in response to the instant motion to exclude testimony. The court's consideration of this declaration long after the time for Safeco to respond to the opinions set forth therein would be prejudicial to Safeco's defense to the motion for class certification.

Accordingly, the court DENIES the motion as to Mr. Hovenkotter's expert disclosures made before February 25, 2010, but GRANTS the motion as to the late-filed Polissar Declaration. The court STRIKES the declaration (Dkt. # 44-9) and will not consider it in determining class certification issues. The court further DENIES the motion to the extent that it interprets the court's order bifurcating discovery as requiring full expert disclosures by the end of class discovery.

### 2. Necessity of a "Full-Blown" *Daubert* Hearing

Mr. Hovenkotter takes the position that a full-blown *Daubert* hearing at the class certification stage is not required. (Resp. (Dkt. # 53) at 8; citing *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (en banc).) Safeco also cites to *Dukes* for the proposition that the court must consider the substance of expert evidence to determine its probative value and foundational reliability at the class certification stage (a sort of "*Daubert*-lite" analysis). (*Id.*) In footnote 22 of the Ninth Circuit's opinion in *Dukes*, the majority disagreed with the dissent's assertion that *Daubert* has exactly the same application at the class certification stage as it does to expert testimony at trial. *Dukes*, 603 F.3d at 603. Instead, the court stated, "[a]t the class certification stage, it is enough that [the expert] presented scientifically reliable evidence tending to show that a common question of fact . . . exists with respect to all members of the class." *Id.* Thus, the court's consideration of the Dr. Polissar and Mr. Batton opinions requires it to determine whether their opinions tend to show a commonality of claims and damages among the class members; the court need not conduct a full *Daubert* analysis as to the admissibility for trial of the expert's opinions.

While the parties spend a great deal of time distinguishing between the standard to apply at class certification versus what is required for admissibility at trial, the Ninth Circuit teaches that the court should simply conduct a full and rigorous analysis of the admissibility of the expert's opinions *as they relate to class certification issues* and leave for trial the admissibility of their opinions as they relate to the merits of the underlying claims. *Id.* at 601. With this aim in mind, the court next addresses the admissibility of

ORDER- 8

the opinions offered by Mr. Batton and Dr. Polissar for evaluating class certification issues.

### 3. Reliable Principles and Methodologies

Mr. Hovenkotter offers both opinions at the class certification stage to show that the individual damages question does not predominate over common class questions. (Resp. at 9.) Mr. Hovenkotter's position is that although individual damages will vary, the amount of the individual damages and aggregate class-wide damages can be calculated using available, objective information contained in Safeco's electronic records. (Mot. for Class Cert. at 16.) Dr. Polissar, a research statistician, will rely on this information to calculate, using multiple linear regression analysis, the amount Safeco owes its insureds if liability is found. (*Id.*) According to Mr. Hovenkotter, Dr. Polissar will use the data collecting protocol established by Dr. Bernard Siskin—an expert in the field who was unable to testify in this case—to isolate the effect of diminution value on the total value of the vehicle. (*Id.*) Mr. Batton's opinion essentially buttresses the underlying basis for Dr. Polissar's opinion (*i.e.,* that vehicles in accidents will incur diminished value and that diminished value can be determined without a physical inspection of the vehicle). Safeco seeks to exclude both opinions.

    *a. Dr. Polissar's Opinion*

Safeco objects to Dr. Polissar's opinion on the bases that (1) it is unreliable because it was generated solely for the present litigation and (2) he has no independent opinion but relies entirely on the opinion and dataset of another undisclosed expert. (Mot. at 7.) As discussed above, the court struck the late-filed Polissar declaration,

leaving only the declaration submitted by Dr. Siskin in an unrelated matter in state court as the basis for Dr. Polissar's opinion. Dr. Siskin is not testifying in this case, nor was he available for cross-examination by Safeco; and there is nothing in the record suggesting that his underlying data was subject to review by Safeco's expert nor that Dr. Polissar tested Dr. Siskin's theories or even had access to the underlying data. There is also nothing in the record supporting that Dr. Siskin's theories have been peer reviewed or that they are the type of factual predicates relied upon by experts in the field. *See* Fed. R. Civ. P. 703 (allowing inadmissible data and facts if they are the type reasonably relied upon by experts) and 705 (stating that the court may require the expert to disclose the underlying data or facts on cross-examination). Essentially, Dr. Polissar is parroting the opinions developed by Dr. Siskin. Given the procedural flaws discussed above, the court concludes that Dr. Polissar's opinion is unreliable and therefore inadmissible at this stage in the litigation.

*b. Mr. Batton's Opinion*

Safeco contends that Mr. Batton's opinion is deficient because he is effectively requesting that the court "accept him at his word that [diminution value] inherently results from every vehicle conclusion." (Mot. at 10.) The court need not accept Mr. Batton at his word but rather is free to judge from Mr. Batton's specialized knowledge whether his opinion is reliable. Fed. R. Civ. P. 702.

Mr. Batton's affidavit explains that he is the founder and President of Automobile Appraisal Group, Inc. ("AAG") a national company providing comprehensive appraisals of all types of vehicles since 1990. (Batton Aff. (Dkt. # 53-3) (Signed Version) at ¶ 1.)

ORDER- 10

1  He oversees all research performed for AAG appraisals, including investigation of
2  current market activity, sales, trends, comparable value analysis, and diminished value
3  due to accident damage. (*Id.*) He has provided this service for various governmental and
4  private entities, including the U.S. Marshal's Office and General Motors. (*Id.* at ¶ 2.) He
5  is a certified instructor for automobile property valuation certifications and has been
6  appraising vehicles for over 35 years. (*Id.* at ¶ 3.)

7      Based on the information provided in Mr. Batton's affidavit, the court finds that
8  Mr. Batton's opinion meets the first two prongs of Rule 702: (1) his testimony is based
9  upon sufficient facts and knowledge and (2) the testimony is the product of reliable
10 principles and methods (*see* Batton Aff. ¶ 4 (explaining methodology for appraising
11 vehicles).) The third prong requires that the witness apply the principles and methods
12 reliably to the facts in this case. Fed. R. Evid. 702. This prong is met as to Mr.
13 Hovenkotter's vehicle in that he opines that, based on repair records, he is able to
14 conclude that Mr. Hovenkotter suffered diminished value. (*Id.* at ¶ 5.) As to the class
15 claims, Mr. Batton opines that it is possible to value vehicles using only the repair
16 invoices and other objective vehicle information such as make, model, and year. Thus,
17 his opinion gives credence to Mr. Hovenkotter's position that damages can be
18 apportioned on a class-wide basis using only information that can be culled from
19 Safeco's database. Accordingly, the court DENIES Safeco's motion to exclude Mr.
20 Batton's expert opinions as to the calculation of damages.

21
22

## II. Motion to Certify Class Under Rule 23(b)(2) And/Or (b)(3)

Mr. Hovenkotter seeks to certify a nation-wide class action under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). Mr. Hovenkotter asserts two causes of action in his complaint: (1) breach of contract and (2) violation of Washington's Consumer Protection Act. (Compl. ¶¶ 7.1-7.15.) Recognizing that class certification of his consumer protection act claim would likely be foreclosed by the Supreme Court of Washington's opinion in *Schnall v. AT&T*, Mr. Hovenkotter seeks class certification on only the breach of contract claim. *See* 225 P.3d 929 (Wash. 2010).

Mr. Hovenkotter initially proposed two classes to litigate his breach of contract claim: a Rule 23(b)(3) class seeking monetary relief and a Rule 23(b)(2) class seeking only injunctive relief. In his reply memorandum, he also proposed a "hybrid" class action.

### 1. Rule 23(a) Standard

The court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Even if these criteria are met, the court is given discretion over whether to certify a class. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010). Before certifying a class, a district court must determine that the requirements of

Rule 23 "are actually met, not simply presumed from the pleadings." *Dukes*, 603 F.3d at 582. The court must conduct a "rigorous analysis" to determine if the prerequisites of Rule 23(a) are satisfied. *Id.; Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (per curiam).

In *Dukes*, the Ninth Circuit clarified the standards applicable to class certification:

> First, when considering class certification under Rule 23 district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims. It is important to note that the district court is not bound by these determinations as the litigation progresses. Second, district courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements. Relatedly, a district court performs this analysis for the purpose of determining that each of the Rule 23 requirements has been satisfied. Third, courts must keep in mind that different parts of Rule 23 require different inquiries. . . . Fourth, district courts retain wide discretion in class certification decisions, including the ability to cut off discovery to avoid a mini-trial on the merits at the certification stage.

*Dukes*, 603 F.3d at 594.

To satisfy Rule 23(a)(1), numerosity, Mr. Hovenkotter must show that "the class is so numerous that joinder of all members is impracticable." This is not disputed. Nor do the parties really dispute typicality or adequacy. Although Safeco does attempt to argue that because Mr. Hovenkotter is a car enthusiast and his vehicle was a collector that his claims are not typical of the class. In determining typicality, the court is looking for assurances that the interest of the named representative aligns with the interests of the class. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The court is not persuaded that Mr. Hovenkotter's enthusiasm for cars misaligns him with the class

ORDER- 13

members who may or may not share his enthusiasm. The crux of the dispute in this case is the court's determination as to commonality.

### 2. Commonality

To demonstrate commonality under Rule 23(a)(2), Mr. Hovenkotter must "establish common questions of law and fact." *Dukes*, 603 F.3d at 594. It is not necessary that members of the proposed class "share every fact in common or completely identical legal issues." *Rodriguez*, 591 F.3d at 1122. Rather, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The commonality test is 'qualitative rather than quantitative'—one significant issue common to the class may be sufficient to warrant certification." *Dukes*, 603 F.3d at 599.

Mr. Hovenkotter argues that there are common questions of law and fact in this case because (1) the policies at issue are generally the same (*see* Ex. A to Mot. (Dkt. # 44-2) ("Uniform Policy Language")); (2) Safeco's "don't ask, don't tell" policy is consistent throughout the 28 states; (3) the breach of contract claims have similar elements in all of the 28 states covered by this class action; (4) the 28 states at issue recognize that diminished value is recoverable under tort law (*see* Mot., Ex. B (Dkt. # 44-3) ("Diminished Value is Recoverable under Tort Law")); and (5) according to both Mr. Batton and Dr. Polissar a class-wide determination of diminution value damages is possible.

ORDER- 14

The court declines to certify this breach of contract class action because Mr. Hovenkotter fails to meet the threshold criteria of commonality. First, there are 28 states at issue in this putative class which raises conflicts of law and due process problems. Second, there are a number of Safeco policies at issue. Even limiting the policies to the terms identified by Mr. Hovenkotter, the court's review of the 268-page "Policy Language Excerpts" provided by Safeco evidences the many differences, however slight, that exist among the various policies. (Powers Decl. (Dkt. # 62) Ex. 8.) Mr. Hovenkotter attempts to reduce the more than 200 policies down to a common sentence—"we will pay damages which you are legally entitled to recover"—to show that there is no significant difference in the policies. Even accepting this limitation, however, Mr. Hovenkotter's argument is fraught with problems: (1) every policy is governed by a different state's breach of contract law, the application of which depends on that state's conflicts of law requirements; (2) to some extent, each state differs in its breach of contract jurisprudence including applicable statutes of limitations, forms of recovery, and available contract defenses; and (3) to understand whether Safeco breached its policies by failing to "pay damages which [its insureds] are legally entitled to recover," this court would need to look to each state's tort law to determine how damages are measured after an accident.

Finally, certifying this class would require this court, sitting in Washington state with no personal jurisdiction over a plaintiff in, for example, Alaska, other than that he failed to opt-out of this class action, to apply Alaska contract and tort law to his claim on a class-wide basis. Moreover, according to Safeco, only one of the 28 states has addressed and affirmatively ruled on the availability of diminution value: Georgia. *See*

ORDER- 15

*State Farm Mutl Auto Ins. Co. v. Mabry*, 556 S.E.2d 114 (Ga. 2001). Yet, Mr. Hovenkotter asks this court to make a determination as to the availability of diminution value as to the remaining 27 states.

Mr. Hovenkotter seeks to circumvent these problems by combining the 28 states' tort laws to show that they all require that Safeco pay diminution value. This is not supported by the case law. Mr. Hovenkotter cites cases from each jurisdiction with various rulings on what constitutes the appropriate measure of damages. (Mot., Ex. B.) These rulings cover a wide swath of legal terrain. According to Mr. Hovenkotter's chart, some state courts hold that a plaintiff is legally entitled to recover "diminution in value;" others limit recovery to "loss in value" or "depreciation;" and still others limit recovery to "the difference between the value of the chattel before the harm and the value after the harm," "full compensation for the injury sustained," or "reduction in market value." (*Id.* 1-4.) Thus, contrary to Mr. Hovenkotter's assertion, the amount of tort damages available to plaintiffs is not consistent among the 28 states and therefore defeats the notion that the putative class has common legal issues. For example, a plaintiff in Idaho may be entitled to "diminution in value" while a plaintiff in South Dakota is entitled to "full compensation for the injury sustained." As stated above, this court declines to entertain the question of whether a South Dakota court would consider diminution value as compensable if the vehicle is fully repaired. *See Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 818 (1985) (applying law of state without significant contacts is "fundamentally unfair"). The court therefore declines to certify a class action in this case.

## IV. CONCLUSION

For the reasons stated, the court DENIES Mr. Hovenkotter's motion to certify class (Dkt. # 44); and GRANTS in part and DENIES in part Safeco's motion to exclude affidavits (Dkt. # 50).

Dated this 8th day of October, 2010.

JAMES L. ROBART
United States District Judge